# EXHIBIT C

5714600

5714600

| UTILITY SERIAL NUMBER 08/374645 | PATENT DATE FEB 03 1998 | PATENT NUMBER |
|---|---|---|

| SERIAL NUMBER 08/374,645 | FILING DATE 04/27/95 | CLASS 300 536 | SUBCLASS 103 | GROUP ART UNIT 1803 1711 | EXAMINER Nv |
|---|---|---|---|---|---|

**APPLICANTS:** KENNETH J. MCNAUGHT, NORTH EPPING, AUSTRALIA; ERIC MOLONEY, TAMWORTH, AUSTRALIA; IAN L. BROWN, TAMWORTH, AUSTRALIA; ADRIAN T. KNIGHT, LANE COVE, AUSTRALIA.

```
**CONTINUING DATA********************
    VERIFIED        THIS APPLN IS A 371 OF    PCT/AU93/00389   07/30/93
```

CERTIFICATE
JUL 23 2002

```
**FOREIGN/PCT APPLICATIONS************
    VERIFIED        AUSTRALIA          PL 3894      07/31/92
                    AUSTRALIA          PL 7266      02/12/93
```

CERTIFICATE
JUN 16 1998
OF CORRECTION

| Foreign priority claimed ☑yes ☐no 35 USC 119 conditions met ☑yes ☐no Verified and Acknowledged Examiner's Initials | AS FILED | STATE OR COUNTRY AU | SHEETS DRWGS. 4 | TOTAL CLAIMS 23 | INDEP. CLAIMS 4 | FILING FEE RECEIVED $1,252.00 | ATTORNEY'S DOCKET NO. 1451-007PCT |
|---|---|---|---|---|---|---|---|

**ADDRESS:** LOWE, PRICE, LEBLANC & BECKER
99 CANAL CENTER PLAZA, SUITE 300
ALEXANDRIA, VA  22314

**TITLE:** HIGH AMYLOSE STARCH AND RESISTANT STARCH FRACTIONS

U.S. DEPT. OF COMM./ PAT. & TM—PTO-436L (Rev.12-94)

| PARTS OF APPLICATION FILED SEPARATELY | | Applications Examiner |
|---|---|---|
| NOTICE OF ALLOWANCE MAILED 6-24-97 | Assistant Examiner | CLAIMS ALLOWED Total Claims 18  Print Claim 1 |
| ISSUE FEE | | DRAWING |
| Amount Due $1290.00  Date Paid 9/5/97 | NATHAN M. NUTTER PRIMARY EXAMINER GROUP 1200 | Sheets Drwg.  Figs. Drwg. 4  Print Fig. none |
| Label Area | Nathan W. Nutter  Primary Examiner PREPARED FOR ISSUE | ISSUE BATCH NUMBER 063 |

WARNING: The information disclosed herein may be restricted. Unauthorized disclosure may be prohibited by the United States Code Title 35, Sections 122, 181 and 368. Possession outside the U.S. Patent & Trademark Office is restricted to authorized employees and contractors only.

Form PTO-436A (Rev. 8/92)

ISSUE FEE IN FILE

DH

(FACE)

Exhibit C 0001

00389

APPROVED FOR LICENSE

INITIALS

# PATENT APPLICATION

08374645

| Date Entered or Counted | | Date Received or Mailed |
|---|---|---|
| | 1. Application ——————— papers. | |
| | 2. PCT/DO/EO/905 | 28 FEB 1995 |
| | 3. Declaration/Assignment (4) | 27 Apr 95 |
| | 4. PCT/DO/EO/903 | 5/9/95 |
| | 5. Pre Amdt A | 1-31-95 |
| | 6. Direct | 7-18-95 |
| | 7. IDS | 8-30-95 |
| | 8. IDS | 3-13-96 |
| | 9. Restriction 30 Days | 8-9-96 |
| | 10. Election | 9/9/96 |
| 11/20R | 11. R3 mos | 12-16-96 |
| | 12. Amdt B / Ext of Time. (1) | 3/19/97 |
| | 13. Suppl. Amdt C | 4-7-97 |
| | 14. Examiner Interview Summary | 19 June 1997 |
| 6/20M | 15. Exam Amdt D | 6-24-97 |
| | 16. Information Disclosure | 7-22-97 |
| | 17. Supol Notice of Allowability | 9/22/97 |
| 11/5/97 | 18. Formal Drawings ( 4 shts) set / | 9/5/97 |
| | 19. PTO Grant FEB 03 1998 | |
| | 20. Amdt E (312) | 2/10/98 |
| | 21. Reply Rule 3.22 | 3/9/98 |
| | 22. Nule for Apmt | 5/9/98 |
| | 23. Request for Cert of C | 3-31-02 |
| | 24. Director's Report | 4-25-02 |
| | 25. | |
| | 26. | |
| | 27. | |
| | 28. | |
| | 29. | |
| | 30. | |
| | 31. | |
| | 32. | |

(FRONT)

Exhibit C 0002

Staple Issue Slip Here

| POSITION | ID NO. | DATE |
|---|---|---|
| CLASSIFIER | 5 | |
| EXAMINER | 353 | 7-1-95 |
| TYPIST | 717 | 7-1-95 |
| VERIFIER | 17 | 7-3 |
| CORPS CORR. | | |
| SPEC. HAND | | |
| FILE MAINT. | | |
| DRAFTING | | |

## INDEX OF CLAIMS



| Claim | | Date | | | | |
|---|---|---|---|---|---|---|
| Final | Original | | | | | |
| | 1 | N | | | | |
| | 2 | | | | | |
| | 3 | | | | | |
| | 4 | | | | | |
| | 5 | | | | | |
| | 6 | | | | | |
| | 7 | N | | | | |
| | 8 | | | | | |
| | 9 | | | | | |
| | 10 | | | | | |
| | 11 | | | | | |
| | 12 | | | | | |
| | 13 | | | | | |
| | 14 | | | | | |
| | 15 | | | | | |
| | 16 | | | | | |
| | 17 | | | | | |
| | 18 | | | | | |
| | 19 | | | | | |
| | 20 | | | | | |
| | 21 | | | | | |
| | 22 | | | | | |
| | 23 | | | | | |
| | 24 | | | | | |
| | 25 | | | | | |
| | 26 | | | | | |
| | 27 | | | | | |
| | 28 | | | | | |
| | 29 | | | | | |
| | 30 | | | | | |
| | 31 | | | | | |
| | 32 | | | | | |
| | 33 | | | | | |
| | 34 | | | | | |
| | 35 | | | | | |
| | 36 | | | | | |
| | 37 | | | | | |
| | 38 | | | | | |
| | 39 | | | | | |
| | 40 | | | | | |
| | 41 | | | | | |
| | 42 | | | | | |
| | 43 | | | | | |
| | 44 | | | | | |
| | 45 | | | | | |
| | 46 | | | | | |
| | 47 | | | | | |
| | 48 | | | | | |
| | 49 | | | | | |
| | 50 | | | | | |

SYMBOLS
✓ .......... Rejected
. .......... Allowed
— (Through numeral) Canceled
+ .......... Restricted
N .......... Non-elected
I .......... Interference
A .......... Appeal
O .......... Objected

| Claim | | Date | | | | |
|---|---|---|---|---|---|---|
| Final | Original | | | | | |
| | 51 | | | | | |
| | 52 | | | | | |
| | 53 | | | | | |
| | 54 | | | | | |
| | 55 | | | | | |
| | 56 | | | | | |
| | 57 | | | | | |
| | 58 | | | | | |
| | 59 | | | | | |
| | 60 | | | | | |
| | 61 | | | | | |
| | 62 | | | | | |
| | 63 | | | | | |
| | 64 | | | | | |
| | 65 | | | | | |
| | 66 | | | | | |
| | 67 | | | | | |
| | 68 | | | | | |
| | 69 | | | | | |
| | 70 | | | | | |
| | 71 | | | | | |
| | 72 | | | | | |
| | 73 | | | | | |
| | 74 | | | | | |
| | 75 | | | | | |
| | 76 | | | | | |
| | 77 | | | | | |
| | 78 | | | | | |
| | 79 | | | | | |
| | 80 | | | | | |
| | 81 | | | | | |
| | 82 | | | | | |
| | 83 | | | | | |
| | 84 | | | | | |
| | 85 | | | | | |
| | 86 | | | | | |
| | 87 | | | | | |
| | 88 | | | | | |
| | 89 | | | | | |
| | 90 | | | | | |
| | 91 | | | | | |
| | 92 | | | | | |
| | 93 | | | | | |
| | 94 | | | | | |
| | 95 | | | | | |
| | 96 | | | | | |
| | 97 | | | | | |
| | 98 | | | | | |
| | 99 | | | | | |
| | 100 | | | | | |

(LEFT INSIDE)

Exhibit C 0003



Exhibit C 0004

## SEARCHED

| Class | Sub. | Date | Exmr. |
|-------|------|------|-------|
| 536 | 102 | 11-96 | NN |
| 524 | 47 48 | | |
| 106 | 213 | | |
| above | search to date | 6-97 | NN |

## SEARCH NOTES

| | Date | Exmr. |
|------|------|-------|
| APS Search | 11-96 | NN |

## INTERFERENCE SEARCHED

| Class | Sub. | Date | Exmr. |
|-------|------|------|-------|
| 536 | 102 | 6-97 | NN |
| 52⁴ | 47 48·55 | | |
| 106 | 213 | | |

(RIGHT OUTSIDE)

Exhibit C 0005

US005714600A

## United States Patent [19]

### McNaught et al.

[11] Patent Number: 5,714,600

[45] Date of Patent: Feb. 3, 1998

[54] HIGH AMYLOSE STARCH AND RESISTANT STARCH FRACTIONS

[75] Inventors: **Kenneth J. McNaught**, North Epping; **Eric Moloney**; **Ian L. Brown**, both of Tamworth; **Adrian Timothy Knight**, Lane Cove, all of Australia

[73] Assignee: **Goodman Fielder Limited**, Sydney, Australia

[21] Appl. No.: 374,645

[22] PCT Filed: Jul. 30, 1993

[86] PCT No.: PCT/AU93/00389

§ 371 Date: Apr. 27, 1995

§ 102(e) Date: Apr. 27, 1995

[87] PCT Pub. No.: WO94/03049

PCT Pub. Date: Feb. 17, 1994

[30]  **Foreign Application Priority Data**

Jul. 31, 1992 [AU] Australia .................... PL 3894
Feb. 12, 1993 [AU] Australia .................... PL 7266

[51] Int. Cl.⁶ ............... A01H 5/10; C08B 30/00; A23L 1/308

[52] U.S. Cl. ............... 536/102; 524/47; 524/48; 106/213

[58] Field of Search ............... 536/102; 524/47, 524/48; 106/213

[56]  **References Cited**

U.S. PATENT DOCUMENTS

5,300,145  4/1994  Ferguson et al. .................... 106/213

FOREIGN PATENT DOCUMENTS

45616/89  5/1990  Australia .
PL 0537  12/1992  Australia .
0 118 240  9/1984  European Pat. Off. .

OTHER PUBLICATIONS

"Starch and Enzyme–Resistant Starch from High–Amylose Barley", pp. 589–596, 1991, J. Szczodrak et al.

Cereal Chemistry—Volme 52, No. 6, Nov.–Dec. 1975.

Chemical Characteristics and Physico–chemical Properties of the Extruded Mixtures of Cereal Starches—By L. Fornal et al., Starch/Starke 39 *1987) Nr. 3, pp. 75–78.

Corn Hardness Determination, Y. Pomeranz, et al.—Cereal Chem. 61(2):174–150, vol. 61, No. 2, 1984.

Fractionation and Characterization of Dent Corn and Amylomaize Starch Granules—by J.E. Cluskey, C.A. Knutson and G.E. Inglett, Peoria—Starch/Starke 32 (1980) nr. 4. S. 105–109.

*Primary Examiner*—Nathan M. Nutter
*Attorney, Agent, or Firm*—Lowe, Price, LeBlanc & Becker

[57]  **ABSTRACT**

Starch, particularly maize starch, having an amylose content of more than 80% w/w, including physically or chemically modified derivatives thereof, and destructurized and non-destructurized forms thereof. Also, disclosed are hybrid maize seeds capable of producing a starch having an amylose content of more than 80%. Also disclosed are starch fractions of enhanced dietary fiber and/or resistant starch content.

**18 Claims, 4 Drawing Sheets**

Exhibit C 0006



FIG. 1

Exhibit C 0007



GELOSE VISCOGRAPHS
IN WATER

FIG. 2

Exhibit C 0008



FIG. 3

Exhibit C 0009

Total Dietary Fibre Content of High Amylose Maize Starch Fractions
High Amylose 80 (10/91)



FIG. 4

Exhibit C 0010

5,714,600

**1**

## HIGH AMYLOSE STARCH AND RESISTANT STARCH FRACTIONS

### TECHNICAL FIELD

This invention relates to high amylose content starch, in particular to a maize starch having an amylose content of more than 80% w/w. The invention further relates to single, double and multiple cross maize hybrids, particularly to a maize single cross F1 hybrid, capable of producing grain having such a high amylose content and to this grain.

The invention still further relates to fractions of high amylose starch that are enriched in dietary fiber and resistant starch content whilst claiming a high amylose content.

### BACKGROUND ART

Most common starches contain approximately 25% amylose and 75% amylopectin. Amylose is a linear glucose polymer fraction, whilst amylopectin is a branched glucose polymer fraction.

In the prior art, it has been recognized that currently available commercial starch having an elevated amylose content would impart certain desirable properties to various compositions including films, foods and industrial products. Accordingly, attempts have been made in the prior art to produce high amylose content maize. This is exemplified in AU-A-45616/89 wherein a maize seed deposited as ATCC No. 40499 is disclosed as capable of yielding a starch having an amylose content of up to 72%.

Typically, however, a commercial starch having an amylose content of 55–65% would be regarded in the art as having a high amylose content.

The present inventors whilst recognizing the utility of the commercially available so-called high amylose starches, have sought to produce a maize having a still higher amylose content.

### DISCLOSURE OF INVENTION

In the course of a breeding program, a single cross F1 hybrid maize seed was produced, which carried the ae amylose extender gene. This seed was found to be capable of producing grain, in which the amylose content of the starch derived therefrom was in excess of 80%.

Accordingly, in a first aspect, this invention consists in a hybrid maize seed capable of producing a starch having an amylose content of more than 80%.

In a second aspect, this invention further consists in a maize starch having an amylose content of more than 80%, physically or chemically modified derivatives thereof, and destructurized and non-destructurized forms thereof.

In a third aspect, this invention still further consists in compositions including a maize starch selected from the group consisting of maize starch having an amylose content of more than 80%, physically or chemically modified derivatives thereof and destructurized and non-destructurized forms thereof.

In a fourth aspect, this invention still further consists in a process for the formation of a composition comprising including a maize starch selected from the group consisting of maize starch having an amylose content of more than 80%, physically or chemically modified derivatives thereof and destructurized and non-destructurized forms thereof, in said composition.

In a fifth aspect, the present invention still further consists in a hybrid maize seed resulting from a cross between any

**2**

of the parental lines selected from the group consisting of G112, G113, G116, G117, G118, G119W, G120, G121, G122, G125W, G126, G128, G129, G135W, G136W, G138W, G139W, G140W and G144, said hybrid maize seed yielding a starch having an amylose content of more than 80%.

Starch granules from any botanical source are a heterogeneous mixture varying in physiological age and this affects their physical size, structure and properties. If the starch granules are physically separated according to their granule size, it has been noted by a number of authors that the properties of each size fraction are somewhat different. For example, Cluskey et al.in Starke, 32, 105–109(1980) reported on the fractionation of dent corn and amylomaize starch granules. They found that an inverse relationship existed between granule size and iodine binding capacity in the amylomaizes. Thus, the percent apparent amylose found in the fractions of amylose V starch amounted to 40% for the largest size particles and 52% for the smallest particles.

The correlation between amylose content and size fraction has been observed by the present inventors in relation to high amylose starches of the type mentioned above and in co-pending patent application PL6537.

In this latter mentioned patent application, PL6537, it was disclosed that high amylose starches have a high dietary fiber or resistant starch content. More specifically, it was found that there was a correlation between amylose content and dietary fiber/resistant starch such that increasing levels of amylose above 55% were associated with increasing levels of dietary fiber/resistant starch.

Patent application PL6537 further disclosed the useful nature of such starches in the preparation of food compositions having an enhanced dietary or resistant starch content.

Based on the observations of

(1) an association of dietary fiber and resistant starch with increasing levels of amylose; and

(2) increasing amylose content with decreasing starch granule size,

it was to be expected that decreasing starch granule size fractions of high amylose starch would be associated with enhanced levels of dietary fiber and resistant starch.

Surprisingly, this was found to be incorrect. In fact it was found that there was an optimum starch granule size fraction which is intermediate in size and not necessarily associated with the highest amylose content fraction.

Accordingly in a sixth aspect, the present invention still further consists in a starch fraction of enhanced dietary fiber and/or resistant starch content comprising a high amylose starch which has been fractionated according to granule size to yield a fraction which is characterised by a dietary fiber and/or resistant starch content which is greater than said high amylose starch.

In a seventh aspect, the present invention still further consists in a food composition having an enhanced dietary fiber and/or resistant starch content, including a starch fraction of enhanced dietary fiber and/or resistant starch content derived from a high amylose starch which has been fractionated according to granule size to yield a fraction which is characterised by a dietary fiber and/or resistant starch content which is greater than said high amylose starch.

For the purpose of the description of this invention, "high amylose" means an amylose content (dsb) of 50% or more, preferably 70% or more, most preferably 80% or more. Particularly preferred amylose contents are 85% or more and 90% or more.

Exhibit C 0011

5,714,600

**3**

For the purposes of the description of the invention, the method by which amylose was determined is set out below.

METHOD: Apparent Amylose (Blue Value)

SCOPE: High Amylose Maize Starch

APPARATUS:

Defatting
    Soxhlet extraction apparatus
    Steam bath
    Whatman thimbles, 25×80 mm
    Drying Oven 105° C.
    Dessicator

Amylose Determination
    Stoppered 50 ml test tubes
    Vortex mixer
    Boiling Water bath
    Spectrophotometer (650 nm, slit width 0.2 mm)

REAGENTS:

Defatting
    Methanol (AR Grade)

Amylose Determination
    Dimethylsulfoxide (HPLC Grade)
    Iodine/Potassium iodide solution
        3.0 g iodine and 30 g potassium iodide made up to 1000 mls with 0.1 N sodium hydroxide
    Methanol (AR Grade)
    Amylose (Sigma Cat. No. A0512)
        Dried for 2 hours at 105° C. prior to use.

PROCEDURE:

Defatting
    (1) Weigh 5 grams of starch into the thimble.
    (2) Place the thimble in the Soxhlet apparatus.
    (3) Extract the sample with methanol (200 mls) for 20 hours.
    (4) Recover the thimble and dry in an oven at 105° C. for 12 hours.

Amylose Determination
    (1) Accurately weigh starch (100.0 to 105.0 mg) into the text tube.
    (2) Add methanol (1 ml) and vortex mix.
    (3) Add DMSO (15 mls), invert the test tube, and vortex mix.
    (4) Place the test tubes in a vigorously boiling water bath for 60 minutes.
    (5) Invert and vortex mix each test tube at 15 minute intervals during this period.
    (6) Add distilled water (15 mls), invert and vortex mix. Place the test tube in the boiling water bath for a further 30 minutes.
    (7) Quantitatively transfer the contents of the test tube to a 100 ml volumetric flask (use a funnel in the flask). Make the solution to volume with distilled water.
    (8) Transfer an aliquot (3 mls) of this solution to a 100 ml volumetric flask and add 90 mls of distilled water.
    (9) Add Iodine/Potassium Iodide solution (1 ml) to the diluted solution and immediately shake and mix thoroughly. Make to volume with distilled water.
    (10) Measure the absorbance of this solution at 605 nm compared to a blank consisting of Iodine/Potassium Iodide solution (1 ml) diluted to 100 mls with distilled water in a volumetric flask.

**4**

CALCULATIONS:

For native starches:

$$\% \text{ Amylose } dsb = \frac{\text{Absorbance} \times 13}{\text{wt. sample } dsb}$$

The method by which starch was separated from the maize grain was as follows:

1. Prepare 200 g meal by grinding through the 2 mm then the 1 mm screen of one Retsch Mill.
2. Wet thoroughly, stirring by hand, with 600 ml 0.1 N NaOH.
3. Add 2,200 ml 0.1 N NaOH and blend 5 minutes at ⅔ speed with the Ultra Turrax.
4. Sieve over 44u screen.
5. Return sieve overs with 1 L water and blend for another 3 minutes, if necessary.
6. Sieve over 44u screen.
7. Centrifuge filtrate at 3000 rpm for 15 minutes. Decant. Wipe out the neck of the bottle with a tissue to remove fat.
8. Reslurry starch (centrifugate) with 200 ml water, i.e. 50 ml in each of 4 tubes. Centrifuge.
9. Remove starch from centrifuge tubes with about 250 ml water.
10. Adjust pH of starch slurry to 6.0–6.5 with 0.5 N HCl. Filter again over 44u screen, if necessary.
11. Buchner filter and air dry.

MODES FOR CARRYING OUT THE INVENTION

In order to better understand the nature of this invention, a number of examples will be described.

BRIEF DESCRIPTION OF DRAWINGS

FIG. 1 is a gel permeation chromatography molecular weight profile of a number of maize starches;

FIG. 2 is a viscograph of a number of maize starches in water;

FIG. 3 is a viscograph of a number of maize starches in base; and

FIG. 4 is a graph of total dietary fiber versus average starch granule size.

Maize Seed

A range of parental lines of maize seeds were obtained from High Yield Seed Co, Tamworth, Australia. Non-limiting examples of these parenting lines included G112, G113, G116, G117, G118, G119W, G120, G121, G122, G125W, G126, G128, G129, G135W, G136W, G138W, G139W, G140W, and G144.

Hybrids were produced by crossing inbred lines carrying the ac amylose extender genes. These inbred lines were selected for combining ability and identified as specific female and male parents to produce the hybrids. Conventional breeding methods and techniques were used in developing inbred lines with repetitive amylose assays to ensure the transfer of recessively inherited ae gene.

One particular cross between male G116 and female G121 resulted in a F1 hybrid, referred to as Code 008 and deposited with the American Type Culture Collection (ATCC), 12301 Parklawn Drive, Rockville, Md. 20853, U.S.A., under the designation 75182 on 15 Jan., 1992. This hybrid yielded grain the starch of which was found to have an amylose content in excess of 80%.

Based on the disclosure of this invention, the person skilled in the art would expect that hybrids resulting from

Exhibit C 0012

5,714,600

| | 5 | | | 6 |
|---|---|---|---|---|

**5**

further crosses of the parental lines mentioned above will yield starch having an amylose content in excess of 80%.

In fact experimental hybrids have yielded starches obtained from crosses between the above mentioned parent lines having high amylose contents. Set out below is a summary of the relevant crosses with amylose content in % bracketed.

| | FEMALE | MALE | HYBRID |
|---|---|---|---|
| 1. | G117 (81.6) | G116 (82.2) | G117 × G116 (83.3) |
| 2. | G116 (82.2) | G122 (89.6) | G116 × G122 (80.5) |
| 3. | G118 (94.5) | G122 (89.6) | G118 × G122 (85.9) |
| 4. | G120 (94.6) | G122 (89.6) | G120 × G122 (80.4) |
| 5. | G122 (89.6) | G120 (94.6) | G122 × G120 (81.9) |
| 6. | G122 (89.6) | G140 (92.2) | G122 × G140 (85.4) |
| 7. | G128 (71.5) | G129 (61.8) | G128 × G129 (82.8) |
| 8. | G140 (93.2) | G121 (94.7) | G140 × G121 (93.0) |
| 9. | G140 (92.2) | G144 (60.4) | G140 × G144 (85.3) |
| 10. | G139W (71.9) | G136W (93.4) | G139W × G136W (95.7) |
| 11. | G121 (94.7) | G126 (82.2) | G121 × G116 (85.0) |

* W = White seed.

Experiments conducted using Code 008 seed have shown that the climatic and agronomic conditions under which the maize is grown will have a significant effect on the amylose content. Specifically, it has been found that seed cultivated under irrigation near Tamworth, Australia (latitude 31.1° S) in an early crop and a late crop yielded starch having an amylose content respectively of 85.0% and 90.1%. Similarly, a crop cultivated at Finley, Australia (latitude 35.6° S) yielded starch having an amylose content of 94.8%. By contrast, the same seed when cultivated under irrigation at Giru, Australia (latitude 19.5°) yielded a starch having an amylose content of 78.6%.

Accordingly, a preferred embodiment of this invention comprises a maize seed deposited with the ATCC and designated 75182.

A further preferred embodiment of this invention comprises a maize starch having an amylose content of 85.0% or more, most preferably 90.1% or more.

To further characterize the maize starch derived from Code 008 grain, molecular weight profiling by gel permeation chromatography has been performed. The method by which this was done is set out below whilst the results are shown in the accompanying FIG. 1. For comparative purposes, two commercially available maize starches, HA Class V and HA Class VII are shown.

METHOD: Gel Permeation Chromatography of Starch
SCOPE: Starch
APPARATUS:
Sample Preparation
Screw capped test tubes (50 ml)
Boiling water bath
Microcentrifuge (Eppendorf 5415)
Desiccator

| HPLC | |
|---|---|
| Column | Alltech GPC High MW Polar 5U (Cat. No. 100586) |
| Detector | Waters 410 Refractive Index Detector (X 128 35° C.) |
| Pump | Waters 600 E |
| Injector | Waters 712 WISP |

**6**

| -continued | |
|---|---|
| HPLC | |
| Column Heater | (Set at 25° C.) |
| Software | Maxima 825 (V 3.3) |

REAGENTS:
Dimethyl sulfoxide (Chrom AR HPLC Grade - Mallinckrodt)
Dimethyl formamide (Chrom AR HPLC Grade - Mallinckrodt)
Pullulan Molecular Weight Standards - Showa Denko (ex Edward Instruments)
HPLC Mobile Phase - DMSO:DMF (20:80)
SAMPLE PREPARATION:
Standards
(1) The pullulan molecular weight standards need to be weighed into the screw capped test tubes in the following manner:
Tube 1- 5.0 mg each of P800, P100, P10 and glucose
Tube 2- 7.0 mg each of P400, P50 and P5
Tube 3- 7.0 mg each of P200, P20 and maltotriose.
(2) Add DMSO (4 mls) to each tube and tightly seal it.
(3) heat the tubes in the boiling water bath for 5 minutes to dissolve the pullulan.
(4) Remove and cool the test tube to room temperature.
(5) Add DMF (16 mls) and mix well.
(6) Place 3×1.5 ml aliquots into microcentrifuge tubes and centrifuge at 14000 rpm for 10 minutes.
(7) Remove the top 1 ml of solution from each centrifuge tube and place in a WISP vial.
Samples
(1) Accurately weight the sample (50.0 mg) into a screw capped test tube.
(2) Add DMSO (10 mls).
(3) Heat in a boiling water bath for 60 minutes.
(4) Remove and cool the test tube to room temperature.
(5) Add DMF (40 mls) and mix well.
(6) Place 3×1.5 ml aliquots into microcentrifuge tubes and centrifuge at 14000 rpm for 10 minutes.
(7) Remove the top 1 ml of solution from each centrifuge tube and place in a WISP vial.
HPLC Preparation
(1) Prior to fitting the column, pump water (100 mls) through the HPLC.
(2) Prepare the mobile phase and pump 50 mls through the HPLC. Ensure that the WISP is purged during this stage.
(3) Adjust the flow rate of 0.2 ml/minute and connect the column.
(4) Allow the column to equilibrate overnight.
(5) Prior to the injection of samples, purge the WISP and then gradually increase the flow rate to 1.5 mls/minute.
(6) Set the column heater to 25° C.
(7) Inject the standards and samples- 100 μl injection volume.
(8) After samples have been analysed turn the column heater off and reduce the flow rate of 0.2 mls/minute.
(9) Disconnect the column.
(10) Wash the system with water overnight at 0.5 mls/minute.
(11) Wash the system with methanol (200 mls).
Viscographs have also been prepared comparing maize starch from Code 008 (designated Gelose 80) with Gelose 50 and Gelose 70. FIG. 2 shows the viscosity profile under alkaline conditions whilst FIG. 3 shows the viscosity profile in water.

Exhibit C 0013

5,714,600

7

## Maize Starch

The maize starch of the first aspect of this invention having an amylose content of more than 80% may be used in a variety of compositions known in the art. The usefulness of the starch is believed to be a result of the higher content of more linear molecules. This seems to impart physical properties which tend towards those of conventionally used synthetic plastics materials. Consequently, films formed from the starch of the invention have higher tensile strengths and are good oxygen barriers. The starch is also easier to process on existing synthetic plastics materials equipment such as blow molding and injection molding machines.

Furthermore, this starch may be physically modified or chemically modified to produce a variety of derivatives well known in the art. These starches may also be used in a variety of compositions.

Finally, this starch may also be used in processes and compositions requiring the starch to be destructurized within the meaning of that term defined in EP0118240.

Some non-limiting examples of compositions in which the maize starch of this invention in all of its forms, could be used include:

1. Corrugating adhesives.
2. Sausage skins.
3. Confectionery.
4. Other food compositions where the enhanced gel strength of the starch would be advantageous.
5. Films, either alone or laminated with polymers such as ethylenevinylalcohol to achieve both gas and water barrier properties.
6. Biodegradable and controlled release matrices and methods for forming and using these matrices as disclosed in PCT/AU90/00422, the contents of which is incorporated herein by way of reference.
7. Shaped articles, processes for forming shaped articles and methods for using shaped articles as disclosed in PCT/AU90/00237, the contents of which is incorporated herein by way of reference.
8. Coextrusions with synthetic polymers.
9. Intermediate products such as pellets and rods, formed for example by extrusion, and including combinations of starch with one or more natural or synthetic polymers, plasticizers, colourants and other additives.
10. Other blends of starch with natural or synthetic polymers to obtain enhanced structural properties.

## Starch Fractions

The starches of the sixth and seventh aspects of this invention may originate from a number of sources including cereals such as maize, barley, wheat and legumes, providing that the starch content of such sources is high in amylose.

To fractionate the starch granules, there are a number of methods known in the art including dry powder sieving, hydrocyclone classification, air classification and differential sedimentation. A person skilled in the art would be readily able to choose an appropriate method depending on the source material and other relevant factors.

Although the size fraction of enhanced dietary fiber and/or resistant starch may vary, the example that follows describes the work that was done by the present inventors in relation to a maize starch sample. Based on this disclosure, a person skilled in the art could readily repeat this work using other starch sources to identify an appropriate fraction.

Once the starch has been appropriately fractionated, the fractions having enhanced dietary fiber and/or resistant starch content may be processed to obtain starch having

8

further increased dietary fiber and/or resistant starch content using entirely conventional methods well known in the art. An example of the fractionation will now be described.

### Fractionation of Maize Starch by Granule Size

A high amylose maize starch—High Amylose 80(10/91) was fractionated into seven subsamples based on granule size using the aqueous differential sedimentation procedure described by Cluskey et al (1980). This method was chosen since it minimised damage to the starch, did not introduce any residues and it was indicated that exposure of the starch granules to distilled water for long periods of time did not affect their integrity. Each subsample was weighed, measured for average granule size and the apparent amylose content, total dietary fiber and resistant starch determined. Each starch sample (60 grams) was separated into the seven fractions which were freeze-dried and weighed on a Mettler PE 3600 top pan balance. A scanning electron microscope was used to visually check the uniformity of the size distribution of the granules in each fraction.

Each fractionated starch sample was analysed for granule size according to the method described below. Apparent amylose content was determined using the method described above. Dietary fiber and resistant starch (McCleary et al) were determined using the methods disclosed in co-pending application PL6537.

Granule size was determined using a Malvern Master Sizer which utilises a He—Ne laser (632.8 nm) with a maximum output of 5 mW CW. In this method a starch slurry was made using approximately 15 mL of distilled water in a 50 mL beaker. The slurry was sonicated for 4 minutes. The slurry was then introduced into the stirred cell and the obscuration value adjusted using distilled water to 0.20. The slurry was allowed to stir for a further 2 minutes before readings were taken. Four readings were taken for each sample in order to check the stability of the readings being obtained.

### Results

In Table 1 set out below, there is shown the results (the average of two separate fractionations, together with the range of analytical results) obtained for each of seven particle size fractions. These results are graphically presented in FIG. 4, from which it is particularly evident that the level of resistant starch and dietary fiber is significantly increased between the second and fifth fractions, ie. 10.2–7.6 microns. Thus, if those starch fractions were to be segregated from the original starch sample, only 46.9% of the solids would need to be removed to produce a fraction in which the resistant starch was increased by 36% and dietary fiber by 24%.

Although the starch fractions of the invention are

### TABLE 1

Fractionation of High Amylose 80 (10/91) Maize Starch by Granule Size

| | Amount in Fraction (%) dsb | Average Granule Size (microns) | Apparent Amylose Content (%) dsb | Total Dietary Fibre (%) dsb | Resistant Starch (%) dsb |
|---|---|---|---|---|---|
| High Amylose 80 - 10/91 | 100.00 | 10.0 | 85 | 33.4 | 18.1 |
| Fraction 1 | 35.6 ± 1.1 | 12.3 ± 0.5 | 80 ± 0 | 31.4 ± 1.5 | 17.7 |
| Fraction 2 | 15.0 ± 2.6 | 10.2 ± 0.1 | 83 ± 1 | 38.3 ± 2.0 | 16.4 |
| Fraction 3 | 13.0 ± 1.1 | 9.1 ± 0.2 | 85.5 ± 0.5 | 41.3 ± 0.3 | 22.8 |

Exhibit C 0014

5,714,600

9

### TABLE 1-continued

Fractionation of High Amylose 80 (10/91) Maize Starch by Granule Size

| | Amount in Fraction (%) dsb | Average Granule Size (microns) | Apparent Amylose Content (%) dsb | Total Dietary Fibre (%) dsb | Resistant Starch (%) dsb |
|---|---|---|---|---|---|
| Fraction 4 | 14.9 ± 1.0 | 8.3 ± 0.1 | 85.5 ± 0.5 | 39.4 ± 4.1 | 24.6 |
| Fraction 5 | 10.2 ± 1.5 | 7.6 ± 0.1 | 88.5 ± 0.5 | 37.2 ± 1.3 | 18.9 |
| Fraction 6 | 7.0 ± 1.5 | 7.2 ± 0.1 | 89.5 ± 0.5 | 31.3 ± 2.4 | 21.7 |
| Fraction 7 | 4.3 ± 2.7 | 6.8 ± 0.2 | 89 | 28.1 | 10.1 |

high in dietary fiber and/or resistant starch, it should also be appreciated that another important property is that these fractions are "naturally" derived. This arises out of the fact that the fractions are prepared using a physical means of separation. No chemical or other treatments are required in order to produce starch fractions having a high dietary fiber and/or resistant starch content. Such a property is of particular importance in food applications in that no regulatory approval would be required in order to incorporate such materials in food compositions.

The person skilled in the art will readily appreciate that the starch fractions of the invention having the enhanced dietary fiber and/or resistant starch content may be used in a variety of food compositions. Such uses are disclosed, for example, in co-pending application No PL6537.

Whilst it is not as yet known why the fractions of the invention have enhanced dietary fiber and/or resistant starch content, it will be appreciated by persons skilled in the art that numerous variations and/or modifications may be made to the invention as described without departing from the spirit or scope of the invention as broadly described. Accordingly, the Example based on a sample of high amylose maize starch is to be considered in all respects as illustrative and not restrictive.

The person skilled in the art will readily appreciate that the maize starch of the invention both in its native form, and the other forms mentioned above will have many applications additional to those mentioned.

It will also be appreciated by those skilled in the art that numerous variations and modifications may be made to this invention without departing from the spirit or scope thereof as broadly described.

We claim:

1. A maize starch selected from the group consisting of maize starch having an amylose content of more than 80%, physically or chemically modified derivatives of maize starch having an amylose content of more than 80%, destructurized maize starch having an amylose content of more than 80%, and non-destructurized maize starch having an amylose content of more than 80%.

10

2. A maize starch as in claim 1 having an amylose content of 85.0% or more.

3. A maize starch as in claim 2 having an amylose content of 90.1% or more.

4. A maize starch as in claim 3 having an amylose content of 94.8% or more.

5. A composition comprising a maize starch selected from the group consisting of maize starch having an amylose content of more than 80%, physically or chemically modified derivatives of maize starch having an amylose content of more than 80%, destructurized maize starch having an amylose content of more than 80%, and non-destructurized maize starch having an amylose content of more than 80%.

6. A composition as in claim 5 wherein the maize starch has an amylose content of 85.0% or more.

7. A composition as in claim 6 wherein the maize starch has an amylose content of 90.1% or more.

8. A composition as in claim 7 wherein the maize starch has an amylose content of 94.8% or more.

9. A starch fraction of enhanced dietary fiber and/or resistant starch content comprising a high amylose starch, the amylose content of which is 50% or more, which has been fractionated according to granule size to yield a fraction which is characterised by a dietary fiber and/or resistant starch content which is greater than said high amylose starch prior to fractionation.

10. A starch fraction as in claim 9 wherein the high amylose starch is selected from the group consisting of maize, barley, wheat and legumes.

11. A starch fraction as in claim 10, wherein the amylose content of the high amylose starch is 70% or more.

12. A starch fraction as in claim 11, wherein the amylose content of the high amylose starch is 80% or more.

13. A starch fraction as in claim 12, wherein the amylose content of the high amylose starch is 85% or more.

14. A starch fraction as in claim 13, wherein the amylose content of the high amylose starch is 90% or more.

15. A starch fraction as in claim 9 wherein the fractionation is by dry powder sieving, hydrocyclone classification, air classification or differential sedimentation.

16. A starch fraction as in claim 10 wherein the dietary fiber content of the fraction is increased by about 24% or more and the resistant starch content of the fraction is increased by about 36% or more over the high amylose starch prior to fractionation.

17. A starch fraction as in claim 9 wherein the average granule size of the fraction is from about 10.2 to 7.6 microns.

18. A food composition including a starch fraction as claimed in claim 9.

* * * * *

Exhibit C 0015

UNITED STATES PATENT AND TRADEMARK OFFICE
# CERTIFICATE OF CORRECTION

PATENT NO.    : 5,714,600                                    Page 1 of 1
DATED         : February 03, 1998
INVENTOR(S)   : Kenneth J. McNaught et al.

It is certified that error appears in the above-identified patent and that said Letters Patent is hereby corrected as shown below:

Column 9-10,
Lines 19-45, cancel claims 1-8.

Signed and Sealed this

Twenty-third Day of July, 2002

Attest:

JAMES E. ROGAN
*Director of the United States Patent and Trademark Office*

*Attesting Officer*

Exhibit C 0016

08/374645

PATENT APPLICATION SERIAL NO. _____

U.S. DEPARTMENT OF COMMERCE
PATENT AND TRADEMARK OFFICE
FEE RECORD SHEET

```
MS19647   02/08/95   08374645          12-2237   190   960      980.00CH
MS19648   02/08/95   08374645          12-2237   190   154      130.00CH
MS19649   02/08/95   08374645          12-2237   190   966       66.00CH
MS19650   02/08/95   08374645          12-2237   190   964       76.00CH
```

PTO-1556
(5/87)

Exhibit C 0017

08/374645

Serial No. 08/374,645

21

# HIGH AMYLOSE STARCH AND RESISTANT STARCH FRACTIONS

## Abstract of the Disclosure

Starch, particularly maize starch, having an amylose content of more than 80% w/w, including physically or chemically modified derivatives thereof, and destructurized and non-destructurized forms thereof. Also, disclosed are hybrid maize seeds capable of producing a starch having an amylose content of more than 80%. Also disclosed are starch fractions of enhanced dietary fiber and/or resistant starch content.

Exhibit C 0018

08/374645

3 1 JAN 1995

WO 94/03049

PCT/AU93/00389

- 1 -

## HIGH AMYLOSE STARCH AND
## RESISTANT STARCH FRACTIONS

### Technical Field

This invention relates to high amylose content
5   starch, in particular to a maize starch having an amylose
content of more than 80% w/w. The invention further
relates to single, double and multiple cross maize
hybrids, particularly to a maize single cross F1 hybrid,
capable of producing grain having such a high amylose
10  content and to this grain.

The invention still further relates to fractions of
high amylose starch that are enriched in dietary fibre and
resistant starch content whilst claiming a high amylose
content.

### Background Art

Most common starches contain approximately 25%
amylose and 75% amylopectin. Amylose is a linear glucose
polymer fraction, whilst amylopectin is a branched glucose
polymer fraction.

20   In the prior art, it has been recognized that
currently available commercial starch having an elevated
amylose content would impart certain desirable properties
to various compositions including films, foods and
industrial products. Accordingly, attempts have been made
25  in the prior art to produce high amylose content maize.
This is exemplified in AU-A-45616/89 wherein a maize seed
deposited as ATCC No. 40499 is disclosed as capable of
yielding a starch having an amylose content of up to 72%.
Typically, however, a commercial starch having an
30  amylose content of 55-65% would be regarded in the art as
having a high amylose content.

The present inventors whilst recognizing the utility
of the commercially available so-called high amylose
starches, have sought to produce a maize having a still
35  higher amylose content.

SUBSTITUTE SHEET

Exhibit C 0019

WO 94/03049                                    PCT/AU93/00389

- 2 -

## Disclosure of Invention

In the course of a breeding program, a single cross
F1 hybrid maize seed was produced, which carried the _ae_
amylose extender gene.  This seed was found to be capable
5  of producing grain, in which the amylose content of the
starch derived therefrom was in excess of 80%.

Accordingly, in a first aspect, this invention
consists in a hybrid maize seed capable of producing a
starch having an amylose content of more than 80%.

10  In a second aspect, this invention further consists
in a maize starch having an amylose content of more than
80%, physically or chemically modified derivatives
thereof, and destructurized and non-destructurized forms
thereof.

15  In a third aspect, this invention still further
consists in compositions including a maize starch selected
from the group consisting of maize starch having an
amylose content of more than 80%, physically or chemically
modified derivatives thereof and destructurized and
20  non-destructurized forms thereof.

In a fourth aspect, this invention still further
consists in a process for the formation of a composition
comprising including a maize starch selected from the
group consisting of maize starch having an amylose content
25  of more than 80%, physically or chemically modified
derivatives thereof and destructurized and
non-destructurized forms thereof, in said composition.

In a fifth aspect, the present invention still
further consists in a hybrid maize seed resulting from a
30  cross between any of the parental lines selected from the
group consisting of G112, G113, G116, G117, G118, G119W,
G120, G121, G122, G125W, G126, G128, G129, G135W, G136W,
G138W, G139W, G140W and G144, said hybrid maize seed
yielding a starch having an amylose content of more than
35  80%.

Exhibit C 0020

WO 94/03049                                          PCT/AU93/00389

- 3 -

Starch granules from any botanical source are a
heterogeneous mixture varying in physiological age and
this affects their physical size, structure and
properties.  If the starch granules are physically
5    separated according to their granule size, it has been
noted by a number of authors that the properties of each
size fraction are somewhat different.  For example,
Cluskey et al in Starke, 32, 105-109(1980) reported on the
fractionation of dent corn and amylomaize starch
10    granules.  They found that an inverse relationship existed
between granule size and iodine binding capacity in the
amylomaizes.  Thus, the percent apparent amylose found in
the fractions of amylose V starch amounted to 40% for the
largest size particles and 52% for the smallest particles.
15    The correlation between amylose content and size
fraction has been observed by the present inventors in
relation to high amylose starches of the type mentioned
above and in co-pending patent application PL6537.
In this latter mentioned patent application, PL6537,
20    it was disclosed that high amylose starches have a high
dietary fibre or resistant starch content.  More
specifically, it was found that there was a correlation
between amylose content and dietary fibre/resistant starch
such that increasing levels of amylose above 55% were
25    associated with increasing levels of dietary
fibre/resistant starch.
Patent application PL6537 further disclosed the
useful nature of such starches in the preparation of food
compositions having an enhanced dietary or resistant
30    starch content.
Based on the observations of
(1)  an association of dietary fibre and resistant starch
with increasing levels of amylose; and
(2)  increasing amylose content with decreasing starch
35    granule size,

Exhibit C 0021

- 4 -

it was to be expected that decreasing starch granule size
fractions of high amylose starch would be associated with
enhanced levels of dietary fibre and resistant starch.

Surprisingly, this was found to be incorrect. In
5  fact it was found that there is an optimum starch granule
size fraction which is intermediate in size and not
necessarily associated with the highest amylose content
fraction.

Accordingly in a sixth aspect, the present invention
10  still further consists in a starch fraction of enhanced
dietary fibre and/or resistant starch content comprising a
high amylose starch which has been fractionated according
to granule size to yield a fraction which is characterised
by a dietary fibre and/or resistant starch content which
15  is greater than said high amylose starch.

In a seventh aspect, the present invention still
further consists in a food composition having an enhanced
dietary fibre and/or resistant starch content, including a
starch fraction of enhanced dietary fibre and/or resistant
20  starch content derived from a high amylose starch which
has been fractionated according to granule size to yield a
fraction which is characterised by a dietary fibre and/or
resistant starch content which is greater than said high
amylose starch.

25  For the purpose of the description of this invention,
"high amylose" means an amylose content (dsb) of 50% or
more, preferably 70% or more, most preferably 80% or
more. Particularly preferred amylose contents are 85% or
more and 90% or more.

30  For the purposes of the description of the invention,
the method by which amylose was determined is set out
below.

WO 94/03049                                                PCT/AU93/00389

– 5 –

**METHOD:**          Apparent Amylose (Blue Value)

**SCOPE:**           High Amylose Maize Starch

**APPARATUS:**

    Defatting

5        Soxhlet extraction apparatus

        Steam bath

        Whatman thimbles, 25 x 80mm

        Drying Oven $105^{o}$C

        Desiccator

10    Amylose Determination

        Stoppered 50ml test tubes

        Vortex mixer

        Boiling water bath

        Spectrophotometer (605mm, slit width 0.2mm)

15  **REAGENTS:**

    Defatting

        Methanol (AR Grade)

    Amylose Determination

        Dimethylsulfoxide (HPLC Grade)

20      Iodine/Potassium iodide solution

            3.0g iodine and 30g potassium iodide made

            up to 1000mls with 0.1N sodium hydroxide

        Methanol (AR Grade)

        Amylose (Sigma Cat. No A0512)

25        Dried for 2 hours at $105^{o}$C prior to use.

**PROCEDURE:**

    Defatting

    (1)  Weigh 5 grams of starch into the thimble.

    (2)  Place the thimble in the Soxhlet apparatus.

30    (3)  Extract the sample with methanol (200mls) for

        20 hours

    (4)  Recover the thimble and dry in an oven at

        $105^{o}$C for 12 hours.

    Amylose Determination

Exhibit C 0023

- 6 -

(1) Accurately weigh starch (100.0 to 105.0mg) into the text tube.

(2) Add methanol (1ml) and vortex mix.

(3) Add DMSO (15mls), invert the test tube, and
5        vortex mix.

(4) Place the test tubes in a vigorously boiling water bath for 60 minutes.

(5) Invert and vortex mix each test tube at 15 minute intervals during this period.

10  (6) Add distilled water (15mls), invert and vortex mix. Place the test tube in the boiling water bath for a further 30 minutes.

(7) Quantitatively transfer the contents of the test tube to a 100ml volumetric flask (use a funnel
15       in the flask). Make the solution to volume with distilled water.

(8) Transfer an aliquot (3mls) of this solution to a 100ml volumetric flask and add 90mls of distilled water.

20  (9) Add Iodine/Potassium Iodide solution (1ml) to the diluted solution and immediately shake and mix thoroughly. Make to volume with distilled water.

(10) Measure the absorbance of this solution at 605 nm compared to a blank consisting of Iodine/
25       Potassium Iodide solution (1ml) diluted to 100mls with distilled water in a volumetric flask.

CALCULATIONS:

For native starches:

30      % Amylose dsb $= \dfrac{\text{Absorbance x 13}}{\text{wt. sample dsb}}$

* dsb = dry solids basis.

The method by which starch was separated from the
35  maize grain was as follows:-

Exhibit C 0024

- 7 -

1. Prepare 200g meal by grinding through the 2mm then the 1mm screen of the Retsch Mill.
2. Wet thoroughly, stirring by hand, with 600ml 0.1N NaOH.
3. Add 2,200ml 0.1N NaOH and blend 5 minutes at 2/3 speed with the Ultra Turrax.
4. Sieve over 44u screen.
5. Return sieve overs with 1L water and blend for another 3 minutes, if necessary.
6. Sieve over 44u screen.
7. Centrifuge filtrate at 3000 rpm for 15 minutes. Decant. Wipe out the neck of the bottle with a tissue to remove fat.
8. Reslurry starch (centrifugate) with 200ml water, i.e. 50ml in each of 4 tubes. Centrifuge.
9. Remove starch from centrifuge tubes with about 250ml water.
10. Adjust pH of starch slurry to 6.0-6.5 with 0.5N HCl. Filter again over 44u screen, if necessary.
11. Buchner filter and air dry.

Modes for Carrying out the Invention

In order to better understand the nature of this invention, a number of examples will be described.

Brief Description of Drawings

Fig. 1 is a gel permeation chromatography molecular weight profile of a number of maize starches;

Fig. 2 is a viscograph of a number of maize starches in water;

Fig. 3 is a viscograph of a number of maize starches in base; and

Fig. 4 is a graph of total dietary fibre versus average starch granule size.

Maize Seed

A range of parental lines of maize seeds were obtained from High Yield Seed Co, Tamworth, Australia. Non-limiting examples of these parenting lines included

Exhibit C 0025

- 8 -

G112, G113, G116, G117, G118, G119W, G120, G121, G122,
G125W, G126, G128, G129, G135W, G136W, G138W, G139W, G140W
and G144.

Hybrids were produced by crossing inbred lines
5   carrying the ae amylose extender genes. These inbred
lines were selected for combining ability and identified
as specific female and male parents to produce the
hybrids. Conventional breeding methods and techniques
were used in developing inbred lines with repetitive
10  amylose assays to ensure the transfer of recessively
inherited ae gene.

One particular cross between male G116 and female
G121 resulted in a F1 hybrid, referred to as Code 008 and
deposited with the American Type Culture Collection
15  (ATCC), 12301 Parklawn Drive, Rockville, MD20853, U.S.A.,
under the designation 75182 on 15 January 1992. This
hybrid yielded grain the starch of which was found to have
an amylose content in excess of 80%.

Based on the disclosure of this invention, the person
20  skilled in the art would expect that hybrids resulting
from further crosses of the parental lines mentioned above
will yield starch having an amylose content in excess of
80%.

In fact experimental hybrids have yielded starches
25  obtained from crosses between the above mentioned parent
lines having high amylose contents. Set out below is a
summary of the relevant crosses with amylose content in %
bracketed.

Exhibit C 0026

WO 94/03049                                          PCT/AU93/00389

- 9 -

| | FEMALE | MALE | HYBRID |
|---|---|---|---|
| 1. | G117 (81.6) | G116 (82.2) | G117 x G116 (83.3) |
| 2. | G116 (82.2) | G122 (89.6) | G116 x G122 (80.5) |
| 3. | G118 (94.3) | G122 (89.6) | G118 x G122 (85.9) |
| 4. | G120 (94.6) | G122 (89.6) | G120 x G122 (80.4) |
| 5. | G122 (89.6) | G120 (94.6) | G122 x G120 (81.9) |
| 6. | G122 (89.6) | G140 (92.2) | G122 x G140 (85.4) |
| 7. | G128 (71.5) | G129 (61.8) | G128 x G129 (82.8) |
| 8. | G140 (93.2) | G121 (94.7) | G140 x G121 (93.0) |
| 9. | G140 (92.2) | G144 (60.4) | G140 x G144 (85.3) |
| * 10. | G139W (71.9) | G136W (93.4) | G139W x G136W (95.7) |
| 11. | G121 (94.7) | G126 (82.2) | G121 x G116 (85.0) |

* W = White seed.

Experiments conducted using Code 008 seed have shown that the climatic and agronomic conditions under which the maize is grown will have a significant effect on the amylose content. Specifically, it has been found that seed cultivated under irrigation near Tamworth, Australia (latitude 31.1°S) in an early crop and a late crop yielded starch having an amylose content respectively of 85.0% and 90.1%. Similarly, a crop cultivated at Finley, Australia (latitude 35.6°S) yielded starch having an amylose content of 94.8%. By contrast, the same seed when cultivated under irrigation at Giru, Australia (latitude 19.5°) yielded a starch having an amylose content of 78.6%.

Accordingly, a preferred embodiment of this invention comprises a maize seed deposited with the ATCC and designated 75182.

A further preferred embodiment of this invention comprises a maize starch having an amylose content of 85.0% or more, most preferably 90.1% or more.

To further characterize the maize starch derived from Code 008 grain, molecular weight profiling by gel

Exhibit C 0027

- 10 -

permeation chromatography has been performed. The method
by which this was done is set out below whilst the results
are shown in the accompanying Figure 1.  For comparative
purposes, two commercially available maize starches, HA
5    Class V and HA Class VII are shown.

METHOD:        Gel Permeation Chromatography of Starch
SCOPE:         Starch
APPARATUS:
         Sample Preparation
10               Screw capped test tubes (50ml)
                 Boiling water bath
                 Microcentrifuge (Eppendorf 5415)
                 Desiccator
         HPLC
15               Column       Alltech GPC High MW Polar 5U
                              (Cat. No. 100586)
                 Detector     Waters 410 Refractive Index
                              Detector (X 128 35°C)
                 Pump         Waters 600 E
20               Injector     Waters 712 WISP
                 Column Heater (Set at 25°C)
                 Software     Maxima 825 (V 3.3)
REAGENTS:
                 Dimethyl sulfoxide (Chrom AR HPLC Grade -
25               Mallinckrodt)
                 Dimethyl formamide (Chrom AR HPLC Grade -
                 Mallinckrodt)
                 Pullulan Molecular Weight Standards - Showa
                 Denko (ex Edward Instruments)
30       HPLC Mobile Phase - DMSO:DMF (20:80)
SAMPLE PREPARATION:
         Standards
         (1) The pullulan molecular weight standards need to
             be weighed into the screw capped test tubes in
35           the following manner:

Exhibit C 0028

WO 94/03049                                          PCT/AU93/00389

- 11 -

Tube 1 - 5.0mg each of P800, P100, P10 and
glucose
Tube 2 - 7.0mg each of P400, P50 and P5
Tube 3 - 7.0mg each of P200, P20 and maltotriose.

5    (2)  Add DMSO (4mls) to each tube and tightly seal it.

(3)  heat the tubes in the boiling water bath for 5
minutes to dissolve the pullulan.

(4)  Remove and cool the test tube to room
temperature.

10   (5)  Add DMF (16mls) and mix well.

(6)  Place 3 x 1.5ml aliquots into microcentrifuge
tubes and centrifuge at 14000rpm for 10 minutes.

(7)  Remove the top 1ml of solution from each
centrifuge tube and place in a WISP vial.

15  Samples

(1)  Accurately weight the sample (50.0mg) into a
screw capped test tube.

(2)  Add DMSO (10mls).

(3)  Heat in a boiling water bath for 60 minutes.

20   (4)  Remove and cool the test tube to room
temperature.

(5)  Add DMF (40mls) and mix well.

(6)  Place 3 x 1.5ml aliquots into microcentrifuge
tubes and centrifuge at 14000rpm for 10 minutes.

25   (7)  Remove the top 1ml of solution from each
centrifuge tube and place in a WISP vial.

HPLC Preparation

(1)  Prior to fitting the column, pump water (100mls)
through the HPLC.

30   (2)  Prepare the mobile phase and pump 50mls through
the HPLC. Ensure that the WISP is purged during
this stage.

(3)  Adjust the flow rate of 0.2ml/minute and connect
the column.

35   (4)  Allow the column to equilibrate overnight.

Exhibit C 0029

- 12 -

    (5)  Prior to the injection of samples, purge the
          WISP and then gradually increase the flow rate
          to 1.5mls/minute.

    (6)  Set the column heater to $25^{o}C$.

5     (7)  Inject the standards and samples - $100\mu l$
          injection volume.

    (8)  After samples have been analysed turn the column
          heater off and reduce the flow rate of
          0.2mls/minute.

10    (9)  Disconnect the column.

    (10) Wash the system with water overnight at
          0.5mls/minute.

    (11) Wash the system with methanol (200mls).

    Viscographs have also been prepared comparing maize
15 starch from Code 008 (designated Gelose 80) with Gelose 50
and Gelose 70.  Figure 2 shows the viscosity profile under
alkaline conditions whilst Figure 3 shows the viscosity
profile in water.

Maize Starch

20     The maize starch of the first aspect of this
invention having an amylose content of more than 80% may
be used in a variety of compositions known in the art.
The usefulness of the starch is believed to be a result of
the higher content of more linear molecules.  This seems
25 to impart physical properties which tend towards those of
conventionally used synthetic plastics materials.
Consequently, films formed from the starch of the
invention have higher tensile strengths and are good
oxygen barriers.  The starch is also easier to process on
30 existing synthetic plastics materials equipment such as
blow moulding and injection moulding machines.

    Furthermore, this starch may be physically modified
or chemically modified to produce a variety of derivatives
well known in the art.  These starches may also be used in
35 a variety of compositions.

Exhibit C 0030

- 13 -

Finally, this starch may also be used in processes and compositions requiring the starch to be destructurized within the meaning of that term defined in EP0118240.

Some non-limiting examples of compositions in which
5  the maize starch of this invention in all of its forms, could be used include:

1.   Corrugating adhesives.

2.   Sausage skins.

3.   Confectionery.

10  4.   Other food compositions where the enhanced gel strength of the starch would be advantageous.

5.   Films, either alone or laminated with polymers such as ethylenevinylalcohol to achieve both gas and water barrier properties.

15  6.   Biodegradable and controlled release matrices and methods for forming and using these matrices as disclosed in PCT/AU90/00422, the contents of which is incorporated herein by way of reference.

7.   Shaped articles, processes for forming shaped
20  articles and methods for using shaped articles as disclosed in PCT/AU90/00237, the contents of which is incorporated herein by way of reference.

8.   Coextrusions with synthetic polymers.

9.   Intermediate products such as pellets and rods,
25  formed for example by extrusion, and including combinations of starch with one or more natural or synthetic polymers, plasticizers, colourants and other additives.

10.  Other blends of starch with natural or synthetic
30  polymers to obtain enhanced structural properties.

Starch Fractions

The starches of the sixth and seventh aspects of this invention may originate from a number of sources including cereals such as maize, barley, wheat and legumes, providing
35  that the starch content of such sources is high in amylose.

Exhibit C 0031

- 14 -

     To fractionate the starch granules, there are a
number of methods known in the art including dry powder
sieving, hydrocyclone classification, air classification
and differential sedimentation. A person skilled in the
5  art would be readily able to choose an appropriate method
depending on the source material and other relevant
factors.

     Although the size fraction of enhanced dietary fibre
and/or resistant starch may vary, the example that follows
10  describes the work that was done by the present inventors
in relation to a maize starch sample. Based on this
disclosure, a person skilled in the art could readily
repeat this work using other starch sources to identify an
appropriate fraction.

15     Once the starch has been appropriately fractionated,
the fractions having enhanced dietary fibre and/or
resistant starch content may be processed to obtain starch
having further increased dietary fibre and/or resistant
starch content using entirely conventional methods well
20  known in the art. An example of the fractionation will
now be described.

Fractionation of Maize Starch by Granule Size

     A high amylose maize starch - High Amylose 80(10/91)
was fractionated into seven subsamples based on granule
25  size using the aqueous differential sedimentation
procedure described by Cluskey et al (1980). This method
was chosen since it minimised damage to the starch, did
not introduce any residues and it was indicated that
exposure of the starch granules to distilled water for
30  long periods of time did not affect their integrity. Each
subsample was weighed, measured for average granule size
and the apparent amylose content, total dietary fibre and
resistant starch determined. Each starch sample
(60 grams) was separated into the seven fractions which
35  were freeze-dried and weighed on a Mettler PE 3600 top pan

Exhibit C 0032

WO 94/03049                                         PCT/AU93/00389

- 15 -

balance.  A scanning electron microscope was used to
visually check the uniformity of the size distribution of
the granules in each fraction.

5      Each fractionated starch sample was analysed for
granule size according to the method described below.
Apparent amylose content was determined using the method
described above.  Dietary fibre and resistant starch
(McCleary et al) were determined using the methods
disclosed in co-pending application PL6537.

10      Granule size was determined using a Malvern Master
Sizer which utilises a He-Ne laser (632.8nm) with a
maximum output of 5mW CW.  In this method a starch slurry
was made using approximately 15mL of distilled water in a
50mL beaker.  The slurry was sonicated for 4 minutes.  The

15  slurry was then introduced into the stirred cell and the
obscuration value adjusted using distilled water to 0.20.
The slurry was allowed to stir for a further 2 minutes
before readings were taken.  Four readings were taken for
each sample in order to check the stability of the

20  readings being obtained.

Results

In Table 1 set out below, there is shown the results
(the average of two separate fractionations, together with
the range of analytical results) obtained for each of

25  seven particle size fractions.  These results are
graphically presented in Fig.4, from which it is
particularly evident that the level of resistant starch
and dietary fibre is significantly increased between the
second and fifth fractions, ie, 10.2-7.6 microns.  Thus,

30  if those starch fractions were to be segregated from the
original starch sample, only 46.9% of the solids would
need to be removed to produce a fraction in which the
resistant starch was increased by 36% and dietary fibre by
24%.

35      Although the starch fractions of the invention are

Exhibit C 0033

WO 94/03049                                                    PCT/AU93/00389

- 16 -

TABLE 1

Fractionation of High Amylose 80 (10/91) Maize Starch by Granule Size

|  | Amount in Fraction (%) dsb | Average Granule Size (microns) | Apparent Amylose Content (%) dsb | Total Dietary Fibre (%) dsb | Resistant Starch (%) dsb |
|---|---|---|---|---|---|
| High Amylose 80 - 10/91 | 100.00 | 10.0 | 85 | 33.4 | 18.1 |
| Fraction 1 | 35.6 ± 1.1 | 12.3 ± 0.5 | 80 ± 0 | 31.4 ± 1.5 | 17.7 |
| Fraction 2 | 15.0 ± 2.6 | 10.2 ± 0.1 | 83 ± 1 | 38.3 ± 2.0 | 16.4 |
| Fraction 3 | 13.0 ± 1.1 | 9.1 ± 0.2 | 85.5 ± 0.5 | 41.3 ± 0.3 | 22.8 |
| Fraction 4 | 14.9 ± 1.0 | 8.3 ± 0.1 | 85.5 ± 0.5 | 39.4 ± 4.1 | 24.6 |
| Fraction 5 | 10.2 ± 1.6 | 7.6 ± 0.1 | 88.5 ± 0.5 | 37.2 ± 1.3 | 18.9 |
| Fraction 6 | 7.0 ± 1.6 | 7.2 ± 0.1 | 89.5 ± 0.5 | 31.3 ± 2.4 | 21.7 |
| Fraction 7 | 4.3 ± 2.7 | 6.8 ± 0.2 | 89 | 28.1 | 10.1 |

Exhibit C 0034

- 17 -

high in dietary fibre and/or resistant starch, it should
also be appreciated that another important property is
that these fractions are "naturally" derived.  This arises
out of the fact that the fractions are prepared using a
5   physical means of separation.  No chemical or other
treatments are required in order to produce starch
fractions having a high dietary fibre and/or resistant
starch content.  Such a property is of particular
importance in food applications in that no regulatory
10  approval would be required in order to incorporate such
materials in food compositions.

    The person skilled in the art will readily appreciate
that the starch fractions of the invention having the
enhanced dietary fibre and/or resistant starch content may
15  be used in a variety of food compositions.  Such uses are
disclosed, for example, in co-pending application
No PL6537.

    Whilst it is not as yet known why the fractions of
the invention have enhanced dietary fibre and/or resistant
20  starch content, it will be appreciated by persons skilled
in the art that numerous variations and/or modifications
may be made to the invention as described without
departing from the spirit or scope of the invention as
broadly described.  Accordingly, the Example based on a
25  sample of high amylose maize starch is to be considered in
all respects as illustrative and not restrictive.

    The person skilled in the art will readily appreciate
that the maize starch of the invention both in its native
form, and the other forms mentioned above will have many
30  applications additional to those mentioned.

    It will also be appreciated by those skilled in the
art that numerous variations and modifications may be made
to this invention without departing from the spirit or
scope thereof as broadly described.



Exhibit C 0035

- 18 -

CLAIMS:

1.    A hybrid maize seed capable of producing a starch having an amylose content of more than 80%.

2.    A hybrid maize seed as in claim 1 obtained from a
5    cross between any of the parental lines selected from the group consisting of G112, G113, G116, G117, G118, G119W, G120, G121, G122, G125W, G126, G128, G129, G135W, G136W, G138W, G139W, G140W and G144, said hybrid maize seed yielding a starch having an amylose content of more than
10    80%.

3.    A hybrid maize seed as in claim 2 selected from the group consisting of the following crosses: G117 x G116, G116 x G122, G118 x G122, G120 x G122, G112 x G120, G122 x G140, G128 x G129, G140 x G121, G140 x G144,
15    G139W x G136W and G121 x G116.

4.    A hybrid maize seed as in any one of claims 1 to 3 wherein the seed yields a starch having an amylose content of 85.0% or more.

5.    A hybrid maize seed as in claim 4 wherein the seed
20    yields a starch having an amylose content of 90.1% or more.

6.    A hybrid maize seed as in claim 5 wherein the seed yields a starch having an amylose content of 94.8% or more.

7.    A hybrid maize seed as in claim 3 deposited as ATCC 75182.

25   8.    A maize starch having an amylose content of more than 80%, physically or chemically modified derivatives thereof, and destructurized and non-destructurized forms thereof.

9.    A maize starch as in claim 8 having an amylose
30    content of 85.0% or more.

10.    A maize starch as in claim 9 having an amylose content of 90.1% or more.

11.    A maize starch as in claim 10 having an amylose content of 94.8% or more.

35   12.    A composition including a maize starch selected from

Exhibit C 0036

PCT/AU 9 3 / 0 0 3 8 9
RECEIVED  0 8 JUN 1994

- 19 -

the group consisting of maize starch having an amylose
content of more than 80%, physically or chemically
modified derivatives thereof and destructurized and
non-destructurized forms thereof.

13. A composition as in claim 12 wherein the maize starch
has an amylose content of 85.0% or more.

14. A composition as in claim 13 wherein the maize starch
has an amylose content of 90.1% or more.

15. A composition as in claim 14 wherein the maize starch
has an amylose content of 94.8% or more.

16. A starch fraction of enhanced dietary fibre and/or
resistant starch content comprising a high amylose starch,
the amylose content of which is 50% or more, which has
been fractionated according to granule size to yield a
fraction which is characterised by a dietary fibre and/or
resistant starch content which is greater than said high
amylose starch prior to fractionation.

17. A starch fraction as in claim 16 wherein the high
amylose starch is selected from the group consisting of
maize, barley, wheat and legumes.

18. A starch fraction as in claim 16 or claim 17 wherein
the amylose content of the high amylose starch is 70% or
more, preferably 80% or more.

19. A starch fraction as in claim 18 wherein the amylose
content of the high amylose starch is 85% or more,
preferably 90% or more.

20. A starch fraction as in any one of claims 16 to 19
wherein the fractionation is by dry powder sieving,
hydrocyclone classification, air classification or
differential sedimentation.

21. A starch fraction as in any one of claims 16 to 20
wherein the dietary fibre content of the fraction is
increased by about 24% or more and the resistant starch
content of the fraction is increased by about 36% or more
over the high amylose starch prior to fractionation.

AMENDED SHEET
IPEA/AU

WO 94/03049                                          PCT/AU93/00389

- 20 -

22. A starch fraction as in ~~any one of claims 16 to 21~~
wherein the average granule size of the fraction is from
about 10.2 to 7.6 microns.

23. A food composition including a starch fraction as
claimed in ~~any one of claims 16 to 22.~~

Exhibit C 0038

Docket No.:

65010

## DECLAR/     OWER OF ATTORNE `   PETITION

As a below named inventor, I hereby declare that:

My residence, post office and citizenship are as stated below next to my name,

I believe I am the original, first and sole inventor (if only one name is listed below) or an original, first and joint inventor (if plural names are listed below) of the subject matter claimed and for which a patent is sought on the invention entitled , the specification of which   HIGH AMYLOSE STARCH AND RESISTANT STARCH FRACTIONS

[ ] is attached hereto        [X]  was filed on as Application Serial No. and was amended on  (if applicable)
              PCT/AU93/00389 Filed 30 July 1993
I hereby state that I have reviewed and understand the contents of the above identified specification, including the claims, as amended by any amendment referred to above.

I acknowledge the duty to disclose information which is material to the examination of this application in accordance with Title 37, Code of Federal Regulations, Section 1.56(a).

I hereby claim foreign priority benefits under Title 35, United States Code, Section 119 of any foreign application(s) for patent or inventor's certificate listed below and have also identified below any foreign application for patent or inventor's certificate having a filing date before that of the application on which priority is claimed:

Prior Foreign Application(s):                          Priority Claimed
Number    Country    Day/Month/Year filed              Yes    No
PL 3894   Australia  31 July 1992                        X
PL 7266   Australia  12 February 1993                    X

I hereby claim the benefit under Title 35, United States Code, Section 120 of any United States application(s) listed below and, insofar as the subject matter of each of the claims of this application is not disclosed in the prior United States application in the manner provided by the first paragraph of Title 35, United States Code, Section 112, I acknowledge the duty to disclose material information as defined in Title 37, Code of Federal Regulations, Section 1.56(a) which occurred between the filing date of the prior application and the national or PCT international filing date of this application:

Application Serial No.      Filing Date              Status:  Patented, Pending, Abandoned

I hereby declare that all statements made herein of my own knowledge are true and that all statements made on information and belief are believed to be true; and further that these statements were made with the knowledge that willful false statements and the like so made are punishable by fine or imprisonment, or both, under Section 1001 of Title 18 of the United States Code and that such willful false statements may jeopardize the validity of the application or any patent issued thereon.

I hereby appoint the following attorney(s) and/or agent(s): Allan M. Lowe, Reg. No. 19,641; Robert L. Price, Reg. No. 22,685; Robert E. LeBlanc, Reg. No. 17,219; Stephen A. Becker, Reg. No. 26,527; Henry Shur, Reg. No. 17,414; Israel Gopstein, Reg. No. 27,333; Benjamin J. Hauptman, Reg. No. 29,310; Donald C. Casey, Reg. No. 24,022; Kenneth E. Krosin, Reg. No. 25,725; Chittaranjan N. Nirmel, Reg. No. 30,408; Holly D. Kozlowski, Reg. No. 30,468; Gene Z. Rubinson, Reg. No. 33,351; Frank P. Presta, Reg. No. 19,828; Michael S. Gzybowski, Reg. No. 32,816; Robert G. Lev, Reg. No. 30,280; Keith E. George, Reg. No. 34,111; Arthur P. Demers, Reg. No. 32,660; Edward J. Wise, Reg. No. 34,523; Christopher W. Brody, Reg. No. 33,613; Demetra J. Mills, Reg. No. 34,506; Daniel Y.J. Kim, Reg. No. 36,186; Alexander Yampolsky, Reg. No. 36,324; Sharon E. Finkel, Reg. No. 35,798; Robert P. Bell, Reg. No. 34,546; and Alfred A. Stadnicki, Reg. No. 30,226. all of

LOWE, PRICE, LEBLANC & BECKER
99 Canal Center Plaza, Suite 300
Alexandria, Virginia 22314

with full power of substitution and revocation, to prosecute this application and to transact all business in the Patent and Trademark Office connected therewith, and all future correspondence should be addressed to them.

•••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••

Full name of sole or first inventor: Kenneth J. McNAUGHT
Inventor's Signature                                      Date: 18 January 1995
Residence: 18 Marcella Street, North Epping, NSW 2121 Australia
Citizenship: Australia
Post Office Address:   As above

page 1 of 2

Exhibit C 0039

65010

page 2 of 2

PCT/AU93/00389    filed 30 July 1993

HIGH AMYLOSE STARCH AND RESISTANT STARCH FRACTIONS

Full Name of Second Inventor: Eric ~~MALONEY~~ MOLONEY ~~ERH. 11/4/95~~ 2-00

Inventor's Signature: _E.R. Moloney_____ Date: _22/12/94._

Residence: 169 Brisbane Street, Tamworth, NSW 2340, Australia

Citizenship: Australian

Post Office Address:   As above

over ⟶

Full Name of Third Inventor: Ian L BROWN

Inventor's Signature: _____ Date: _____

Residence: _____

Citizenship: _____

Post Office Address: _____

Full Name of Fourth Inventor: Adrian Timothy KNIGHT

Inventor's Signature: _____ Date: _____

Residence: _____

Citizenship: _____

Post Office Address: _____

Exhibit C 0040

65015

page 2 of 2

PCT/AU93/00389    filed 30 July 1993

HIGH AMYLOSE STARCH AND RESISTANT STARCH FRACTIONS

Full Name of Second Inventor: Eric MALONEY _____

Inventor's Signature: _____ Date: _____

Residence: _____

Citizenship: _____

Post Office Address: _____


Full Name of Third Inventor: Ian L BROWN    3-00

Inventor's Signature: _____ Date: 15/12/94

Residence: 2 Melissa Avenue, Tamworth, NSW 2340, Australia

Citizenship: Australian

Post Office Address: ___ As above ___ over


Full Name of Fourth Inventor: Adrian Timothy KNIGHT _____

Inventor's Signature: _____ Date: _____

Residence: _____

Citizenship: _____

Post Office Address: _____

Exhibit C 0041

page 2 of 2

PCT/AU93/00389    filed 30 July 1993

HIGH AMYLOSE STARCH AND RESISTANT STARCH FRACTIONS

Full Name of Second Inventor: Eric MALONEY

Inventor's Signature: _____ Date: _____

Residence: _____

Citizenship: _____

Post Office Address: _____


Full Name of Third Inventor: Ian L BROWN

Inventor's Signature: _____ Date: _____

Residence: _____

Citizenship: _____

Post Office Address: _____


Full Name of Fourth Inventor: Adrian Timothy KNIGHT

Inventor's Signature: x _____ Date: 30/11/94

Residence: 18 Nundah Street, Lane Cove, NSW 2066, Australia

Citizenship: Australian

Post Office Address: As above

Exhibit C 0042

1/4



FIG. 1

SUBSTITUTE SHEET

Exhibit C 0043

2/4



FIG. 2

SUBSTITUTE SHEET

Exhibit C 0044

WO 94/03049                                    PCT/AU93/00389

3/4



FIG. 3

SUBSTITUTE SHEET

Exhibit C 0045

WO 94/03049

1373374645
PCT/AU93/00389

4/4

### Total Dietary Fibre Content of High Amylose Maize Starch Fractions
### High Amylose 80 (10/91)



Average Granule Size (microns)

FIG. 4

SUBSTITUTE SHEET

Exhibit C 0046

**PATENT APPLICATION FEE DETERMINATION RECORD**
Effective October 1, 1994

Application or Docket Number: *374645*

## CLAIMS AS FILED - PART I

| FOR | NUMBER FILED (Column 1) | NUMBER EXTRA (Column 2) | SMALL ENTITY RATE | FEE | OR | OTHER THAN SMALL ENTITY RATE | FEE |
|---|---|---|---|---|---|---|---|
| BASIC FEE | | | | 365.00 | OR | | *730.00* *980* |
| TOTAL CLAIMS | *23* minus 20 = | * *3* | x$11= | | OR | x$22= | *66* |
| INDEPENDENT CLAIMS | *4* minus 3 = | * *1* | x38= | | OR | x76= | *76* |
| MULTIPLE DEPENDENT CLAIM PRESENT | | | +120= | | OR | +240= | |
| * If the difference in column 1 is less than zero, enter "0" in column 2 | | | **TOTAL** | | OR | **TOTAL** | *1122* |

## CLAIMS AS AMENDED - PART II

### AMENDMENT A

| | CLAIMS REMAINING AFTER AMENDMENT (Column 1) | | HIGHEST NUMBER PREVIOUSLY PAID FOR (Column 2) | PRESENT EXTRA (Column 3) | SMALL ENTITY RATE | ADDI-TIONAL FEE | OR | OTHER THAN SMALL ENTITY RATE | ADDI-TIONAL FEE |
|---|---|---|---|---|---|---|---|---|---|
| Total | * | Minus | ** | = | x$11= | | OR | x$22= | |
| Independent | * | Minus | *** | = | x38= | | OR | x76= | |
| FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM | | | | | +120= | | OR | +240= | |
| | | | | | **TOTAL ADDIT. FEE** | | OR | **TOTAL ADDIT. FEE** | |

### AMENDMENT B

| | CLAIMS REMAINING AFTER AMENDMENT (Column 1) | | HIGHEST NUMBER PREVIOUSLY PAID FOR (Column 2) | PRESENT EXTRA (Column 3) | SMALL ENTITY RATE | ADDI-TIONAL FEE | OR | RATE | ADDI-TIONAL FEE |
|---|---|---|---|---|---|---|---|---|---|
| Total | * | Minus | ** | = | x$11= | | OR | x$22= | |
| Independent | * | Minus | *** | = | x38= | | OR | x76= | |
| FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM | | | | | +120= | | OR | +240= | |
| | | | | | **TOTAL ADDIT. FEE** | | OR | **TOTAL ADDIT. FEE** | |

### AMENDMENT C

| | CLAIMS REMAINING AFTER AMENDMENT (Column 1) | | HIGHEST NUMBER PREVIOUSLY PAID FOR (Column 2) | PRESENT EXTRA (Column 3) | RATE | ADDI-TIONAL FEE | OR | RATE | ADDI-TIONAL FEE |
|---|---|---|---|---|---|---|---|---|---|
| Total | * | Minus | ** | = | x$11= | | OR | x$22= | |
| Independent | * | Minus | *** | = | x38= | | OR | x76= | |
| FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM | | | | | +120= | | OR | +240= | |
| | | | | | **TOTAL ADDIT. FEE** | | OR | **TOTAL ADDIT. FEE** | |

* If the entry in column 1 is less than the entry in column 2, write "0" in column 3.
** If the "Highest Number Previously Paid For" IN THIS SPACE is less than 20, enter "20."
*** If the "Highest Number Previously Paid For" IN THIS SPACE is less than 3, enter "3."
The Highest Number Previously Paid For (Total or Independent) is the highest number found in the appropriate box in column 1.

FORM PTO-875 (Rev. 10/94)
Patent and Trademark Office, U.S. DEPARTMENT OF COMMERCE

Exhibit C 0047



Exhibit C 0048

| BAR CODE LABEL | | U.S. PATENT APPLICATION | |
|---|---|---|---|
| ‖‖‖‖‖‖‖‖‖‖‖‖‖ | | | |

| SERIAL NUMBER | FILING DATE | CLASS | GROUP ART UNIT |
|---|---|---|---|
| 08/374,645 | 04/27/95 | 800 | 1804 |

**APPLICANT**

KENNETH J. MCNAUGHT, NORTH EPPING, AUSTRALIA; ERIC MALONEY, TAMWORTH, AUSTRALIA; IAN L. BROWN, TAMWORTH, AUSTRALIA; ADRIAN T. KNIGHT, LANE COVE, AUSTRALIA.

```
**CONTINUING DATA*********************
VERIFIED      THIS APPLN IS A 371 OF   PCT/AU93/00389  07/30/93
```

```
**FOREIGN/PCT APPLICATIONS***********
VERIFIED      AUSTRALIA         PL 3894          07/31/92
              AUSTRALIA         PL 7266          02/12/93
```

| STATE OR COUNTRY | SHEETS DRAWING | TOTAL CLAIMS | INDEPENDENT CLAIMS | FILING FEE RECEIVED | ATTORNEY DOCKET NO. |
|---|---|---|---|---|---|
| AUX | 4 | 23 | 4 | $1,252.00 | 1451-007PCT |

**ADDRESS**

LOWE PRICE LEBLANC & BECKER
99 CANAL CENTER PLAZA SUITE 300
ALEXANDRIA VA 22314

**TITLE**

HIGH AMYLOSE STARCH AND RESISTANT STARCH FRACTIONS

This is to certify that annexed hereto is a true copy from the records of the United States Patent and Trademark Office of the application which is identified above.

By authority of the
COMMISSIONER OF PATENTS AND TRADEMARKS

| Date | Certifying Officer |
|---|---|

Exhibit C 0049

**MULTIPLE DEPENDENT CLAIM FEE CALCULATION SHEET**
*(FOR USE WITH FORM PTO-875)*

SERIAL NO. 274645   FILING DATE

APPLICANT(S)

CLAIMS

| | AS FILED IND. | AS FILED DEP. | AFTER 1st AMENDMENT IND. | AFTER 1st AMENDMENT DEP. | AFTER 2nd AMENDMENT IND. | AFTER 2nd AMENDMENT DEP. | | IND. | DEP. | IND. | DEP. | IND. | DEP. |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | 1 | | 1 | | | | 51 | | | | | | |
| 2 | | 1 | | 1 | | | 52 | | | | | | |
| 3 | | 1 | | 1 | | | 53 | | | | | | |
| 4 | | 3 | | 1 | | | 54 | | | | | | |
| 5 | | 3 | | 1 | | | 55 | | | | | | |
| 6 | | 3 | | 1 | | | 56 | | | | | | |
| 7 | | 3 | | 1 | | | 57 | | | | | | |
| 8 | 1 | | 1 | | | | 58 | | | | | | |
| 9 | | 1 | | 1 | | | 59 | | | | | | |
| 10 | | 1 | | 1 | | | 60 | | | | | | |
| 11 | | 1 | | 1 | | | 61 | | | | | | |
| 12 | 1 | | 1 | | | | 62 | | | | | | |
| 13 | | 1 | | 1 | | | 63 | | | | | | |
| 14 | | 1 | | 1 | | | 64 | | | | | | |
| 15 | | 1 | | 1 | | | 65 | | | | | | |
| 16 | 1 | | 1 | | | | 66 | | | | | | |
| 17 | | 1 | | 1 | | | 67 | | | | | | |
| 18 | | 2 | | 1 | | | 68 | | | | | | |
| 19 | | 2 | | 1 | | | 69 | | | | | | |
| 20 | | (1) | | 1 | | | 70 | | | | | | |
| 21 | | (1) | | 1 | | | 71 | | | | | | |
| 22 | | (1) | | | | | 72 | | | | | | |
| 23 | | (1) | | 1 | | | 73 | | | | | | |
| 24 | | | | | | | 74 | | | | | | |
| 25 | | | | | | | 75 | | | | | | |
| 26 | | | | | | | 76 | | | | | | |
| 27 | | | | | | | 77 | | | | | | |
| 28 | | | | | | | 78 | | | | | | |
| 29 | | | | | | | 79 | | | | | | |
| 30 | | | | | | | 80 | | | | | | |
| 31 | | | | | | | 81 | | | | | | |
| 32 | | | | | | | 82 | | | | | | |
| 33 | | | | | | | 83 | | | | | | |
| 34 | | | | | | | 84 | | | | | | |
| 35 | | | | | | | 85 | | | | | | |
| 36 | | | | | | | 86 | | | | | | |
| 37 | | | | | | | 87 | | | | | | |
| 38 | | | | | | | 88 | | | | | | |
| 39 | | | | | | | 89 | | | | | | |
| 40 | | | | | | | 90 | | | | | | |
| 41 | | | | | | | 91 | | | | | | |
| 42 | | | | | | | 92 | | | | | | |
| 43 | | | | | | | 93 | | | | | | |
| 44 | | | | | | | 94 | | | | | | |
| 45 | | | | | | | 95 | | | | | | |
| 46 | | | | | | | 96 | | | | | | |
| 47 | | | | | | | 97 | | | | | | |
| 48 | | | | | | | 98 | | | | | | |
| 49 | | | | | | | 99 | | | | | | |
| 50 | | | 1 | | | | 100 | | | | | | |
| TOTAL IND. | 4 | | 4 | | | | TOTAL IND. | | | | | | |
| TOTAL DEP. | | 29 | | 19 | | | TOTAL DEP. | | | | | | |
| TOTAL CLAIMS | 33 | | 23 | | | | TOTAL CLAIMS | | | | | | |

PTO-1350 (3-78)          *MAY BE USED FOR ADDITIONAL CLAIMS OR AMENDMENTS          U.S. DEPARTMENT of COMMERCE
Patent and Trademark Office

Exhibit C 0050

08/374645

UNITED STATES DEPARTMENT OF COMMERCE
Patent and Trademark Office
Address: COMMISSIONER OF PATENTS AND TRADEMARKS
Box PCT
Washington, D.C. 20

| US APPLICATION NO. | FIRST NAMED APPLICANT | | ATTY. DOCKET NO. |
|---|---|---|---|
| 08/374,645 | MCNAUGHT | K | 1451-007PCT |

| INTERNATIONAL APPLICATION NO. |
|---|
| PCT/AU93/00389 |

ROBERT L. PRICE        5611
LOWE, PRICE, LEBLANC & BECKER
99 CANAL CENTER PLAZA, SUITE 300
ALEXANDRIA, VIRGINIA  22314

| I.A. FILING DATE | PRIORITY DATE |
|---|---|
| 07/30/93 | 07/31/92 |

DATE MAILED:  02/28/95

## NOTIFICATION OF MISSING REQUIREMENTS UNDER 35 U.S.C. 371 IN THE UNITED STATES DESIGNATED/ELECTED OFFICE (DO/EO/US)

1. The following items have been submitted by the applicant or the IB to the United States Patent and Trademark Office as    ☐ a Designated Office (37 CFR 1.494),
☑ an Elected Office (37 CFR 1.495):

☑ U.S. Basic National Fee.
☑ Copy of the international application in:
   ☐ A non-English language.
   ☑ English.
☐ Translation of the international application into English.
☐ Oath or Declaration of inventors(s) for DO/EO/US.
☐ Copy of Article 19 amendments.
☐ Translation of Article 19 amendments into English.
☑ The International Preliminary Examination Report in English and its Annexes, if any.
☐ Translation of Annexes to the International Preliminary Examination Report into English.
☑ Preliminary amendment(s) filed   31 JAN 1995 and
☑ Information Disclosure Statement(s) filed   31 JAN 1995 and
☐ Assignment document.
☐ Power of Attorney and /or Change of Address.
☐ Substitute specification filed
☐ Verified Statement Claiming Small Entity Status.
☑ Priority Document (2)
☐ Other:

2. The following items MUST be furnished within the time period set forth below in order to complete the requirements for acceptance under 35 U.S.C. 371:

☐ a. Translation of the application into English.  Note a processing fee will be required if submitted later than the appropriate 20 or 30 months from the priority date.
   ☐ The current translation is defective for the reasons indicated on the attached Notice of Defective Translation.
☐ b. Processing fee for providing the translation of the application and/or the Annexes later than the appropriate 20 or 30 months from the priority date (37 CFR 1.492(f)).
☑ c. Oath or Declaration of the inventors, in compliance with 37 CFR 1.63, identifying the application by International application number and international filing date.
   ☐ The current oath or declaration does not comply with 37 CFR 1.63 for the reasons indicated on the attached PTO-152.
☐ d. Surcharge for providing the oath or declaration later than the appropriate 20 or 30 months from the priority date (37 CFR 1.492(e)).

3. Additional claim fees of $_____ as a ☐ large entity ☐ small entity, including any required multiple dependent claim fee, are required.  Applicant must submit the additional claim fees or cancel the additional claims for which fees are due.  See attached PTO-875.

**ALL OF THE ITEMS SET FORTH IN 2(a) -2(d) AND 3 ABOVE MUST BE SUBMITTED WITHIN ONE MONTH FROM THE DATE OF THIS NOTICE OR BY ☐ 21 or ☑ 31 MONTHS FROM THE PRIORITY DATE FOR THE APPLICATION, WHICHEVER IS LATER.  FAILURE TO PROPERLY RESPOND WILL RESULT IN ABANDONMENT.**

The time period set above may be extended by filing a petition and fee for extension of time under the provisions of 37 CFR 1.136(a).

4. Translation of the Annexes MUST be submitted no later than the time period set above or the annexes will be cancelled.  Note a processing fee will be required if submitted later than 30 months from the priority date.
5. ☐ The Article 19 amendments are cancelled since a translation was not provided by the appropriate 20 (37 CFR 1.494(d)) or 30 (37 CFR 1.495(d)) months from the priority date.

Applicant is reminded that any communication to the United States Patent and Trademark Office must be mailed to the address given in the heading and include the U.S. application no. shown above (37 CFR 1.5).

### *A copy of this notice MUST be returned with the response.*

Enclosed:  ☐ PTO-152   ☐ Notice of Defective Translation
           ☐ PTO-875

Michelle Reed Mosley
Legal Specialist

Telephone: (703)

FORM PCT/DO/EO/905 (M

Exhibit C 0051

8/374645

24 Rec. PCT/PTO 28 MAR 1995

Attorney Docket: 1451-007                                    Patent

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re Application of:            )
                                 )
     Kenneth J. MCNAUGHT et al   )
                                 )          BOX PCT
Int'l Appln. No.                 )
     PCT/AU93/00389              )
                                 )
Int'l Filing Date:              )
     July 30, 1993              )
                                 )
For:  HIGH AMYLOSE STARCH AND    )
      RESISTANT STARCH FRACTIONS)
                                 )

PETITION FOR EXTENSION OF TIME

Honorable Commissioner of
  Patents and Trademarks
Washington, D.C.  20231

Sir:

          It is respectfully requested that the time for response
to the NOTICE TO FILE MISSING REQUIREMENTS OF APPLICATION dated
February 28, 1995, now due to expire March 28, 1995, be extended
for one month and set to expire on April 28, 1995.

          Please charge the extension fee of $110.00 to Deposit
Account No. 12-2237.  Please charge any additional fees or credit
any overpayment to Deposit Account No. 12-2237.

                              Respectfully submitted,

                              LOWE, PRICE, LEBLANC & BECKER

                              Robert L. Price
                              Registration No. 22,685

99 Canal Center Plaza
Alexandria, VA  22314
   (703) 684-1111
April 27, 1995
HE19034  05/25/95  08374645          12-2237  190  115     110.00CH

Exhibit C 0052

Docket No.:



## DECLARATION, POWER OF ATTORNEY AND PETITION

As a below named inventor, I hereby declare that:

My residence, post office and citizenship are as stated below next to my name,

I believe I am the original, first and sole inventor (if only one name is listed below) or an original, first and joint inventor (if plural names are listed below) of the subject matter claimed and for which a patent is sought on the invention entitled , the specification of which  HIGH AMYLOSE STARCH AND RESISTANT STARCH FRACTIONS
[ ] is attached hereto        [X]  was filed on  as Application Serial No.  and was amended on  (if applicable)
                                        PCT/AU93/00389 filed 30 July 1993
I hereby state that I have reviewed and understand the contents of the above identified specification, including the claims, as amended by any amendment referred to above.

I acknowledge the duty to disclose information which is material to the examination of this application in accordance with Title 37, Code of Federal Regulations, Section 1.56(a).

I hereby claim foreign priority benefits under Title 35, United States Code, Section 119 of any foreign application(s) for patent or inventor's certificate listed below and have also identified below any foreign application for patent or inventor's certificate having a filing date before that of the application on which priority is claimed:

Prior Foreign Application(s):

| Number | Country | Day/Month/Year filed | Priority Claimed |  |
|--------|---------|----------------------|------|-----|
|        |         |                      | Yes  | No  |
| PL 3894 | Australia | 31 July 1992 | X | |
| PL 7266 | Australia | 12 February 1993 | X | |

I hereby claim the benefit under Title 35, United States Code, Section 120 of any United States application(s) listed below and, insofar as the subject matter of each of the claims of this application is not disclosed in the prior United States application in the manner provided by the first paragraph of Title 35, United States Code, Section 112, I acknowledge the duty to disclose material information as defined in Title 37, Code of Federal Regulations, Section 1.56(a) which occurred between the filing date of the prior application and the national or PCT international filing date of this application:

| Application Serial No. | Filing Date | Status:  Patented, Pending, Abandoned |
|------------------------|-------------|---------------------------------------|

I hereby declare that all statements made herein of my own knowledge are true and that all statements made on information and belief are believed to be true; and further that these statements were made with the knowledge that willful false statements and the like so made are punishable by fine or imprisonment, or both, under Section 1001 of Title 18 of the United States Code and that such willful false statements may jeopardize the validity of the application or any patent issued thereon.

I hereby appoint the following attorney(s) and/or agent(s):  Allan M. Lowe, Reg. No. 19,641; Robert L. Price, Reg. No. 22,685; Robert E. LeBlanc, Reg. No. 17,219; Stephen A. Becker, Reg. No. 26,527; Henry Shnr, Reg. No. 17,414; Israel Gopstein, Reg. No. 27,333; Benjamin J. Hauptman, Reg. No. 29,310; Donald C. Casey, Reg. No. 24,022; Kenneth E. Krosin, Reg. No. 25,735; Chittaranjan N. Nirmel, Reg. No. 30,408; Holly D. Kozlowski, Reg. No. 30,468; Gene Z. Rubinson, Reg. No. 33,351; Frank P. Presta, Reg. No. 19,828; Michael S. Gzybowski, Reg. No. 32,816; Robert G. Lev, Reg. No. 30,280; Keith E. George, Reg. No. 34,111; Arthur P. Demers, Reg. No. 32,660; Edward J. Wise, Reg. No. 34,523; Christopher W. Brody, Reg. No. 33,613; Demetra J. Mills, Reg. No. 34,506; Daniel Y.J. Kim, Reg. No. 36,186; Alexander Yampolsky, Reg. No. 36,324; Sharon E. Finkel, Reg. No. 35,798; Robert P. Bell, Reg. No. 34,546; and Alfred A. Stadnicki, Reg. No. 30,726. all of

LOWE, PRICE, LEBLANC & BECKER
99 Canal Center Plaza, Suite 300
Alexandria, Virginia 22314

with full power of substitution and revocation, to prosecute this application and to transact all business in the Patent and Trademark Office connected therewith, and all future correspondence should be addressed to them.

●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●

Full name of sole or first inventor:  Kenneth  J  McNAUGHT _____

Inventor's Signature_____   Date: _____ .

Residence:_____

Citizenship:_____

Post Office Address: _____

page 1 of 2

Exhibit C 0053

Docket No.:

65010.

## DECLARATION, POWER OF ATTORNEY AND PETITION

As a below named inventor, I hereby declare that:

My residence, post office and citizenship are as stated below next to my name,

I believe I am the original, first and sole inventor (if only one name is listed below) or an original, first and joint inventor (if plural names are listed below) of the subject matter claimed and for which a patent is sought on the invention entitled , the specification of which  HIGH AMYLOSE STARCH AND RESISTANT STARCH FRACTIONS
[ ] is attached hereto          [X] was filed on  as Application Serial No.  and was amended on  (if applicable)
                                           PCT/AU93/00389 filed 30 July 1993
I hereby state that I have reviewed and understand the contents of the above identified specification, including the claims, as amended by any amendment referred to above.

I acknowledge the duty to disclose information which is material to the examination of this application in accordance with Title 37, Code of Federal Regulations, Section 1.56(a).

I hereby claim foreign priority benefits under Title 35, United States Code, Section 119 of any foreign application(s) for patent or inventor's certificate listed below and have also identified below any foreign application for patent or inventor's certificate having a filing date before that of the application on which priority is claimed:

Prior Foreign Application(s):                              Priority Claimed
| Number | Country | Day/Month/Year filed | Yes | No |
|--------|---------|---------------------|-----|-----|
| PL 3894 | Australia | 31 July 1992 | X | |
| PL 7266 | Australia | 12 February 1993 | X | |

I hereby claim the benefit under Title 35, United States Code, Section 120 of any United States application(s) listed below and, insofar as the subject matter of each of the claims of this application is not disclosed in the prior United States application in the manner provided by the first paragraph of Title 35, United States Code, Section 112, I acknowledge the duty to disclose material information as defined in Title 37, Code of Federal Regulations, Section 1.56(a) which occurred between the filing date of the prior application and the national or PCT international filing date of this application:

Application Serial No.          Filing Date                 Status: Patented, Pending, Abandoned

I hereby declare that all statements made herein of my own knowledge are true and that all statements made on information and belief are believed to be true; and further that these statements were made with the knowledge that willful false statements and the like so made are punishable by fine or imprisonment, or both, under Section 1001 of Title 18 of the United States Code and that such willful false statements may jeopardize the validity of the application or any patent issued thereon.

I hereby appoint the following attorney(s) and/or agent(s): Allan M. Lowe, Reg. No. 19,641; Robert L. Price, Reg. No. 22,685; Robert E. LeBlanc, Reg. No. 17,219; Stephen A. Becker, Reg. No. 26,527; Henry Shur, Reg. No. 17,414; Israel Gopstein, Reg. No. 27,333; Benjamin J. Hauptman, Reg. No. 29,310; Donald C. Casey, Reg. No. 24,022; Kenneth E. Krosin, Reg. No. 25,735; Chittaranjan N. Nirmel, Reg. No. 30,408; Holly D. Kozlowski, Reg. No. 30,468; Gene Z. Rubinson, Reg. No. 33,351; Frank P. Presta, Reg. No. 19,828; Michael S. Grybowski, Reg. No. 32,816; Robert G. Lev, Reg. No. 30,280; Keith E. George, Reg. No. 34,111; Arthur P. Demers, Reg. No. 32,660; Edward J. Wise, Reg. No. 34,523; Christopher W. Brody, Reg. No. 33,613; Demetra J. Mills, Reg. No. 34,506; Daniel Y.J. Kim, Reg. No. 36,186; Alexander Yampolsky, Reg. No. 36,324; Sharon E. Finkel, Reg. No. 35,798; Robert P. Bell, Reg. No. 34,546; and Alfred A. Stadnicki, Reg. No. 30,226. all of

LOWE, PRICE, LEBLANC & BECKER
99 Canal Center Plaza, Suite 300
Alexandria, Virginia 22314

with full power of substitution and revocation, to prosecute this application and to transact all business in the Patent and Trademark Office connected therewith, and all future correspondence should be addressed to them.

••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••

Full name of sole or first inventor: Kenneth J McNAUGHT
Inventor's Signature_____ Date:_____
Residence:_____
Citizenship:_____
Post Office Address:_____

page 1 of 2

Exhibit C 0054

. . \ ket No:                                                                                          6 3 . 1 0

## DECLARAT JN, POWER OF ATTORNEY ND PETITION

As a below named inventor, I hereby declare that:

My residence, post office and citizenship are as stated below next to my name,

I believe I am the original, first and sole inventor (if only one name is listed below) or an original, first and joint inventor (if plural names are listed below) of the subject matter claimed and for which a patent is sought on the invention entitled , the specification of which  HIGH AMYLOSE STARCH AND RESISTANT STARCH FRACTIONS
[ ] is attached hereto        [X] was filed on  as Application Serial No.  and was amended on  (if applicable)
                                  PCT/AU93/00389  filed 30 July 1993
I hereby state that I have reviewed and understand the contents of the above identified specification, including the claims, as amended by any amendment referred to above.

I acknowledge the duty to disclose information which is material to the examination of this application in accordance with Title 37, Code of Federal Regulations, Section 1.56(a).

I hereby claim foreign priority benefits under Title 35, United States Code, Section 119 of any foreign application(s) for patent or inventor's certificate listed below and have also identified below any foreign application for patent or inventor's certificate having a filing date before that of the application on which priority is claimed:

Prior Foreign Application(s):                              Priority Claimed
Number      Country      Day/Month/Year filed          Yes      No
PL 3894     Australia    31 July 1992                  X
PL 7266     Australia    12 February 1993              X

I hereby claim the benefit under Title 35, United States Code, Section 120 of any United States application(s) listed below and, insofar as the subject matter of each of the claims of this application is not disclosed in the prior United States application in the manner provided by the first paragraph of Title 35, United States Code, Section 112, I acknowledge the duty to disclose material information as defined in Title 37, Code of Federal Regulations, Section 1.56(a) which occurred between the filing date of the prior application and the national or PCT international filing date of this application:

Application Serial No.        Filing Date          Status:  Patented, Pending, Abandoned

I hereby declare that all statements made herein of my own knowledge are true and that all statements made on information and belief are believed to be true; and further that these statements were made with the knowledge that willful false statements and the like so made are punishable by fine or imprisonment, or both, under Section 1001 of Title 18 of the United States Code and that such willful false statements may jeopardize the validity of the application or any patent issued thereon.

I hereby appoint the following attorney(s) and/or agent(s): Allan M. Lowe, Reg. No. 19,641; Robert L. Price, Reg. No. 22,685; Robert E. LeBlanc, Reg. No. 17,219; Stephen A. Becker, Reg. No. 26,527; Henry Shur, Reg. No. 17,414; Israel Gopstein, Reg. No. 27,333; Benjamin J. Hauptman, Reg. No. 29,310; Donald C. Casey, Reg. No. 24,022; Kenneth E. Krosin, Reg. No. 25,735; Chittaranjan N. Nirmel, Reg. No. 30,408; Holly D. Kozlowski, Reg. No. 30,468; Gene Z. Rubinson, Reg. No. 33,351; Frank P. Presta; Reg. No. 19,828; Michael S. Gzybowski, Reg. No. 32,816; Robert G. Lev, Reg. No. 30,280; Keith E. George, Reg. No. 34,111; Arthur P. Demers, Reg. No. 32,660; Edward J. Wise, Reg. No. 34,573; Christopher W. Brody, Reg. No. 33,613; Demetra J. Mills, Reg. No. 34,506; Daniel Y.J. Kim, Reg. No. 36,186; Alexander Yampolsky, Reg. No. 36,324; Sharon E. Finkel, Reg. No. 35,798; Robert P. Bell, Reg. No. 34,546; and Alfred A. Stadnicki, Reg. No. 30,226. all of

                    LOWE, PRICE, LEBLANC & BECKER
                    99 Canal Center Plaza, Suite 300
                    Alexandria, Virginia 22314

with full power of substitution and revocation, to prosecute this application and to transact all business in the Patent and Trademark Office connected therewith, and all future correspondence should be addressed to them.

•••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••

Full name of sole or first inventor: Kenneth J McNAUGHT _____
Inventor's Signature _____          Date: _____
Residence: _____
Citizenship: _____
Post Office Address: _____ . _____

                                                              page 1 of 2

Exhibit C 0055

65610

page 2 of 2

PCT/AU93/00389    filed 30 July 1993

HIGH AMYLOSE STARCH AND RESISTANT STARCH FRACTIONS

Full Name of Second Inventor: Eric MALONEY _____

Inventor's Signature: _____ Date: _____

Residence: _____

Citizenship: _____

Post Office Address: _____


Full Name of Third Inventor: Ian L BROWN _____

Inventor's Signature: _____ Date: ____ _ ____

Residence: _____ _____

Citizenship: _____ _____

Post Office Address: _____ _____


Full Name of Fourth Inventor: Adrian Timothy KNIGHT _____

Inventor's Signature: _____ Date: _____

Residence: _____

Citizenship: _____

Post Office Address: _____

Exhibit C 0056

89 Recd PCT/PTO 27 APR 1995    *PCT #3* 

| FORM PTO-1390 | U.S. DEPARTMENT OF COMMERCE PATENT AND TRADEMARK OFFICE | ATTORNEY'S DOCKET NUMBER |
|---|---|---|
| TRANSMITTAL LETTER TO THE UNITED STATES DESIGNATED/ELECTED OFFICE (DO/EO/US) CONCERNING A FILING UNDER 35 U.S.C. 371 | | 1451-007 |
| | | U.S. APPLIC. NO. (if known, see 37 CFR 1.5) |
| | | 08/374,645 |

| INTERNATIONAL APPLICATION NO. | INTERNATIONAL FILING DATE | PRIORITY DATE CLAIMED |
|---|---|---|
| PCT/AU93/00389 | July 30, 1993 | July 31, 1992 |

TITLE OF INVENTION

HIGH AMYLOSE STARCH AND RESISTANT STARCH FRACTIONS

APPLICANT(S) FOR DO/EO/US

Kenneth J. McNAUGHT, Eric MOLONEY, Ian L. BROWN, and Adrian Timothy KNIGHT

Applicant herewith submits to the United States Designated/Elected Office (DO/EO/US) the following items and other information:

1.  ☐  This is a FIRST submission of items concerning a filing under 35 U.S.C. 371.

2.  [X]  This is a SECOND or SUBSEQUENT submission of items concerning a filing under 35 U.S.C. 371.

3.  ☐  This express request to begin national examination procedures (35 U.S.C. 371(f)) at any time rather than delay examination until the expiration of the applicable time limit set in 35 U.S.C. 371(b) and PCT Articles 22 and 39(1).

4.  ☐  A proper Demand for International Preliminary Examination was made by the 19th month from the earliest claimed priority date.

5.  ☐  A copy of the International Application as filed (35 U.S.C. 371(c)(2))
      a. ☐ is transmitted herewith (required only if not transmitted by the International Bureau).
      b. ☐ has been transmitted by the International Bureau.
      c. ☐ is not required, as the application was filed in the United States Receiving Office (RO/US)

6.  ☐  A translation of the International Application into English (35 U.S.C. 371(c)(2)).

7.  ☐  Amendments to the claims of the International Application under PCT Article 19 (35 U.S.C. 371(c)(3))
      a. ☐ are transmitted herewith (required only if not transmitted by the International Bureau.
      b. ☐ have been transmitted by the International Bureau.
      c. ☐ have not been made; however, the time limit for making such amendment has NOT expired.
      d. ☐ have not been made and will not be made.

8.  ☐  A translation of the amendments to the claims under PCT Article 19 (35 U.S.C. 371(c)(3)).

9.  [X]  An oath or declaration of the inventor(s) (35 U.S.C. 371(c)(4)).

10. ☐  A translation of the annexes to the International Preliminary Examination Report under PCT Article 36 (35 U.S.C. 371(c)(5)).

Items 11. to 16. below concern other document(s) or information included:

11. ☐  An Information Disclosure Statement under 37 CFR 1.97 and 1.98.

12. [X]  An assignment document for recording. A separate cover sheet in compliance with 37 CFR 3.28 and 3.31 is included.

13. ☐  A FIRST preliminary amendment.
    ☐  A SECOND or SUBSEQUENT preliminary amendment.

14. ☐  A substitute specification.

15. ☐  A change of power of attorney and/or address letter.

16. [X]  Other items or information.

     This is a Response to Notice to File Missing Requirements, dated February 28, 1995.

     Please note that the second inventor's name is spelled Eric MOLONEY as reflected in the attached Declaration and Power of Attorney.

     One Month Extension of Time and fee

Exhibit C 0057

| U.S. APPLIC. NO. (if known, see 37 CFR 1.50) 08/374,645 | INTERNATIONAL APPLICATION NO. PCT/AU93/00389 | ATTORNEY'S DOCKET NUMBER 1451-007 | |
|---|---|---|---|

| | | CALCULATIONS | PTO USE ONLY |
|---|---|---|---|
| 17. [X] The following fees are submitted: | | | |
| Basic National Fee (37 CFR 1.492(a)(1)-(5)): Search Report has been prepared by the EPO or JPO | $850.00 | | |
| International preliminary examination fee paid to USPTO (37 CFR 1.482) | $660.00 | | |
| No international preliminary examination fee paid to USPTO (37 CFR 1.482) but international search fee paid to USPTO (37 CFR 1.445(e)(2)) | $730.00 | | |
| Neither international preliminary examination fee (37 CFR 1.482) nor international search fee (37 CFR 1.445(a)(2)) paid to USPTO | $980.00 | | |
| International preliminary examination fee paid to USPTO (37 CFR 1.482) and all claims satisfied provisions of PCT Article 33(2)-(4) | $92.00 | | |
| ENTER APPROPRIATE BASIC FEE AMOUNT = | | $ -0- | |
| Surcharge of $130.00 for furnishing the oath or declaration later than [] 20  [] 30 months from the earliest claimed priority date (37 CFR 1.492(e)). | | $ -0- | |

| Claims | Number Filed | Number Extra | Rate | | |
|---|---|---|---|---|---|
| Total Claims | -20 = | | x $22.00 | $ -0- | |
| Independent Claims | -3 = | | x $76.00 | $ -0- | |
| Multiple dependent claim(s) (if applicable) | | | + $240.00 | $ -0- | |
| | | TOTAL OF ABOVE CALCULATIONS = | | $ -0- | |
| Reduction by 1/2 for filing by small entity, if applicable. Verified Small Entity Statement must also be filed. (Note 37 CFR 1.9, 1.27, 1.28). | | | | $ -0- | |
| | | | SUBTOTAL = | $ -0- | |
| Processing fee of $130.00 for furnishing the English translation later than the [] 20  [] 30 months from the earliest claimed priority date (37 CFR 1.492(f)). | | | + | $ -0- | |
| | | TOTAL NATIONAL FEE = | | $ -0- | |
| Fee for recording the enclosed assignment (37 CFR 1.21(h)). The assignment must be accompanied by an appropriate cover sheet (37 CFR 3.28, 3.31). $40.00 per property | | | + | $ 160.00 | |
| | | TOTAL FEES ENCLOSED = | | $ 160.00 | |
| | | | Amount to be refunded | $ | |
| | | | charged | $ | |

a.  []   A check in the amount of $  to cover the above fees is enclosed.

b.  [X]  Please charge my Deposit Account No. 12-2237 in the amount of $ 160.00 to cover the above fees.  A duplicate copy of this sheet is enclosed.

c.  [X]  The Commissioner is hereby authorized to charge any additional fees which may be required, or credit any overpayment to Deposit Account No. 12-2237.  A duplicate copy of this sheet is enclosed.

NOTE:  Where an appropriate time limit under 37 CFR 1.494 or 1.495 has not been met, a petition to revive (37 CFR 1.137(a) or (b)) must be filed and granted to restore the application to pending status.

| SEND ALL CORRESPONDENCE TO: | *Robert L. Price* |
|---|---|
| Robert L. Price LOWE, PRICE, LEBLANC & BECKER 99 Canal Center Plaza, Suite 300 Alexandria, VA  22314 (703) 684-1111 | SIGNATURE |
| | Robert L. Price NAME |
| | 22,685 REGISTRATION NUMBER |
| | April 27, 1995 DATE |

BASED ON FORM PTO-1390 (Rev. 5-93)

Exhibit C 0058

24 Rec'd PCT/... 28 MAR 1995

| FORM PTO-1390 | U.S. DEPARTMENT OF COMMERCE PATENT AND TRADEMARK OFFICE | ATTORNEY'S DOCKET NUMBER |
|---|---|---|
| **TRANSMITTAL LETTER TO THE UNITED STATES DESIGNATED/ELECTED OFFICE (DO/EO/US) CONCERNING A FILING UNDER 35 U.S.C. 371** | | 1451-007 |
| | | U.S. APPLIC. NO. (if known, see 37 CFR 1.5) |
| | | 08/374,645 |

| INTERNATIONAL APPLICATION NO. | INTERNATIONAL FILING DATE | PRIORITY DATE CLAIMED |
|---|---|---|
| PCT/AU93/00389 | July 30, 1993 | July 31, 1992 |

TITLE OF INVENTION

HIGH AMYLOSE STARCH AND RESISTANT STARCH FRACTIONS

APPLICANT(S) FOR DO/EO/US

Kenneth J. MCNAUGHT, Eric MOLONEY, Ian L. BROWN, and Adrian Timothy KNIGHT

Applicant herewith submits to the United States Designated/Elected Office (DO/EO/US) the following items and other information:

1. ☐ This is a FIRST submission of items concerning a filing under 35 U.S.C. 371.

2. ☒ This is a SECOND or SUBSEQUENT submission of items concerning a filing under 35 U.S.C. 371.

3. ☐ This express request to begin national examination procedures (35 U.S.C. 371(f)) at any time rather than delay examination until the expiration of the applicable time limit set in 35 U.S.C. 371(b) and PCT Articles 22 and 39(1).

4. ☐ A proper Demand for International Preliminary Examination was made by the 19th month from the earliest claimed priority date.

5. ☐ A copy of the International Application as filed (35 U.S.C. 371(c)(2))
    a. ☐ is transmitted herewith (required only if not transmitted by the International Bureau).
    b. ☐ has been transmitted by the International Bureau.
    c. ☐ is not required, as the application was filed in the United States Receiving Office (RO/US)

6. ☐ A translation of the International Application into English (35 U.S.C. 371(c)(2)).

7. ☐ Amendments to the claims of the International Application under PCT Article 19 (35 U.S.C. 371(c)(3))
    a. ☐ are transmitted herewith (required only if not transmitted by the International Bureau.
    b. ☐ have been transmitted by the International Bureau.
    c. ☐ have not been made; however, the time limit for making such amendment has NOT expired.
    d. ☐ have not been made and will not be made.

8. ☐ A translation of the amendments to the claims under PCT Article 19 (35 U.S.C. 371(c)(3)).

9. ☒ An oath or declaration of the inventor(s) (35 U.S.C. 371(c)(4)).

10. ☐ A translation of the annexes to the International Preliminary Examination Report under PCT Article 36 (35 U.S.C. 371(c)(5)).

Items 11. to 16. below concern other document(s) or information included:

11. ☐ An Information Disclosure Statement under 37 CFR 1.97 and 1.98.

12. ☒ An assignment document for recording. A separate cover sheet in compliance with 37 CFR 3.28 and 3.31 is included.

13. ☐ A FIRST preliminary amendment.
    ☐ A SECOND or SUBSEQUENT preliminary amendment.

14. ☐ A substitute specification.

15. ☐ A change of power of attorney and/or address letter.

16. ☒ Other items or information.

This is a Response to Notice to File Missing Requirements, dated February 28, 1995.

Please note that the second inventor's name is spelled Eric MOLONEY as reflected in the attached Declaration and Power of Attorney.

One Month Extension of Time and fee

Exhibit C 0059