



U.S. Serial No. 08/374,645
Filed April 27, 1995
McNaught et al
Gp 1804

Patent Office
Canberra

I, DAVID DANIEL CLARKE , ASSISTANT DIRECTOR PATENT SERVICES,
hereby certify that the annexed are true copies of the Provisional specification and
drawing(s) as filed on 12 February 1993 in connection with Application No. PL 7266
for a patent by GOODMAN FIELDER WATTIE LIMITED filed on
12 February 1993.

WITNESS my hand this Eighteenth
day of February 1997

DAVID DANIEL CLARKE
ASSISTANT DIRECTOR PATENT SERVICES

Exhibit C 0060

08/374645

UNITED STATES ~ ~RTMENT OF COMMERCE
Patent and Trademar~ ~ffice
Address: COMMISSIONER OF PATENTS AND TRADEMARKS
Washington, D.C. 20231

| US APPLICATION NO. | FIRST NAMED APPLICANT | | ATTY. DOCKET NO. |
|---|---|---|---|
| 08/374.645 | MCNAUGHT | K | 1451-007PCT |

| | INTERNATIONAL APPLICATION NO. |
|---|---|
| 5611 | PCT/AU93/00389 |

ROBERT L. PRICE
LOWE. PRICE. LEBLANC & BECKER
99 CANAL CENTER PLAZA. SUITE 300
ALEXANDRIA. VIRGINIA  22314

| IA FILING DATE | PRIORITY DATE |
|---|---|
| 07/30/93 | 07/31/92 |

DATE MAILED
05/22/95

## NOTIFICATION OF ACCEPTANCE OF APPLICATION UNDER 35 U.S.C. 371
### AND 37 CFR 1.494 OR 1.495

1.  The applicant is hereby advised that the United States Patent and Trademark Office in its capacity as
☐ a Designated Office (37 CFR 1.494), ☑ an Elected Office (37 CFR 1.495), has determined
that the above identified international application has met the requirements of 35 U.S.C. 371, and is
ACCEPTED for national patentability examination in the United States Patent and Trademark Office.

2.  The United States Application Number assigned to the application is shown above and the relevant
dates are:

**27 APR 1995**        **27 APR 1995**

35 U.S.C. 102(e) DATE            DATE OF RECEIPT OF
35 U.S.C. 371 REQUIREMENTS

3.  ☑ A request for immediate examination under 35 U.S.C. 371(f) was received on **31 JAN 1995**
and the application will be examined in turn.

4.  The following items have been received:
☑ U.S. Basic National Fee.
☑ Copy of the international application in:
   ☐ non-English language.
   ☑ English.
☐ Translation of the international application into English.
☑ Oath or Declaration of inventors(s) for DO/EO/US.
☐ Copy of Article 19 amendments. ☐ Translation of Article 19 amendments into English.
       The Article 19 amendments ☐ have ☐ have not been entered.
☑ The International Preliminary Examination Report in English and its Annexes, if any.
☐ Translation of Annexes to the International Preliminary Examination Report into English.
       The Annexes ☑ have ☐ have not been entered.
☑ Preliminary amendment(s) filed **31 JAN 1995** and
☑ Information Disclosure Statement(s) filed **31 JAN 1995** and
☑ Assignment document( 4 )
☐ Power of Attorney and /or Change of Address.
☐ Substitute specification filed
☐ Verified Statement Claiming Small Entity Status.
☑ Priority Document( 1 )
☑ Copy of the Search Report ☑ and copies of the references cited therein.
☐ Other:

A Filing Receipt (PTO-103X) will be issued for the present application in due course.  Once the
Filing Receipt has been received, send all correspondence to the Group Art Unit designated thereon.

Applicant is reminded that any communication to the United States Patent and Trademark Office must be
mailed to the address given in the heading and include the U.S. application no. shown above. (37 CFR 1.5)

Michelle Reed Mosley
Paralegal Specialist

Telephone: (703)

FORM PCT/DO/EO/903 (May 1993)

Exhibit C 0061

U.S. Appl. No. 08/3746    **DO/US WORKSHEET**

International A[ . No. AU93/00289

Application filed by: ☐ 20 months  ☑ 30 months

**INTERNATIONAL APPLICATION PAPERS IN THE APPLICATION FILE:**
- ☑ International application (RECORD COPY)
- ☐ Article 19 amendments
- ☑ PCT/IB/331
- ☑ PCT/IPEA/409 IPER (PCT/IPEA/416 on front)
- ☑ Annexes to 409
- ☑ Priority document(s) No. 2
- ☐ INTERNATIONAL APPLICATION ON DOUBLE SIDED PAPER (COPIES MADE)

- ☑ Request form PCT/RO/101
- ☐ PCT/IB/302
- ☑ PCT/ISA/210-Search Report au
- ☐ Search Report references
- ☑ Other 306, 310

**RECEIPTS FROM THE APPLICANT:** (other than checked above)
- ☑ Basic National Fee (paid or authorized to charge)
- Translation of international application as filed:
  - ☐ Description
  - ☐ Claims
  - ☐ Words in the drawing figure(s)
  - ☐ Article 19 amendments
  - ☐ Annexes to 409
- ☑ Oath / Declaration
- ☐ DNA diskette

- ☑ Preliminary amendment(s) filed
- ☑ Information Disclosure Statement
- ☑ Assignment document
- ☑ Power of attorney/Change of address
- ☐ Substitute specification
- ☐ Verified small status claim
- ☐ Other

**Notes:**

| 35 U.S.C. 371 - Receipt of Request (PTO-1390) | X 3K Jan95 | | **WIPO Publication** |
|---|---|---|---|
| Date acceptable oath / declaration received | 27 APR 1995 | | Publication No. WO 94/03049 |
| Date complete 35 U.S.C 371 requirements met | 27 APR 1995 | | Publication Date 17 Feb 94 |
| 102(e) Date | 27 APR 1995 | | Publication Language Eng |
| Date of completion of DO/EO 906 - Notification of Missing 102(e) Requirements | | | Not Published |
| Date of completion of DO/EO 907 - Notification of Acceptance for 102(e) date | | | ☐ U.S. only |
| Date of completion of DO/EO 911 - Application accepted under 35 U.S.C. 1.11 | | | Designated |
| Date of completion of DO/EO 905 - Notification of Missing Requirements | | | ☐ EP request |
| Date of completion of DO/EO 916 - Notification of Defective Response | 21 FEB 95 | | |
| Date of completion of DO/EO 903 - Notification of Acceptance | 17 May 95 | | Screening done by: Michelle Reed Mosley Paralegal Specialist |
| Date of completion of DO/EO 909 - Notification of Abandonment | | | |

Exhibit C 0062

08/374645

31 JAN 1995

Attorney Docket: 1451-007PCT

5/a

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re Application of:          )
    Kenneth J. McNAUGHT et al.  )
                               )          BOX PCT
Int'l Appln. No.               )
    PCT/AU93/00389             )
                               )
Int'l Filing Date:             )
    July 30, 1993             )
                               )
For: HIGH AMYLOSE STARCH AND   )
     RESISTANT STARCH FRACTIONS)
                               )

Paper
No. 5

PRELIMINARY AMENDMENT

Honorable Commissioner of
    Patents and Trademarks
Washington, D.C.  20231

Sir:

    Preliminary to examination of the above-referenced

application, please amend the application as follows:

IN THE CLAIMS

    Claim 4, line 1  change "any one of claims 1 to 3" to --claim

3--.

    Claim 16, line 7  after "starch"  add  --prior to

fractionation--.

    Claim 18, line 1  delete "claim 16 or".

    Claim 20, line 1  change "any one of claims 16 to 20" to --

claim 16--.

    Claim 21, line 1  change "any one of claims 16 to 20" to --

claim 17--.

    Claim 21, line 5 change "starches" to  --starch prior to

fractionation--.

Exhibit C 0063

Claim 22, line 1 change "any one of claims 16 to 21" to -- claim 16--.

Claim 23, line 2 change "any one of claims 16 to 22" to -- claim 16--.

### REMARKS

The above-referenced application is amended to reflect changes made in the Amendment under PCT Article 34 as well as delete the multiple dependency of claims 4, 18, and 20-23 to avoid the multiple dependent claim filing fee.

Respectfully submitted,

LOWE, PRICE, LEBLANC & BECKER

Robert L. Price
Registration No. 22,685

99 Canal Center Plaza
Suite 300
Alexandria, VA  22314
  (703) 684-1111
January 31, 1995

Exhibit C 0064

Rec'd PCT/PTO  ̇1 JAN 1995                          08/374645

| FORM PTO-1390 · | U.S. DEP... ..NT OF COMMERCE PATENT AND TRADEMARK OFFICE | ATT... ..NEY'S DOCKET NUMBER |
|---|---|---|
| **TRANSMITTAL LETTER ＊ ＊THE UNITED STATES DESIGNATED/ELECTED OFFICE (DO/EO/US) CONCERNING A FILING UNDER 35 U.S.C. 371** | | 14.. ..?PCT |
| | | U.S. APPLIC. NO. (if known, see 37 CFR 1.5) |

| INTERNATIONAL APPLICATION NO. | INTERNATIONAL FILING DATE | PRIORITY DATE CLAIMED |
|---|---|---|
| PCT/AU93/00389 | July 30, 1993 | July 31, 1992 |

TITLE OF INVENTION

HIGH AMYLOSE STARCH AND RESISTANT STARCH FRACTIONS

APPLICANT(S) FOR DO/EO/US

Kenneth J. McNAUGHT, Eric MALONEY, Ian L. BROWN and Adrian Timothy KNIGHT

Applicant herewith submits to the United States Designated/Elected Office (DO/EO/US) the following items and other information:

1.  [X]   This is a FIRST submission of items concerning a filing under 35 U.S.C. 371.

2.  []    This is a SECOND or SUBSEQUENT submission of items concerning a filing under 35 U.S.C. 371.

3.  [X]   This express request to begin national examination procedures (35 U.S.C. 371(f)) at any time rather than delay examination until the expiration of the applicable time limit set in 35 U.S.C. 371(b) and PCT Articles 22 and 39(1).

4.  []    A proper Demand for International Preliminary Examination was made by the 19th month from the earliest claimed priority date.

5.  [X]   A copy of the International Application as filed (35 U.S.C. 371(c)(2))
          a.  [X]  is transmitted herewith (required only if not transmitted by the International Bureau).
          b.  [X]  has been transmitted by the International Bureau.
          c.  []   is not required, as the application was filed in the United States Receiving Office (RO/US)

6.  []    A translation of the International Application into English (35 U.S.C. 371(c)(2)).

7.  []    Amendments to the claims of the International Application under PCT Article 19 (35 U.S.C. 371(c)(3)).
          a.  []   are transmitted herewith (required only if not transmitted by the International Bureau).
          b.  []   have been transmitted by the International Bureau.
          c.  []   have not been made; however, the time limit for making such amendment has NOT expired.
          d.  []   have not been made and will not be made.

8.  []    A translation of the amendments to the claims under PCT Article 19 (35 U.S.C. 371(c)(3)).

9.  []    An oath or declaration of the inventor(s) (35 U.S.C. 371(c)(4)).

10. []    Annexes to the International Preliminary Examination Report under PCT Article 36 (35 U.S.C. 371(c)(5)).

Items 11. to 16. below concern other document(s) or information included:

11. [X]   An Information Disclosure Statement under 37 CFR 1.97 and 1.98.

12. []    An assignment document for recording. A separate cover sheet in compliance with 37 CFR 3.28 and 3.31 is included.

13. [X]   A FIRST preliminary amendment.
    []    A SECOND or SUBSEQUENT preliminary amendment.

14. []·   A substitute specification.

15. []    A change of power of attorney and/or address letter.

16. ·[]   Other items or information.

Exhibit C 0065

| U.S. APPLIC. NO. (if known, see 37 CFR 1.oo) | ...ERNATIONAL APPLICATION NO. | | ...NEY'S DOCKET NUMBER | |
|---|---|---|---|---|
| | ...CT/AU93/00389 | | 14...57PCT | |
| | | | CALCULATIONS | PTO USE ONLY |

| | | | | CALCULATIONS | PTO USE ONLY |
|---|---|---|---|---|---|
| 17. [X] The following fees are submitted: | | | | | |
| Basic National Fee [37 CFR 1.492(a)(1)-(5)]: Search Report has been prepared by the EPO or JPO | | | $850.00 | | |
| International preliminary examination fee paid to USPTO (37 CFR 1.482) | | | $550.00 | | |
| No international preliminary examination fee paid to USPTO (37 CFR 1.482) but international search fee paid to USPTO (37 CFR 1.445(a)(2)) | | | $730.00 | | |
| Neither international preliminary examination fee (37 CFR 1.482) nor international search fee (37 CFR 1.445(a)(2)) paid to USPTO | | | $980.00 | | |
| International preliminary examination fee paid to USPTO (37 CFR 1.482) and all claims satisfied provisions of PCT Article 33(2)-(4) | | | $92.00 | | |
| | | ENTER APPROPRIATE BASIC FEE AMOUNT = | | $ 980.00 | |
| Surcharge of $130.00 for furnishing the oath or declaration later than [] 20  [X] 30 months from the earliest claimed priority date (37 CFR 1.492(e)). | | | | $ 130.00 | |
| Claims | Number Filed | Number Extra | Rate | | |
| Total Claims | 23  -20 = | 3 | x $22.00 | $ 66.00 | |
| Independent Claims | 4  -3 = | 1 | x $76.00 | $ 76.00 | |
| Multiple dependent claim(s) (if applicable) | | | + $240.00 | $ 0.00 | |
| | | TOTAL OF ABOVE CALCULATIONS = | | $ 1,252.00 | |
| Reduction by 1/2 for filing by small entity, if applicable. Verified Small Entity Statement must also be filed. (Note 37 CFR 1.9, 1.27, 1.28). | | | | $ | |
| | | SUBTOTAL = | | $ 1,252.00 | |
| Processing fee of $130.00 for furnishing the English translation later than the [] 20  [] 30 months from the earliest claimed priority date (37 CFR 1.492(f)). | | | + | $ 0.00 | |
| | | TOTAL NATIONAL FEE = | | $ 1,252.00 | |
| Fee for recording the enclosed assignment (37 CFR 1.21(h)). The assignment must be accompanied by an appropriate cover sheet (37 CFR 3.28, 3.31). $40.00 per property | | | + | $ 0.00 | |
| | | TOTAL FEES ENCLOSED = | | $ 1,252.00 | |
| | | | Amount to be: refunded | $ | |
| | | | charged | $ | |

a.  []:  A check in the amount of $ to cover the above fees is enclosed.

b.  [X]  Please charge my Deposit Account No. 12-2237 in the amount of $ 1,252.00 to cover the above fees. A duplicate copy of this sheet is enclosed.

c.  [X]  The Commissioner is hereby authorized to charge any additional fees which may be required, or credit any overpayment to Deposit Account No. 12-2237. A duplicate copy of this sheet is enclosed.

NOTE: Where an appropriate time limit under 37 CFR 1.494 or 1.495 has not been met, a petition to revive (37 CFR 1.137(a) or (b)) must be filed and granted to restore the application to pending status.

SEND ALL CORRESPONDENCE TO:

Robert L. Price
LOWE, PRICE, LEBLANC & BECKER
99 Canal Center Plaza, Suite 300
Alexandria, VA 22314
(703) 684-1111

SIGNATURE _Robert L. Price_

Robert L. Price
NAME

22,685
REGISTRATION NUMBER

January 31, 1995
DATE

BASED ON FORM PTO-1390 (Rev. 5-93)

Exhibit C 0066

*Cust. Corres #6*

Attorney Docket:  1451-007PCT                    PATENT

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re Application of:              :
                                   :
    Kenneth J. McNAUGHT et al      :
                                   :   Group Art Unit:  1804
Serial No.  08/374,645             :
                                   :   Examiner:
Filed:  April 27, 1995             :
                                   :
For:    HIGH AMYLOSE STARCH AND RESISTANT STARCH FRACTIONS

<u>REQUEST FOR CORRECTED FILING RECEIPT</u>

Honorable Commissioner of
  Patents and Trademarks
Washington, D.C.  20231

Sir:

        Attached is a copy of the Filing Receipt received from
the U.S. Patent and Trademark Office in the above-referenced
application.  Also attached is a copy of the Declaration, Power of
Attorney and Petition.  The second inventor's last name, is spelled
incorrectly.  It is requested that a corrected filing receipt be
issued.

                        Respectfully submitted,

                        LOWE, PRICE , LEBLANC & BECKER

                        Robert L. Price
                        Registration No. 22,685

99 Canal Center Plaza
Suite 300
Alexandria, VA  22314
(703) 684-1111 RLP:gah
July 18, 1995

Exhibit C 0067



PTO-103X
(Rev. 7-83)
**FILING RECEIPT**

**UNITED STA. .. ARTMENT OF COMMERCE**
Patent and Trademark Office
ASSISTANT SECRETARY AND COMMISSIONER
OF PATENTS AND TRADEMARKS
Washington, D.C. 20231

| APPLICATION NUMBER | FILING DATE | GRP ART UNIT | FIL FEE REC'D | ATTORNEY DOCKET NO. / DRWGS | TOT CL | IND CL |
|---|---|---|---|---|---|---|
| 08/374,645 | 04/27/95 | 1804 | $1,252.00 | Lowe Price LeBlanc & Becker | 23 | 4 |

LOWE PRICE LEBLANC & BECKER
99 CANAL CENTER PLAZA SUITE 300
ALEXANDRIA VA  22314

RECEIVED JUL 1 1 1995

Receipt is acknowledged of this nonprovisional Patent Application. It will be considered in its order and you will be notified as to the results of the examination. Be sure to provide the U.S. APPLICATION NUMBER, FILING DATE, NAME OF APPLICANT, and TITLE OF INVENTION when inquiring about this application. Fees transmitted by check or draft are subject to collection. Please verify the accuracy of the data presented on this receipt. If an error is noted on this Filing Receipt, please write to the Application Processing Division's Customer Correction Branch within 10 days of receipt. Please provide a copy of the Filing Receipt with the changes noted thereon.

Applicant(s)
KENNETH J. MCNAUGHT, NORTH EPPING, AUSTRALIA; ERIC
MALONEY, TAMWORTH, AUSTRALIA; IAN L. BROWN, TAMWORTH,
AUSTRALIA; ADRIAN T. KNIGHT, LANE COVE, AUSTRALIA.

CONTINUING DATA AS CLAIMED BY APPLICANT—
THIS APPLN IS A 371 OF PCT/AU93/00389 07/30/93

FOREIGN/PCT APPLICATIONS—AUSTRALIA          PL 3894          07/31/92
                              AUSTRALIA          PL 7266          02/12/93

TITLE
HIGH AMYLOSE STARCH AND RESISTANT STARCH FRACTIONS

PRELIMINARY CLASS: 800

Exhibit C 0068

6.5010

## DECLAR⌐~ON, POWER OF ATTORN~~ AND PETITION

As a below named inventor, I hereby declare that:

My residence, post office and citizenship are as stated below next to my name,

I believe I am the original, first and sole inventor (if only one name is listed below) or an original, first and joint inventor (if plural names are listed below) of the subject matter claimed and for which a patent is sought on the invention entitled , the specification of which HIGH AMYLOSE STARCH AND RESISTANT STARCH FRACTIONS
[ ] is attached hereto    [X] was filed on as Application Serial No. and was amended on (if applicable)
PCT/AU93/00389 filed 30 July 1993
I hereby state that I have reviewed and understand the contents of the above identified specification, including the claims, as amended by any amendment referred to above.

I acknowledge the duty to disclose information which is material to the examination of this application in accordance with Title 37, Code of Federal Regulations, Section 1.56(a).

I hereby claim foreign priority benefits under Title 35, United States Code, Section 119 of any foreign application(s) for patent or inventor's certificate listed below and have also identified below any foreign application for patent or inventor's certificate having a filing date before that of the application on which priority is claimed:

Prior Foreign Application(s):                                   Priority Claimed
Number    Country    Day/Month/Year filed                      Yes    No
PL 3894   Australia  31 July 1992                               X
PL 7266   Australia  12 February 1993                           X

I hereby claim the benefit under Title 35, United States Code, Section 120 of any United States application(s) listed below and, insofar as the subject matter of each of the claims of this application is not disclosed in the prior United States application in the manner provided by the first paragraph of Title 35, United States Code, Section 112, I acknowledge the duty to disclose material information as defined in Title 37, Code of Federal Regulations, Section 1.56(a) which occurred between the filing date of the prior application and the national or PCT international filing date of this application:

Application Serial No.    Filing Date         Status: Patented, Pending, Abandoned

I hereby declare that all statements made herein of my own knowledge are true and that all statements made on information and belief are believed to be true; and further that these statements were made with the knowledge that willful false statements and the like so made are punishable by fine or imprisonment, or both, under Section 1001 of Title 18 of the United States Code and that such willful false statements may jeopardize the validity of the application or any patent issued thereon.

I hereby appoint the following attorney(s) and/or agent(s): Allan M. Lowe, Reg. No. 19,641; Robert L. Price, Reg. No. 22,685; Robert E. LeBlanc, Reg. No. 17,219; Stephen A. Becker, Reg. No. 26,527; Henry Shur, Reg. No. 17,414; Israel Gopstein, Reg. No. 27,333; Benjamin J. Hauptman, Reg. No. 29,310; Donald C. Casey, Reg. No. 24,022; Kenneth E. Krosin, Reg. No. 25,735; Chittaranjan N. Nirmel, Reg. No. 30,408; Holly D. Kozlowski, Reg. No. 30,468; Gene Z. Rubinson, Reg. No. 33,351; Frank P. Presta; Reg. No. 19,828; Michael S. Gzybowski, Reg. No. 32,816; Robert G. L~~, Reg. No. 30,280; Keith E. George, Reg. No. 34,111; Arthur P. Demers, Reg. No. 32,660; Edward J. Wise, Reg. No. 34,523; Christopher W. Brody, Reg. No. 33,613; Demetra J. Mills, Reg. No. 34,506; Daniel Y.J. Kim, Reg. No. 36,186; Alexander Yampolsky, Reg. No. 36,324; Sharon E. Finkel, Reg. No. 35,798; Robert P. Bell, Reg. No. 34,546; and Alfred A. Stadnicki, Reg. No. 30,226. all of

LOWE, PRICE, LEBLANC & BECKER
99 Canal Center Plaza, Suite 300
Alexandria, Virginia 22314

with full power of substitution and revocation, to prosecute this application and to transact all business in the Patent and Trademark Office connected therewith, and all future correspondence should be addressed to them.

*************************************************************************************************************

Full name of sole or first inventor: Kenneth J McNAUGHT
Inventor's Signature _____    Date: _____
Residence: _____
Citizenship: _____
Post Office Address: _____

page 1 of 2

Exhibit C 0069

page 2 of 2

PCT/AU93/00389    filed 30 July 1993

HIGH AMYLOSE STARCH AND RESISTANT STARCH FRACTIONS

Full Name of Second Inventor: Eric ~~MALONEY~~ MOLONEY  *ERM. 11/4/95*

Inventor's Signature: *E.R.Moloney*                Date: 22/12/94.

Residence: 169 Brisbane Street, Tamworth, NSW 2340, Australia

Citizenship: Australian

Post Office Address:   As above


Full Name of Third Inventor: Ian L BROWN

Inventor's Signature: _____ Date: _____

Residence: _____

Citizenship: _____

Post Office Address: _____


Full Name of Fourth Inventor: Adrian Timothy KNIGHT

Inventor's Signature: _____ Date: _____

Residence: _____

Citizenship: _____

Post Office Address: _____

Exhibit C 0070



Docket No.: 1451 <u>DUZ2CB</u>

PATENT

*#17*
*- Applications.*
*9-15-95*

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re Application of            :
                                :
Kenneth J. McNAUGHT et al       :
                                :
Serial No. 08/374,645           :    Group Art Unit: 1804
                                :
Filed:  April 27, 1995          :    Examiner:
                                :
For:    HIGH AMYLOSE STARCH AND RESISTANT STARCH FRACTIONS

<u>INFORMATION DISCLOSURE STATEMENT</u>

Honorable Commissioner of
 Patents and Trademarks
Washington, D. C.  20231

Sir:

    In accordance with the provisions of 37 C.F.R. 1.56, 1.97 and

1.98, the attention of the Patent and Trademark Office is hereby

directed to the references listed on the attached form PTO-1449.

It is respectfully requested that the references be expressly

considered during the prosecution of this application, and that the

references be made of record therein and appear among the

"References Cited" on any patent to issue therefrom.

    This Information Disclosure Statement is being filed within

three months of the U.S. filing date OR before the mailing date of

a first Office Action on the merits.  No certification or fee is

required.

1

Exhibit C 0071

Serial No. 08/374,645

    The relevance of each non-English language reference is discussed in the present specification.

                       Respectfully submitted,

                       LOWE, PRICE, LEBLANC & BECKER

                       Robert L. Price
                       Registration No. 22,685

99 Canal Center Plaza, Suite 300
Alexandria, Virginia  22314
(703) 684-1111 RLP:ajb
Date:  August 30, 1995

2

Exhibit C 0072

SHEET 1 OF 1

| LIST OF ART CITED BY APPLICANT<br><br>(PTO-1449) | ATTY. DOCKET NO.<br>1451-007PCT | SERIAL NO.<br>08/374,645 |
|---|---|---|
| | APPLICANT<br>Kenneth J. McNAUGHT et al | |
| | FILING DATE<br>April 27, 1995 | GROUP<br>1804 / 207 |

**U.S. PATENT DOCUMENTS**

| EXAMINER'S INITIALS | PATENT NO. | DATE | NAME | CLASS | SUBCLASS | FILING DATE |
|---|---|---|---|---|---|---|
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

**FOREIGN PATENT DOCUMENTS**

| EXAMINER'S INITIALS | PATENT NO. | DATE | COUNTRY | CLASS | SUBCLASS | Translation Yes | No |
|---|---|---|---|---|---|---|---|
| ллл | PL 0537 | 12/24/92 | Australia | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

**OTHER ART (Including Author, Title, Date, Pertinent Pages, Etc.)**

| | |
|---|---|
| ллл | Fractionation and Characterization of Dent Corn and Amylomaize Starch Granules - by J.E. Cluskey, C.A. Knutson and G.E. Inglett, Peoria - Starch/Starke 32 (1980), Nr. 4, S. 105-109 |
| | |
| | |

| EXAMINER | DATE CONSIDERED 11-96 |
|---|---|

EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609; draw line through citation if not in conformance and not considered. Include copy of this form with next communication to Applicant.

3

Exhibit C 0073

Docket No.: 1451-007PCT

*1805*
*VEITENHEIMER E.*

PATENT

MAIL ROOM
MAR
S2   13
1996
PAT. & TRADEMARK

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re Application of            :
                                :
Kenneth J. McNAUGHT et al       :
                                :            *1803*
Serial No. 08/374,645           :    Group Art Unit: 1804
                                :
Filed:   April 27, 1995         :    Examiner: VEITENHEIMER E,
                                :
For:   HIGH AMYLOSE STARCH AND RESISTANT STARCH FRACTIONS

INFORMATION DISCLOSURE STATEMENT

Honorable Commissioner of
 Patents and Trademarks
Washington, D. C.   20231

Sir:

        In accordance with the provisions of 37 C.F.R. 1.56, 1.97 and 1.98, the attention of the Patent and Trademark Office is hereby directed to the references listed on the attached form PTO-1449. It is respectfully requested that the references be expressly considered during the prosecution of this application, and that the references be made of record therein and appear among the "References Cited" on any patent to issue therefrom.

        This Information Disclosure Statement is being filed within three months of the U.S. filing date OR before the mailing date of a first Office Action on the merits.   No certification or fee is required.

1

Exhibit C 0074

Serial No. 08/374,645

Each English language reference was cited in a corresponding foreign application search report or office action and its relevance discussed therein. A copy of the foreign search report or office action is attached for the Examiner's information.

Respectfully submitted,

LOWE, PRICE, LEBLANC & BECKER

Robert L. Price
Registration No. 22,685

99 Canal Center Plaza, Suite 300
Alexandria, Virginia  22314
(703) 684-1111 RLP:ajb
Date:  March 13, 1996

2

Exhibit C 0075

SHEET 1 OF 1

| LIST OF ART CITED BY APPLICANT<br><br>(PTO-1449) | ATTY. DOCKET NO.<br>1451-007PCT | SERIAL NO.<br>08/374,645 |
|---|---|---|
| | APPLICANT<br>Kenneth J. McNAUGHT et al | |
| | FILING DATE<br>April 27, 1995 | GROUP<br>1804 - 1 2 0 7 |

**U.S. PATENT DOCUMENTS**

| EXAMINER'S INITIALS | PATENT NO. | DATE | NAME | CLASS | SUBCLASS | FILING DATE |
|---|---|---|---|---|---|---|
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

**FOREIGN PATENT DOCUMENTS**

| EXAMINER'S INITIALS | PATENT NO. | DATE | COUNTRY | CLASS | SUBCLASS | Translation Yes | No |
|---|---|---|---|---|---|---|---|
| ~ | 0 118 240 | 9/12/84 | EPC | | | | |
| | | | | | | | |
| | | | | | | | |

**OTHER ART (Including Author, Title, Date, Pertinent Pages, Etc.)**

| | |
|---|---|
| ~ | Cereal Chemistry - Volme 52, No. 6, November-December 1975 |
| ~ | Chemical Characteristics and Physico-chemical Properties of the Extruded Mixtures of Cereal Starches - By L. Fornal et al., Starch/Starke 39 *1987) Nr. 3, p. 75-78 |
| ~ | Corn Harndess Determination, Y. Pomeranz, et al. - Cereal Chem. 61(2):174-150, vol. 61, No. 2, 1984 |

| EXAMINER | DATE CONSIDERED 11-96 |
|---|---|

EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609; draw line through citation if not in conformance and not considered. Include copy of this form with next communication to Applicant.

Exhibit C 0076



**UNITED STATES DEPARTMENT OF COMMERCE**
Patent and Trademark Office
Address: COMMISSIONER OF PATENTS AND TRADEMARKS
Washington, D.C. 20231

| SERIAL NUMBER | FILING DATE | FIRST NAMED APPLICANT | ATTORNEY DOCKET NO. |
|---|---|---|---|
| 08/374,645 | 04/27/95 | MCNAUGHT | K   1451-007EC |

```
                                    18M2/0809
LOWE PRICE LEBLANC & BECKER
99 CANAL CENTER PLAZA SUITE 300
ALEXANDRIA VA  22314
```

| HAAS EXAMINER | |
|---|---|
| ART UNIT | PAPER NUMBER |
| 1803 | |

DATE MAILED:

08/09/96

Please find below a communication from the EXAMINER in charge of this application.

Commissioner of Patents

Exhibit C 0077

| | Application No. | Applicant(s) | |
|---|---|---|---|
| **Office Action Summary** | 08/374,645 | McNaught et al. | |
| | Examiner | Group Art Unit | |
| | Thomas Haas | 1803 | |

☐ Responsive to communication(s) filed on _____

☐ This action is FINAL.

☐ Since this application is in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under *Ex parte Quayle*, 1935 C.D. 11; 453 O.G. 213.

A shortened statutory period for response to this action is set to expire ____*0*____ month(s), or thirty days, whichever is longer, from the mailing date of this communication. Failure to respond within the period for response will cause the application to become abandoned. (35 U.S.C. § 133). Extensions of time may be obtained under the provisions of 37 CFR 1.136(a).

**Disposition of Claims**

    ☒ Claim(s) *1-23* _____ is/are pending in the application.

        Of the above, claim(s) _____ is/are withdrawn from consideration.

    ☐ Claim(s) _____ is/are allowed.

    ☐ Claim(s) _____ is/are rejected.

    ☐ Claim(s) _____ is/are objected to.

    ☒ Claims *1-23* _____ are subject to restriction or election requirement.

**Application Papers**

    ☐ See the attached Notice of Draftsperson's Patent Drawing Review, PTO-948.

    ☐ The drawing(s) filed on _____ is/are objected to by the Examiner.

    ☐ The proposed drawing correction, filed on _____ is ☐ approved ☐ disapproved.

    ☐ The specification is objected to by the Examiner.

    ☐ The oath or declaration is objected to by the Examiner.

**Priority under 35 U.S.C. § 119**

    ☐ Acknowledgement is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d).

        ☐ All ☐ Some* ☐ None of the CERTIFIED copies of the priority documents have been

            ☐ received.

            ☐ received in Application No. (Series Code/Serial Number) _____.

            ☐ received in this national stage application from the International Bureau (PCT Rule 17.2(a)).

        *Certified copies not received: _____

    ☐ Acknowledgement is made of a claim for domestic priority under 35 U.S.C. § 119(e).

**Attachment(s)**

    ☐ Notice of References Cited, PTO-892

    ☐ Information Disclosure Statement(s), PTO-1449, Paper No(s). _____

    ☐ Interview Summary, PTO-413

    ☐ Notice of Draftsperson's Patent Drawing Review, PTO-948

    ☐ Notice of Informal Patent Application, PTO-152

*— SEE OFFICE ACTION ON THE FOLLOWING PAGES —*

Exhibit C 0078

Serial Number: 08/374,645                                    -2-
Art Unit: 1803

Part III   DETAILED ACTION

*Election/Restriction*

Restriction to one of the following inventions is required under 35 U.S.C. § 121:

I.   Claims 1-6, drawn to hybrid maize seed, classified in Class 800, subclass 250, for example.

II.  Claims 8-23, drawn to maize starch having an amylose content of greater than 80%, classified in Class 536, subclass 102, for example.

The inventions are distinct, each from the other because of the following reasons:

The inventions are patentably distinct because they are not linked by a single special technical feature. The claims are not drawn to a single maize plant with a single genotype, or starch produced from a single maize plant. Furthermore, the inventions are both biochemically and physiologically divergent (seeds with modified genotype vs. starch with a modified amylose content).

Because these inventions are distinct for the reasons given above and have acquired a separate status in the art as shown by their divergent classification and recognized divergent subject matter, restriction for examination purposes as indicated is proper.

Applicant is reminded that upon the cancellation of claims to a non-elected invention, the inventorship must be amended in compliance with 37 C.F.R. § 1.48(b) if one or more of the currently named inventors is no longer an inventor of at least one claim remaining in the application. Any amendment of inventorship must be accompanied by a diligently-filed petition under 37 C.F.R. § 1.48(b) and by the fee required under 37 C.F.R. § 1.17(h).

Exhibit C 0079

Serial Number: 08/374,645                                    -3-
Art Unit: 1803

    Applicant is advised that the response to this requirement
to be complete must include an election of the invention to be
examined even though the requirement be traversed.

Any inquiry concerning this communication or earlier
communications from the examiner should be directed to Thomas
Haas whose telephone number is (703) 305-7270.  The examiner can
normally be reached on Mon.-Fri. from 7:00 to 4:30.

If attempts to reach the examiner by telephone are unsuccessful,
the examiner's supervisor, Doug Robinson, can be reached on (703)
308-2897.  The fax phone number for this Group is (703) 308-4227.

Any inquiry of a general nature or relating to the status of this
application or proceeding should be directed to the Group
receptionist whose telephone number is (703) 308-0196.

tmh
August 6, 1996

                                            DAVID T. FOX
                                        PRIMARY EXAMINER
                                            GROUP 180

Exhibit C 0080

Docket No.:   1451-007PCT                                      PATENT

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re Application of                      :

Kenneth J. McNAUGHT et al                 :

Serial No. 08/374,645                     :    Group Art Unit:  1804

Filed:  April 27, 1995                    :    Examiner:  T. Haas

For:    HIGH AMYLOSE STARCH AND RESISTANT STARCH FRACTIONS

RESPONSE TO OFFICIAL ACTION

Honorable Commissioner of
   Patents and Trademarks
Washington, D. C.  20231

Sir:

This is in response to the Official Action dated August 9,
1996 in this application.  In the Action, the Examiner requires
restriction between the following inventions:

Group I - claims 1-6, drawn to a hybrid maize seed; and

Group II - claims 8-23, drawn to maize starch having an
amylose content of greater than 80%.

In response to this requirement, Applicants elect Group II,
claims 8-23, drawn to the maize starch.

The requirement for restriction is respectfully traversed and
reconsideration is requested.

The Examiner holds that the inventions are patentably distinct
because they are not linked by a single special technical feature.
Applicant disagrees with this contention.  Claim 1, a main claim of

1

Exhibit C 0081

Serial No. 08/374,645

Group I is directed to a hybrid maize seed capable of producing a starch having an amylose content of more than 80%. Claim 8, the main claim of Group II, is a starch which can be produced from the maize seed of claim 1. Therefore, Applicants submit that the inventions are linked by a special technical feature. Therefore, reconsideration of the requirement for restriction is respectfully traversed. It is believed that the above represents a complete response to the Official Action and reconsideration is requested.

Respectfully submitted,

LOWE, PRICE, LEBLANC & BECKER

Robert L. Price
Registration No. 22,685

99 Canal Center Plaza, Suite 300
Alexandria, Virginia 22314
(703) 684-1111 RLP:ajb
Date: September 9, 1996

2

Exhibit C 0082



**UNITED STATES DEPARTMENT OF COMMERCE**
Patent and Trademark Office
Address: COMMISSIONER OF PATENTS AND TRADEMARKS
Washington, D.C. 20231

| SERIAL NUMBER | FILING DATE | FIRST NAMED INVENTOR | | ATTORNEY DOCKET NO. |
|---|---|---|---|---|
| 08/374,645 | 04/27/95 | MCNAUGHT | K | 1451-007PCT |

12M1/1216

LOWE PRICE LEBLANC & BECKER
99 CANAL CENTER PLAZA SUITE 300
ALEXANDRIA VA 22314

| EXAMINER |
|---|
| NUTTER, N |

| ART UNIT | PAPER NUMBER |
|---|---|
| 1207 | 11 |

DATE MAILED: 12/16/96

This is a communication from the examiner in charge of your application.
COMMISSIONER OF PATENTS AND TRADEMARKS

☒ This application has been examined    ☒ Responsive to communication filed on 9 Sept 1996    ☐ This action is made final.

A shortened statutory period for response to this action is set to expire ___3___ month(s), _____days from the date of this letter.
Failure to respond within the period for response will cause the application to become abandoned. 35 U.S.C. 133

**Part I    THE FOLLOWING ATTACHMENT(S) ARE PART OF THIS ACTION:**

1. ☒ Notice of References Cited by Examiner, PTO-892.       2. ☒ Notice of Draftsman's Patent Drawing Review, PTO-948.
3. ☒ Notice of Art Cited by Applicant, PTO-1449.            4. ☐ Notice of Informal Patent Application, PTO-152.
5. ☐ Information on How to Effect Drawing Changes, PTO-1474.  6. ☐ _____

**Part II    SUMMARY OF ACTION**

1. ☒ Claims _____1 – 23_____ are pending in the application.

   Of the above, claims _____1 – 7_____ are withdrawn from consideration.

2. ☐ Claims _____ have been cancelled.

3. ☐ Claims _____ are allowed.

4. ☒ Claims _____8 – 23_____ are rejected.

5. ☐ Claims _____ are objected to.

6. ☐ Claims _____ are subject to restriction or election requirement.

7. ☒ This application has been filed with informal drawings under 37 C.F.R. 1.85 which are acceptable for examination purposes.

8. ☐ Formal drawings are required in response to this Office action.

9. ☐ The corrected or substitute drawings have been received on _____. Under 37 C.F.R. 1.84 these drawings
   are ☐ acceptable; ☐ not acceptable (see explanation or Notice of Draftsman's Patent Drawing Review, PTO-948).

10. ☐ The proposed additional or substitute sheet(s) of drawings, filed on _____, has (have) been ☐ approved by the
    examiner; ☐ disapproved by the examiner (see explanation).

11. ☐ The proposed drawing correction, filed _____, has been ☐ approved; ☐ disapproved (see explanation).

12. ☒ Acknowledgement is made of the claim for priority under 35 U.S.C. 119. The certified copy has ☒ been received ☐ not been received
    ☐ been filed in parent application, serial no. _____; filed on _____.

13. ☐ Since this application appppears to be in condition for allowance except for formal matters, prosecution as to the merits is closed in
    accordance with the practice under Ex parte Quayle, 1935 C.D. 11; 453 O.G. 213.

14. ☐ Other

**EXAMINER'S ACTION**

PTOL-326 (Rev. 2/93)

Exhibit C 0083

Serial Number: 08/374,645                                                    -2-

Art Unit: 1207

This application does not contain an Abstract of the Disclosure as required by 37 C.F.R. § 1.72(b). An Abstract on a separate sheet is required.

Applicant's election with traverse of Group II, claims 8-23 in Paper No. 10 is acknowledged. The traversal is on the ground(s) that "the inventions are linked by a special technical feature", that is, "Group I is directed to a hybrid maize seed capable of producing a starch having an amylose content of more than 80%, and Group II is drawn to "a starch which can be produced from the maize seen of claim 1". This is not found persuasive because the claims of Group I are drawn to hybrid maize seed. The claims of Group II are directed to maize starch having an altered amylose content. The inventions of Groups I and II are not linked by a single special technical feature. The claims of Group II read broadly on maize starch with an altered amylose content produced by any method. They are not directed to the hybrid plants of Group I. Furthermore, many of the plant claims are not limited to a single genotype.

Exhibit C 0084

Serial Number: 08/374,645                                                -3-

Art Unit: 1207

The requirement is still deemed proper and is therefore made FINAL.

The Restriction requirement of 9 August 1996, paper No. 9,

erroneously omitted claim 7, drawn to a hybrid maize seen and properly is

included in the Group I claims. As such, the claim is being withdrawn

from consideration as being drawn to a nonelected invention.

The following is a quotation of the appropriate paragraphs of 35

U.S.C. 102 that form the basis for the rejections under this section made in

this Office action:

> A person shall be entitled to a patent unless —
>
> (e) the invention was described in a patent granted on an application for patent by
> another filed in the United States before the invention thereof by the applicant for
> patent, or on an international application by another who has fulfilled the requirements
> of paragraphs (1), (2), and (4) of section 371(c) of this title before the invention thereof
> by the applicant for patent.

Claims 8-23 are rejected under 35 U.S.C. 102(e) as being clearly

anticipated by Fergason et al.

Exhibit C 0085

Serial Number: 08/374,645                                                    -4-

Art Unit: 1207

Note the Abstract and the many Examples which teach a range of
amylopectin of less than 5%, with amylose of at least 75% of the total
composition.

Claims 8-23 are rejected under 35 U.S.C. § 112, second paragraph, as
being indefinite for failing to particularly point out and distinctly claim the
subject matter which applicant regards as the invention.

The descriptive language recited in claims 8 and 12 neither constitutes
acceptable Markush language, nor are the claims clear as to what may be
embraced thereby.

Recitation of "including" in claim 12, and "preferably" in claims 18
and 19 render those claims as vague and confusing since they constitute
further limitations on the claims. That is, they recited range within ranges.
As such, the proper metes and bounds of the claims cannot be clearly
ascertained.

Exhibit C 0086

Serial Number: 08/374,645                                                    -5-

Art Unit: 1207

A facsimile center has been established in Group 1200, room 3C10. The hours of operation are Monday through Friday, 8:45 AM to 4:45 PM. The telecopier numbers for accessing the facsimile machine is (703) 308-4556 or (703) 305-4556.

Any inquiry concerning this communication should be directed to Examiner Nathan M. Nutter at telephone number (703) 308-2443.

NATHAN M. NUTTER
PRIMARY EXAMINER
GROUP 1200

NUTTER; aco
December 12, 1996

Exhibit C 0087

TO SEPARATE, HOLD TOP AND BOTTOM EDGES, SNAP—APART AND DISCARD CARBON

| FORM PTD-892 (REV. 2-92) | U.S. DEPARTMENT OF COMMERCE PATENT AND TRADEMARK OFFICE | SERIAL NO. 08/374,645 | GROUP ART UNIT 1207 | ATTACHMENT TO PAPER NUMBER 11 |
|---|---|---|---|---|
| | NOTICE OF REFERENCES CITED | APPLICANT(S) McNaught et al | | |

### U.S. PATENT DOCUMENTS

| * | | DOCUMENT NO. | DATE | NAME | CLASS | SUB-CLASS | FILING DATE IF APPROPRIATE |
|---|---|---|---|---|---|---|---|
| A | | 5 3 0 0 1 4 5 | 4-94 | Fergason et al | 106 | 213 | 28 Aug 1992 |
| B | | | | | | | |
| C | | | | | | | |
| D | | | | | | | |
| E | | | | | | | |
| F | | | | | | | |
| G | | | | | | | |
| H | | | | | | | |
| I | | | | | | | |
| J | | | | | | | |
| K | | | | | | | |

### FOREIGN PATENT DOCUMENTS

| * | | DOCUMENT NO. | DATE | COUNTRY | NAME | CLASS | SUB-CLASS | PERTINENT SHTS. DWG | PP. SPEC. |
|---|---|---|---|---|---|---|---|---|---|
| L | | | | | | | | | |
| M | | | | | | | | | |
| N | | | | | | | | | |
| O | | | | | | | | | |
| P | | | | | | | | | |
| Q | | | | | | | | | |

### OTHER REFERENCES (Including Author, Title, Date, Pertinent Pages, Etc.)

| R | |
|---|---|
| S | |
| T | |
| U | |

| EXAMINER | DATE 11-96 |
|---|---|

* A copy of this reference is not being furnished with this office action.
(See Manual of Patent Examining Procedure, section 707.05 (a).)

Exhibit C 0088

Form PTO 948 (Rev. 10-94)  U.S. DEPARTMENT OF COMMERCE - Patent and Trademark Office  Application No. 374045

## NOTICE OF DRAFTSPERSON'S PATENT DRAWING REVIEW

PTO Draftpersons review all originally filed drawings regardless of whether they are designated as formal or informal. Additionally, patent Examiners will review the drawings for compliance with the regulations. Direct telephone inquiries concerning this review to the Drawing Review Branch, 703-305-8404.

The drawings filed (insert date) _4 / 27 / 95_ are
____ approved by the Draftsperson under 37 CFR 1.84 or 1.152.
____ objected to by the Draftsperson under 37 CFR 1.84 or 1.152 as indicated below. The Examiner will require submission of new, corrected drawings. Correction drawings must be submitted according to the instructions on the back of this notice.

1. DRAWINGS. 37 CFR 1.84(a)
2. PHOTOGRAPHS. 37 CFR 1.84(b)
3. 
4. TYPE OF PAPER. 37 CFR 1.84(e)
____ Paper not flexible, strong, white, smooth, nonshiny, and durable. Sheet(s)
____ Erasures, alterations, overwritings, interlineations, cracks, creases, and folds copy machine marks not accepted. Fig(s)
____ Mylar, velum, paper is not acceptable (too thin). Fig(s)
5. SIZE OF PAPER. 37 CFR 1.84(f): Acceptable sizes:
____ 21.6 cm. by 35.6 cm. (8 1/2 by 14 inches)
____ 21.6 cm. by 33.1 cm. (8 1/2 by 13 inches)
____ 21.6 cm. by 27.9 cm. (8 1/2 by 11 inches)
____ 21.0 cm. by 29.7 cm. (DIN size A4)
____ All drawing sheets not the same size. Sheet(s)
____ Drawing sheet not an acceptable size. Sheet(s)
6. MARGINS. 37 CFR 1.84(g): Acceptable margins:

Paper size

| | 21.6 cm. X 35.6 cm. (8 1/2 X 14 inches) | 21.6 cm. X 33.1 cm. (8 1/2 X 13 inches) | 21.6 cm. X 27.9 cm. (8 1/2 X 11 inches) | 21.0 cm. X 29.7 cm. (DIN Size A4) |
|---|---|---|---|---|
| T 5.1 cm. (2") | 2.5 cm. (1") | 2.5 cm. (1") | 2.5cm. |
| L .64 cm. (1/4") | .64 cm. (1/4") | .64 cm. (1/4") | 2.5 cm. |
| R .64 cm. (1/4") | .64 cm. (1/4") | .64 cm. (1/4") | 1.5 cm. |
| B .64 cm. (1/4") | .64 cm. (1/4") | .64 cm. (1/4") | 1.0 cm. |

____ Margins do not conform to chart above.
____ Top (T) ____ Left (L) ____ Right (R) ____ Bottom (B)
7. VIEWS. 37 CFR 1.84(h)
____ REMINDER: Specification may require revision to correspond to drawing changes.
____ All views not grouped together. Fig(s)
____ Views connected by projection lines or lead lines. Fig(s)
____ Partial views. 37 CFR 1.84(h) 2

____ View and enlarged view not labeled separately or properly. Fig(s)
____ Sectional views. 37 CFR 1.84 (h) 3
____ Hatching not indicated for sectional portions of an object. Fig(s)
____ Cross section not drawn same as view with parts in cross section with regularly spaced parallel oblique strokes.
8. ARRANGEMENT OF VIEWS. 37 CFR 1.84(i)
____ Words do not appear on a horizontal, left-to-right fashion when page is either upright or turned so that the top becomes the right side, except for graphs. Fig(s)
9. SCALE. 37 CFR 1.84(k)
____ Scale not large enough to show mechanism without crowding when drawing is reduced in size to two-thirds in reproduction. Fig(s)
____ Indication such as "actual size" or "scale 1/2" not permitted. Fig(s)
10. CHARACTER OF LINES, NUMBERS, & LETTERS.
____ Lines, numbers & letters not uniformly thick and well defined, clean, durable, and black (poor line quality). Fig(s)
11. SHADING. 37 CFR 1.84(m)
____ Solid black shading areas not permitted. Fig(s)
____ Shade lines, pale, rough and blurred. Fig(s)
12. NUMBERS, LETTERS, & REFERENCE CHARACTERS. 37 CFR 1.84(p)
____ Numbers and reference characters not plain and legible. 37 CFR 1.84(p)(1) Fig(s)
____ Numbers and reference characters not oriented in same direction as the view. 37 CFR 1.84(p)(1) Fig(s)
____ English alphabet not used. 37 CFR 1.84(p)(2) Fig(s)
____ Numbers, letters, and reference characters do not measure at least .32 cm. (1/8 inch) in height. 37 CFR (p)(3) Fig(s)
13. LEAD LINES. 37 CFR 1.84(q)
____ Lead lines cross each other. Fig(s)
____ Lead lines missing. Fig(s)
14. NUMBERING OF SHEETS OF DRAWINGS. 37 CFR 1.84(t)
____ Sheets not numbered consecutively, and in Arabic numerals, beginning with number 1. Sheet(s)
15. NUMBER OF VIEWS. 37 CFR 1.84(u)
____ Views not numbered consecutively, and in Arabic numerals, beginning with number 1. Fig(s)
____ View numbers not preceded by the abbreviation Fig. Fig(s)
16. CORRECTIONS. 37 CFR 1.84(w)
____ Corrections not made from prior PTO-948. Fig(s)
17. DESIGN DRAWING. 37 CFR 1.152
____ Surface shading shown not appropriate. Fig(s)
____ Solid black shading not used for color contrast. Fig(s)

COMMENTS:

____ ATTACHED TO PAPER NO. _____     REVIEWER _____N____     7/8/95

Exhibit C 0089

3-28-97          12c

#12/13

Docket No.: 1451-007PCT                                      PATENT

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

re Application of                    :

Kenneth J. McNAUGHT et al            :

Serial No. 08/374,645                :     Group Art Unit:  1804

Filed:  April 27, 1995               :     Examiner:  N. Nutter

For:   HIGH AMYLOSE STARCH AND RESISTANT STARCH FRACTIONS

SUPPLEMENTAL AMENDMENT

RECEIVED
MAR 21 1997
GROUP 1800

Honorable Commissioner of
  Patents and Trademarks
Washington, D. C.   20231

Sir:

        In further response to the Official Action of December 16,

1997, please amend the application as follows:

IN THE ABSTRACT:

        Please insert the enclosed new page 21 to provide an Abstract

of Disclosure for the application.

REMARKS

        In the Official Action of December 16, 1996, the Examiner

required that an Abstract be presented for the application.   In

responding to the Action on March 17, 1997, the due date, the

requirement for the Abstract was overlooked.   On review, it was

determined that an Abstract should be presented for the

230 EK 12-2237 04/14/97 08374645
23016 115       110.00CH

1

Exhibit C 0090

Serial No. 08/374,645

application. Accordingly, presented herewith on separate page 21, is an Abstract for this application.

Entry of the Abstract is requested.

To the extent necessary, a petition for an extension of time under 37 C.F.R. 1.136 is hereby made. Please charge any shortage in fees due in connection with the filing of this paper, including extension of time fees, to Deposit Account 12-2237 and please credit any excess fees to such deposit account.

Respectfully submitted,

LOWE, PRICE, LEBLANC & BECKER

Robert L. Price
Registration No. 22,685

99 Canal Center Plaza, Suite 300
Alexandria, Virginia 22314
(703) 684-1111 RLP:ajb
Date: March 19, 1997
Facsimile: 703-684-1124

2

Exhibit C 0091

1804
#/3/c

Docket No.:  1451-007                                    PATENT

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re Application of              :
                                  :
Kenneth J. McNAUGHT et al         :
                                  :
Serial No. 08/374,645             :   Group Art Unit:  1804
                                  :
Filed:  April 27, 1995            :   Examiner:  N. Nutter
                                  :
For:   HIGH AMYLOSE STARCH AND RESISTANT STARCH FRACTIONS

                        AMENDMENT

                                        RECEIVED
                                        APR 0 4 1997
Honorable Commissioner of               GROUP 1800
   Patents and Trademarks
Washington, D. C.  20231

     Sir:

        In response to the Official Action of December 16, 1997,
     please amend the application as follows:


     IN THE CLAIMS:

        Please cancel claim 8 and replace with the following new claim
     24.

        --24.  A maize starch selected from the group consisting of
     maize starch having an amylose content of more than 80%, physically
     or chemically modified derivatives of maize starch having an
     amylose content of more than 80%, destructurized maize starch
     having an amylose content of more than 80%, and non-destructurized
     maize starch having an amylose content of more than 80%.--

                                1

Exhibit C 0092

Serial No. 08/374,645

Claim 9, line 1, change "8" to --24--.

Please cancel claim 12 and replace with the following new claim 25.

--25. A composition comprising a maize starch selected from the group consisting of maize starch having an amylose content of more than 80%, physically or chemically modified derivatives of maize starch having an amylose content of more than 80%, destructurized maize starch having an amylose content of more than 80%, and non-destructurized maize starch having an amylose content of more than 80%.--

Claim 13, line 1, change "12" to --25--.

Please cancel claims 18 and 19 and replace with the following new claims 26, 27, 28 and 29.

--26. A starch fraction as in claim 21, wherein the amylose content of the high amylose starch is 70% or more.

27. A starch fraction as in claim 26, wherein the amylose content of the high amylose starch is 80% or more.

28. A starch fraction as in claim 27, wherein the amylose content of the high amylose starch is 85% or more.

2

Exhibit C 0093

Serial No. 08/374,645

25.    A starch fraction as in claim 26, wherein the amylose content of the high amylose starch is 90% or more.--

## REMARKS

The Official Action of December 16, 1996 has been carefully considered; accordingly, the amendments presented herewith for the application, taken with the following remarks and evidence, should place this application in condition for allowance.

It is noted that the Examiner has made the restriction requirement final and also included claim 7 in the non-elected claims. Accordingly, this Action in on the merits of claims 8-23. It is requested that non-elected claims 1-7 remain in the application until a divisional application is filed directed thereto. However, if the Examiner finds that the elected claims in this application are allowable as a result of this response, he is authorized to cancel the non-elected claims 1-7 from the application.

In the Action, claims 8-23 were rejected under 35 USC § 112, second paragraph, as being indefinite for language used in claims 8-12, 18 and 19. In response to this requirement, claim 8 is rewritten as new claim 24 and claim 12 is rewritten as new claim 25. It is believed that the new claims do not contain the objectionable language noted by the Examiner. Further, claims 18 and 19 have been cancelled and replaced by new independent claims

3

Exhibit C 0094

Serial No. 08/374,645

26, 27, 28 and 29 in order to overcome the problem of claiming ranges within ranges and to remove the other language objected to by the Examiner. Therefore, since these new claims are believed to now comply with 35 USC § 112, reconsideration of this rejection is requested.

Elected claims 8-23 also stand rejected under 35 USC § 102(e) as anticipated by U.S. Patent 5,300,145 to Fergason et al. As applied to the new claims and in view of the following remarks and evidence, this rejection is traversed and reconsideration is requested.

It is noted that the Fergason patent relates to low amylopectin starch. It is also noted that this patent was published April 5, 1994 on an application filed August 28, 1992.

The present application originated as a priority application in Australia and was filed as an International application under the Patent Cooperation Treaty on July 30, 1993. The Filing Receipt of this application indicates while this application entered the National Phase on April 27, 1995, a priority is claimed under 35 USC § 371 to PCT/AU93/00389, filed July 30, 1993, and priority is claimed to Australian application PL3894, filed July 31, 1992, and Australian application PL7266, filed February 12, 1993.

Applicants submit that their priority date in Australia antedates the U.S. filing date of August 28, 1992 of the Fergason et al. patent. In support of Applicants' argument, there is

4

Exhibit C 0095

Serial No. 08/374,645

presented herewith a certified copy of Applicants' Priority
Application No. PL3894, filed July 31, 1992 and entitled "HIGH
AMYLOSE STARCH". In addition, submitted herewith is a certified
copy of Australian Application No. PL7266, filed February 12, 1993.
Priority to these certified priority applications is claims under
35 USC § 119.

It is submitted that the priority applications and
particularly, Priority Application No. PL3894, having a filing date
of July 31, 1992, are sufficient to antedate the filing date of
August 28, 1992, of the Fergason et al. patent. It is further
submitted that all claims in the application are supported by the
priority application and are clearly allowable in view of
Applicants' effective priority date for this subject matter.

For these reasons, it is submitted that the rejection under 35
USC § 102(e) should be withdrawn.

It is believed that the above represents a complete response
to the Official Action and allowance is now in order.

Respectfully submitted,

LOWE, PRICE, LEBLANC & BECKER

Robert L. Price
Registration No. 22,685

99 Canal Center Plaza, Suite 300
Alexandria, Virginia 22314
(703) 684-1111 RLP:ajb
Date: March 17, 1997
Facsimile: 703-684-1124

5

Exhibit C 0096

*S.197*

**MAIL ROOM**
82  MAR 17 1997
PATENT & TRADEMARK OFFICE

*12x*
*4.2.197*

PATENT

Docket No.: 1451-007

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re Application of                                    :

Kenneth J. McNAUGHT et al                               :

Serial No. 08/374,645                                   :    Group Art Unit:  1804

Filed:  April 27, 1995                                  :    Examiner:  N. Nutter

For:    HIGH AMYLOSE STARCH AND RESISTANT STARCH FRACTIONS

THE COMMISSIONER OF PATENTS AND TRADEMARKS
Washington, D. C.  20231

**RECEIVED**

APR 04 1997

Dear Sir:

**GROUP 1800**

Transmitted herewith is an Amendment in the above identified application.
[ ]  No additional fee is required.
[X]  Also attached:  Certified Copy of Applicants' Priority Application No. PL3894, and a Certified Copy of
      Australian Application No. PL7266.

The fee has been calculated as shown below:

|  | NO. OF CLAIMS | HIGHEST PREVIOUSLY PAID FOR | EXTRA CLAIMS | RATE | FEE |
|---|---|---|---|---|---|
| Total Claims | 25 | 23 | 2 | x $22 = | 44.00 |
| Independent Claims | 4 | 4 | 0 | x $80 = | 0 |
| | If multiple claims newly presented, add $260.00 | | | | |
| | Fee for extension of time | | | | |
| | | | | TOTAL FEE DUE | 44.00 |

[X]  Please charge my Deposit Account No. 12-2237 in the amount of $44.00.  An additional copy of this transmittal
     sheet is submitted herewith.

[X]  The Commissioner is hereby authorized to charge payment of any fees associated with this communication or
     credit any overpayment, to Deposit Account No. 12-2237, including any filing fees under 37 CFR 1.16 for
     presentation of extra claims and any patent application processing fees under 37 CFR 1.17.

Respectfully submitted,

LOWE, PRICE, LEBLANC & BECKER

Robert L. Price
Registration No. 22,685

99 Canal Center Plaza, Suite 300
Alexandria, Virginia  22314
(703) 684-1111 RLP:ajb
Date:  March 17, 1997
Facsimile: 703-684-1124

Exhibit C 0097

| *Interview Summary* | Application No.<br>08/374,645 | Applicant(s)<br>McNaught et al |
|---|---|---|
| | Examiner<br>Nathan M. Nutter | Group Art Unit<br>1207 |

All participants (applicant, applicant's representative, PTO personnel):

(1) *Nathan M. Nutter*               (3) _____

(2) *Robert L. Price*                (4) _____

Date of Interview _____ *Jun 19, 1997* _____

Type: ☒ Telephonic   ☐ Personal (copy is given to   ☐ applicant   ☐ applicant's representative).

Exhibit shown or demonstration conducted:   ☐ Yes   ☒ No. If yes, brief description:
_____
_____

Agreement ☒ was reached. ☐ was not reached.

Claim(s) discussed: *all pending claims, specifically claims 1-7* _____

Identification of prior art discussed:
*None.* _____
_____

Description of the general nature of what was agreed to if an agreement was reached, or any other comments:
*Applicants' counsel was contacted to cancel claims 1-7 drawn to an invention non-elected with traverse in Paper No. 10*
*of 9 September 1996. This will be done by an Examiner's Amendment to the Specification, to follow.*
_____
_____
_____
_____
_____
_____

(A fuller description, if necessary, and a copy of the amendments, if available, which the examiner agreed would render the claims allowable must be attached. Also, where no copy of the amendments which would render the claims allowable is available, a summary thereof must be attached.)

1. ☒ It is not necessary for applicant to provide a separate record of the substance of the interview.

Unless the paragraph above has been checked to indicate to the contrary, A FORMAL WRITTEN RESPONSE TO THE LAST OFFICE ACTION IS NOT WAIVED AND MUST INCLUDE THE SUBSTANCE OF THE INTERVIEW. (See MPEP Section 713.04). If a response to the last Office action has already been filed, APPLICANT IS GIVEN ONE MONTH FROM THIS INTERVIEW DATE TO FILE A STATEMENT OF THE SUBSTANCE OF THE INTERVIEW.

2. ☒ Since the Examiner's interview summary above (including any attachments) reflects a complete response to each of the objections, rejections and requirements that may be present in the last Office action, and since the claims are now allowable, this completed form is considered to fulfill the response requirements of the last Office action. Applicant is not relieved from providing a separate record of the interview unless box 1 above is also checked.

Examiner Note: You must sign and stamp this form unless it is an attachment to a signed Office action.    NATHAN M. NUTTER<br>PRIMARY EXAMINER

Exhibit C 0098

Serial Number: 08/374,645                                      Page 2

Art Unit: 1207

1.    An examiner's amendment to the record appears below.  Should the changes and/or

additions be unacceptable to applicant, an amendment may be filed as provided by 37 CFR 1.312.

To ensure consideration of such an amendment, it MUST be submitted no later than the payment

of the issue fee.

     Authorization for this examiner's amendment was given in a telephone interview with

Robert L. Price  on 19 June 1997.

2.    The application has been amended as follows:


                    In the claims:


               Cancel claims 1-7.


3.    Any inquiry concerning this communication or earlier communications from the examiner

should be directed to Nathan M. Nutter  whose telephone number is (703) -308-2443.


nmn

June 19, 1997                                    NATHAN M. NUTTER
                                                PRIMARY EXAMINER
                                                   GROUP 1200


Exhibit C 0099



**UNITED STATE. DEPARTMENT OF COMMERCE**
**Patent and Trademark Office**
Address: COMMISSIONER OF PATENTS AND TRADEMARKS
Washington, D.C. 20231

| APPLICATION NUMBER | FILING DATE | FIRST NAMED APPLICANT | ATTORNEY DOCKET NO. |
|---|---|---|---|
| 08/374,645 | 04/27/95 | MCNAUGHT | K    1451-007PCT |

12M1/0624

LOWE PRICE LEBLANC & BECKER
99 CANAL CENTER PLAZA SUITE 300
ALEXANDRIA VA 22314

| EXAMINER |
|---|
| NUTTER.N |

| ART UNIT | PAPER NUMBER. |
|---|---|
| 1207 | 15 14 B |

DATE MAILED:
06/24/97

This is a communication from the examiner in charge of your application.
COMMISSIONER OF PATENTS AND TRADEMARKS

## NOTICE OF ALLOWABILITY

All claims being allowable, PROSECUTION ON THE MERITS IS (OR REMAINS) CLOSED in this application. If not included herewith (or previously mailed), a Notice of Allowance and Issue Fee Due or other appropriate communication will be mailed in due course.

☒ This communication is responsive to ___4 April 1997___.

☒ The allowed claim(s) is/are ___9-11, 13-17 and 20-29___

☐ The drawings filed on _____ are acceptable.

☒ Acknowledgement is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d).

   ☒ All ☐ Some* ☐ None  of the CERTIFIED copies of the priority documents have been

     ☒ received.

     ☐ received in Application No. (Series Code/Serial Number) _____.

     ☐ received in this national stage application from the International Bureau (PCT Rule 17.2(a)).

   *Certified copies not received: _____

☐ Acknowledgement is made of a claim for domestic priority under 35 U.S.C. § 119(e).

A SHORTENED STATUTORY PERIOD FOR RESPONSE to comply with the requirements noted below is set to EXPIRE THREE MONTHS FROM THE "DATE MAILED" of this Office action. Failure to comply will result in ABANDONMENT of this application. Extensions of time may be obtained under the provisions of 37 CFR 1.136(a).

☒ Note the attached EXAMINER'S AMENDMENT or NOTICE OF INFORMAL APPLICATION, PTO-152, which discloses that the oath or declaration is deficient. A SUBSTITUTE OATH OR DECLARATION IS REQUIRED.

☒ Applicant MUST submit NEW FORMAL DRAWINGS

   ☐ because the originally filed drawings were declared by applicant to be informal.

   ☒ including changes required by the Notice of Draftsperson's Patent Drawing Review, PTO-948, attached hereto or to Paper No. 11

   ☐ including changes required by the proposed drawing correction filed on _____, which has been approved by the examiner.

   ☐ including changes required by the attached Examiner's Amendment/Comment.

   **Identifying indicia such as the application number (see 37 CFR 1.84(c)) should be written on the reverse side of the drawings. The drawings should be filed as a separate paper with a transmittal letter addressed to the Official Draftsperson.**

☐ Note the attached Examiner's comment regarding REQUIREMENT FOR THE DEPOSIT OF BIOLOGICAL MATERIAL.

Any response to this letter should include, in the upper right hand corner, the APPLICATION NUMBER (SERIES CODE/SERIAL NUMBER). If applicant has received a Notice of Allowance and Issue Fee Due, the ISSUE BATCH NUMBER and DATE of the NOTICE OF ALLOWANCE should also be included.

### Attachment(s)

☐ Notice of References Cited, PTO-892

☐ Information Disclosure Statement(s), PTO-1449, Paper No(s). _____

☐ Notice of Draftsperson's Patent Drawing Review, PTO-948

☐ Notice of Informal Patent Application, PTO-152

☒ Interview Summary, PTO-413

☒ Examiner's Amendment/Comment

☐ Examiner's Comment Regarding Requirement for Deposit of Biological Material

☐ Examiner's Statement of Reasons for Allowance

PTOL-37 (Rev. 10/95)                                      *U.S. GPO: 1997-422-194/50X.

Exhibit C 0100



UNITED STATEs DEPARTMENT OF COMMERCE
**Patent and Trademark Office**

Address: Box ISSUE FEE
COMMISSIONER OF PATENTS AND TRADEMARKS
Washington, D.C. 20231

**NOTICE OF ALLOWANCE
AND ISSUE FEE DUE**

☐ Note attached communication from the Examiner

☐ This notice is issued in view of applicant's communication filed _____

| SERIES CODE/SERIAL NO. | FILING DATE | TOTAL CLAIMS | EXAMINER AND GROUP ART UNIT | DATE MAILED |
|---|---|---|---|---|
|  |  |  |  |  |

| First Named Applicant |
|---|

TITLE OF INVENTION

| | ATTY'S DOCKET NO. | CLASS-SUBCLASS | BATCH NO. | APPLN. TYPE | SMALL ENTITY | FEE DUE | DATE DUE |
|---|---|---|---|---|---|---|---|
|  |  |  |  |  |  |  |  |

***THE APPLICATION IDENTIFIES ABOVE HAS BEEN EXAMINED AND IS ALLOWED FOR ISSUANCE AS A PATENT.
PROSECUTION ON THE MERITS IS CLOSED.***

***THE ISSUE FEE MUST BE PAID WITHIN THREE MONTHS FROM THE MAILING DATE OF THIS NOTICE OR THIS
APPLICATION SHALL BE REGARDED AS ABANDONED. THIS STATUTORY PERIOD CANNOT BE EXTENDED.***

### HOW TO RESPOND TO THIS NOTICE:

I. Review the SMALL ENTITY Status shown above.
If the SMALL ENTITY is shown as YES, verify your
current SMALL ENTITY status:

  A. If the status is changed, pay twice the amount of the
    FEE DUE shown above and notify the patent and
    Trademark Office of the change in status, or

  B. If the Status is the same, pay the FEE DUE shown
    above.

If the SMALL ENTITY is shown as NO:
A. Pay FEE DUE shown above, or
B. File verified statement of Small Entity Status before, or with,
    pay of 1/2 the FEE DUE shown above.

II. Part B of this notice should be completed and returned to the Patent and Trademark Office (PTO) with your ISSUE FEE.
Even if the ISSUE FEE has already been paid by charge to deposit account, Part B should be completed and returned.
If you are charging the ISSUE FEE to your deposit account, Part C of this notice should also be completed and returned.

III. All communications regarding this application must give series code (or filing date), serial number and batch number.
Please direct all communication prior to issuance to Box ISSUE FEE unless advised to contrary.

*IMPORTANT REMINDER: Patents issuing on applications filed on or after Dec. 12, 1980 may require payment of
maintenance fees. It is patentee's responsibility to ensure timely payment of maintenance
fees when due.*

PTOL-85B (REV. 4-94) (0651-0033)

**PATENT AND TRADEMARK OFFICE COPY**

Exhibit C 0101

## PART B—ISSUE FEE TRANSMITTAL

**MAILING INSTRUCTIONS:** This form should be used for transmitting the ISSUE FEE. Blocks 2 through 6 should be completed where appropriate. All further correspondence including the Issue Fee Receipt, the Patent, advance orders and notification of maintenance fees will be mailed to addresses entered in Block 1 unless you direct otherwise, by: (a) specifying a new correspondence address in Block 3 below; or (b) providing the PTO with a separate "FEE ADDRESS" for maintenance fee notifications with the payment of Issue Fee or thereafter. See reverse for Certificate of Mailing.

| 1. CORRESPONDENCE ADDRESS | 2. INVENTOR(S) ADDRESS CHANGE (Complete only if there is a change) |
|---|---|
| | INVENTOR'S NAME |
| | Street Address |
| | City, State and ZIP Code |
| LOWE PRICE LEBLANC & BECKER | CO-INVENTOR'S NAME |
| 99 CANAL CENTER PLAZA SUITE 300 | Street Address |
| ALEXANDRIA VA 22314 | City, State and ZIP Code |
| | ☐ Check if additional changes are on reverse side |

RECEIVED Publishing Division SEP 05 1997 08

| SERIES CODE/SERIAL NO. | FILING DATE | TOTAL CLAIMS | EXAMINER AND GROUP ART UNIT | DATE MAILED |
|---|---|---|---|---|
| 08/374,645 | 04/27/95 | 018 | NUTTER, N | 1207 | 06/24/97 |

| First Named Applicant | MCNAUGHT, | KENNETH J. |
|---|---|---|

**TITLE OF INVENTION** HIGH AMYLOSE STARCH AND RESISTANT STARCH FRACTIONS

| | ATTY'S DOCKET NO. | CLASS-SUBCLASS | BATCH NO. | APPLN. TYPE | SMALL ENTITY | FEE DUE | DATE DUE |
|---|---|---|---|---|---|---|---|
| 1 | 1451-007PCT | 536-103.000 | 063 | UTILITY | NO | $1290.00 | 09/24/97 |

10/08/1997 RJOHNSON 00000060 DA#:122237    08374645
01 FC:142    1290.00 CH

| 3. Correspondence address change (Complete only if there is a change) | 4. For printing on the patent front page, list the names of not more than 3 registered patent attorneys or agents OR, alternatively, the name of a firm having as a member a registered attorney or agent. If no name is listed, no name will be printed. | |
|---|---|---|
| Lowe, Price, LeBlanc & Becker | 1 | Lowe, Price, LeBlanc |
| 99 Canal Center Plaza, Suite 300 | 2 | & Becker |
| Alexandria, VA  22314 | 3 | |

**DO NOT USE THIS SPACE**

| 5. ASSIGNMENT DATA TO BE PRINTED ON THE PATENT (print or type) | | |
|---|---|---|
| (1) NAME OF ASSIGNEE: GOODMAN FIELDER LIMITED | 6a. The following fees are enclosed: ☐ Issue Fee  ☐ Advance Order - # of Copies | |
| (2) ADDRESS: (CITY & STATE OR COUNTRY) Sydney, AUSTRALIA | 6b. The following fees should be charged to: | |
| | DEPOSIT ACCOUNT NUMBER (ENCLOSE PART C) | 12-2237 |
| A. ☐ This application is NOT assigned. | ☒ Issue Fee  ☐ Advance Order - # of Copies | |
| ☒ Assignment previously submitted to the Patent and Trademark Office. | ☒ Any Deficiencies in Enclosed Fees | |
| ☐ Assignment is being submitted under separate cover. Assignments should be directed to Box ASSIGNMENTS. | The COMMISSIONER OF PATENTS AND TRADEMARKS is requested to apply the Issue Fee to the application identified above. | |
| *PLEASE NOTE:* Unless an assignee is identified in Block 5, no assignee data will appear on the patent. Inclusion of assignee data is only appropriate when an assignment has been previously submitted to the PTO or is being submitted under separate cover. Completion of this form is NOT a substitute for filing an assignment. | (Authorized Signature) *Robert L. Price* | (Date) |
| | Robert L. Price, Reg. #22,685 | 9/5/97 |
| | NOTE: The Issue Fee will not be accepted from anyone other than the applicant; a registered attorney or agent; or the assignee or other party in interest as shown by the records of the Patent and Trademark Office. | |

**TRANSMIT THIS FORM WITH FEE-CERTIFICATE OF MAILING ON REVERSE**

PTOL-85B (REV. 4-94) (0651-0033)

Exhibit C 0102

SAH
# 16
9-19-97

Attorney Docket: 1451-007PCT

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re Application of:                    )
                                         )
    Kenneth J. McNAUGHT et al.           )
                                         )          BOX PCT
Int'l Appln. No.                         )
    PCT/AU93/00389                       )
                                         )
Int'l Filing Date                        )
    July 30, 1993                        )
                                         )
For:  HIGH AMYLOSE STARCH AND            )
      RESISTANT STARCH FRACTIONS         )
                                         )

INFORMATION DISCLOSURE STATEMENT

Honorable Commissioner of
  Patents and Trademarks
Washington, D.C.  20231

Sir:

    In accordance with the provisions of 37 C.F.R. 1.56 and 37
C.F.R. 1.97-1.98, it is requested that the reference(s) listed on
the attached Form PTO-1449 be made of record.

    The following prior art were cited in a corresponding
Application and cited and characterized in the Australian search
Report dated October 7, 1993.  No further elaboration is believed
necessary.

    "STARCH AND ENZYME-RESISTANT STARCH FROM HIGH-AMYLOSE BARLEY",
pp. 589-596, 1991, J. Szczodrak et al.

    Australian Patent No. 45616/89, as cited in the specification on
page 4.

Exhibit C 0103

SHEET 1 OF 1

| LIST OF PRIOR ART CITED BY APPLICANT (PTO-1449) | ATTY. DOCKET NO. 1451-007PCT | SERIAL NO. 08/374647 |
|---|---|---|
| | APPLICANT Kenneth McNAUGHT et al. | |
| | INT'L FILING DATE July 30, 1993 | INT'L APPLN. NO. PCT/AU93/00389 |

**U.S. PATENT DOCUMENTS**

| EXAMINER'S INITIALS | PATENT NO. | DATE | NAME | CLASS | SUBCLASS | FILING DATE |
|---|---|---|---|---|---|---|
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

**FOREIGN PATENT DOCUMENTS**

| EXAMINER'S INITIALS | PATENT NO. | DATE | COUNTRY | CLASS | SUBCLASS | Translation Yes | No |
|---|---|---|---|---|---|---|---|
| AMW | 45616/89 | 5/31/90 | Australia | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

**OTHER ART (Including Author, Title, Date, Pertinent Pages, Etc.)**

| | |
|---|---|
| NMW | "STARCH AND ENZYME-RESISTANT STARCH FROM HIGH-AMYLOSE BARLEY", pp. 589-596, 1991, J. Szczodrak et al. |
| | |
| | |

EXAMINER _[signature]_    DATE CONSIDERED 7-97

EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609; draw line through citation if not in conformance and not considered. Include copy of this form with next communication to Applicant.

Exhibit C 0104



$x^2 \cdot y!$ $C16$.

# Starch and Enzyme-Resistant Starch from High-Amylose Barley

J. SZCZODRAK[1,2] and Y. POMERANZ[1,3]

## ABSTRACT

Cereal Chem. 68(6):589–596

A Glacier variety selection with a 43% amylose content was used for isolation and purification of barley starch. The starch was separated into two fractions that varied in granule size, and the two fractions were assayed using chemical, microscopic (scanning electron microscopy), and thermo-analytical methods. Large and small barley starch granules were different in both chemical composition and endothermic properties; the small starch granules were higher in amylose than the large granules. Heat-moisture treatment (autoclaving at 121°C) with subsequent cooling was used to produce amylase-resistant starch (RS) from purified high-amylose starch samples. The formation of RS in barley starch was strongly affected by the number of autoclaving-cooling cycles; increasing the number of cycles from one to 20 raised the RS yield from 6 to 26%. Differential scanning calorimetry thermograms showed that all isolated RS preparations exhibited an endothermic transition over a similar temperature range (116–177°C), with a mean peak temperature at 158°C, which could apparently be attributed to the melting of RS amylose crystallites. The maximum melting enthalpy for RS from barley, 37 J/g, was achieved by 12 repeated autoclaving-cooling cycles. The thermodynamic data indicated that changes in the quality of RS occurred during autoclaving-cooling cycles.

Barley is the fourth most important cereal (after wheat, rice, and maize), consisting of about 12% of the world's total cereal production (Mac Key 1981). It is mainly used as a feed grain but also finds substantial application in the brewing and distilling industries, especially in the manufacture of malt, and in the food industry. Owing to its nutritional and chemical properties, in particular a high dietary fiber (DF) content and a high proportion of soluble viscous DF components, barley is considered the most suitable grain in the human diet (Munck 1981, Björck et al 1990). Recent clinical studies have also demonstrated the hypoglycemic and hypocholesterolemic function of barley β-glucans in human feeding trials (Anderson 1980, Newman et al 1989).

Starch, the major reserve storage polysaccharide of barley, occurs in large lenticular and small spherical granules. The starch type can vary in certain genotypes from regular (75% amylopectin, 25% amylose), to high-amylose (about 50% amylose), to waxy (up to 100% amylopectin) (Pomeranz 1985, 1987; Hoseney 1986). During the isolation of barley starch, the small granules have a tendency to associate with the protein fraction (brown layer), which appears on top of centrifuged suspensions of crude starch. The lower, white layer obtained after centrifugation contains mostly the large starch granules. McDonald and Stark (1988) pointed out that discarding of the brown layer (widely applied in procedures for isolation of barley starch) results in severe loss of small granules and affects the ratio of small to large granules. The authors suggested that the brown layer should be purified separately and then added back to the white layer to give representative starch granule preparations.

Recently, much interest has been focused on a particular type of starch that is undigestible in vivo and in vitro, i.e., resistant starch (RS) (Englyst and Cummings 1987, Sievert and Pomeranz 1989, Siljeström et al 1989). This type of amylase-resistant starch is formed in food products processed by methods that use relatively high moisture contents, such as cooking, baking, and autoclaving (Englyst et al 1983, Siljeström and Asp 1985). The reduced bio-availability of RS in the human gastrointestinal tract has particular significance to diabetics because it lowers their insulin demand (Jenkins et al 1983). Moreover, malabsorbed starch reaching the colon can exert physiological effects similar to those of DF (Björck et al 1987, Jenkins et al 1987, Schneeman 1989). Examination of RS by enzymatic methods (Berry 1986), iodine-binding capacity (Ring et al 1988), column permeation chromatography (Berry et al 1988, Siljeström et al 1989), differential scanning calorimetry (Sievert and Pomeranz 1989, 1990), and X-ray diffraction (Sievert

et al 1991) indicates that retrograded amylose is mainly responsible for the generation of RS and that RS represents noncovalently bonded crystallites within the amylose component of starch. The observation that the RS yield of autoclaved starch suspensions increased with increasing amylose content (Sievert and Pomeranz 1989) also supports this hypothesis. The presence of interchain amylose associations in the RS fraction was demonstrated by an endothermic transition at about 155°C in differential scanning calorimetry thermograms (Sievert and Pomeranz 1989, 1990). In addition to amylose crystallites, crude RS preparations contain native starch lipids and protein originating from added enzymes used in the isolation procedure (Russell et al 1989). It also appears that lipids in the RS fraction may be in a noncomplexed form and may adhere to the undigested starch matrix (Sievert and Pomeranz 1990).

The hypothesis that the amylose-amylopectin ratio is an important determinant of RS formation focused interest on high-amylose varieties of cereals as potential sources for RS production. Most of the earlier studies (with the exception of the one by Björck et al 1990) concentrated on the formation of RS from wheat and amylomaize starches. The objectives of this study were to reevaluate various factors that contribute to formation of RS; to isolate and characterize small and large starch granules from high-amylose barley and produce RS from the isolated starches; and to characterize the RS by enzymatic, microscopic (scanning electron microscopy [SEM]), and thermodynamic methods.

## MATERIALS AND METHODS

### Chemicals

Amyloglucosidase, A-3042, from *Aspergillus niger*; protease, P-5147, type XIV, from *Streptomyces griseus*; protease P-5380, Type VIII, from *Bacillus licheniformis*; peroxidase, P-6782, type VI-A, from horseradish; glucose oxidase, G-6766, from *A. niger*, and *o*-dianisidine, D-3252, were purchased from Sigma Chemical Co., St. Louis, MO. Heat-stable α-amylase, Takalite L-340, from *B. licheniformis*, was obtained from Miles Laboratories, Inc., Elkhart, IN.

### Barley

A covered barley selection of cv. Glacier, high in amylose, from the 1988/89 crop was obtained from S. E. Ullrich, Agronomy Department, Washington State University. Crude flour from the barley contained 54.5% starch (dry matter [dm] basis), of which 43.1% was amylose; 15.7% crude protein (N × 6.25); 3.0% ash; and 3.4% lipids.

### Isolation of Starch

Starch was isolated from the grains by a modification of the method of McDonald and Stark (1988). Barley kernels were cracked lightly by passing them through a sample mill (Tecator,

[1]Department of Food Science and Human Nutrition, Washington State University, Pullman 99164-6376.
[2]Visiting scientist, from Department of Applied Microbiology, Maria Curie-Sklodowska University, Akademicka 19, 20-033 Lublin, Poland.
[3]Research professor.

© 1991 American Association of Cereal Chemists, Inc.

Exhibit C 0105



Cemotec 1090) and dehulled in an air-aspirated grain cleaner (Kice-DT4, Kice Metal Products Co., Inc., Wichita, KS). After steeping in 0.02*M* HCl and neutralizing with 0.2*M* NaOH, the pearled material was rubbed gently in a mortar with water and the resulting slurry was successively sieved through 130- and 73-μm polypropylene screens. The residue was homogenized in a Waring Blendor with water; the mixture was screened; and the process was repeated three to four times. The lower, white layer obtained on centrifugation (1,700 × g for 20 min) of barley starch suspensions was purified six times by the toluene shaking procedure (McDonald and Stark 1988). The pigmented fractions (proteinaceous brown layer, tailings) on top of the starch were pooled and purified three times by protease XIV (5 mg/g of starch in 30 ml of incubation mixture) and six times by the toluene shaking procedure. The separated starch layers, crude flour, crude

brown layer, and residue after starch isolation were used for further characterization.

### Enzyme-Resistant Starch

The formation, isolation, and determination of RS were performed according to the methods developed by Siewert and Pomeranz (1989). The following modifications were introduced: the starch-water ratio used for RS formation was 1:5. The suspensions were autoclaved for 1 hr at 121°C and cooled overnight in a refrigerator (4°C). The treated samples were vacuum-dried. RS was estimated by an enzymatic-gravimetric assay using a heat-stable bacterial α-amylase and fungal amyloglucosidase. In another series of experiments, a procedure was added between the digestion of sample with amylase and amyloglucosidase. Protease VIII (0.2 ml; 10 mg per sample) was added, and the sample was



Fig. 1. Scanning electron micrographs of the purified brown barley starch layer (a), the purified white barley starch layer (b), the crude brown barley layer (c), and the residue after starch isolation (d).

TABLE I
Yield and Chemical Composition (% dry matter) of Starchy Materials Isolated from Covered Glacier High-Amylose Barley

| Material | Yield | Crude Protein | Starch | Amylose (% of starch) | Ash | Free Lipids |
|---|---|---|---|---|---|---|
| Crude flour | 100.0 | 15.7 | 54.5 | 43.1 | 3.0 | 3.4 |
| Purified white layer[a] | 18.0 | 0.9 | 97.8 | 44.5 | 0.2 | 0.5 |
| Crude brown layer | 20.7 | 16.8 | 78.0 | 46.4 | 0.5 | 2.0 |
| Purified brown layer[b] | 9.4 | 0.8 | 97.0 | 47.9 | 0.3 | 0.6 |
| Residue after starch isolation | 49.8 | 17.8 | 32.1 | 41.0 | 1.7 | 4.9 |

[a] Purified six times using toluene extraction.
[b] Purified three times using protease and six times using toluene extraction.

Exhibit C 0106



incubated at 60°C for 30 min (pH 7.5). After hydrolysis, the enzymatic extracts were centrifuged (2,200 × g for 10 min) and the supernatant was discarded. The insoluble residue (crude RS) was then washed four times using hot water (60°C) and autoclaved for 20 min at 121°C to inactivate the residual enzymes. Thereafter,

a series of five washings using hot water (90°C) were performed to remove digested nonresistant starch and other by-products of the enzyme digestion process. The resulting purified RS was vacuum-dried, weighed, finely ground, and used for further characterization.

TABLE II
Differential Scanning Calorimetry of Starchy Materials Isolated from Covered Glacier High-Amylose Barley[a]

| | Transition Temperatures[b] ($T$, °C)[c] and Transition Enthalpies ($\Delta H$, J/g dry matter)[d] | | | | | | | |
| | Starch Gelatinization Transition | | | | Amylose-Lipid Complex Transition | | | |
| Material | $T_1$ | $T_p$ | $T_c$ | $\Delta H$ | $T_1$ | $T_p$ | $T_c$ | $\Delta H$ |
|---|---|---|---|---|---|---|---|---|
| Crude flour | 62.1 | 72.8 | 82.9 | 2.3 | 86.8 | 97.1 | 107.3 | 1.6 |
| Purified white layer | 54.5 | 66.6 | 82.3 | 11.0 | 90.2 | 103.8 | 112.4 | 3.1 |
| Crude brown layer | 56.5 | 70.3 | 82.1 | 5.4 | 90.4 | 102.5 | 112.4 | 2.7 |
| Purified brown layer | 56.2 | 66.6 | 81.7 | 10.2 | 87.2 | 103.2 | 111.4 | 4.2 |
| Residue after starch isolation | 63.6 | 75.9 | 86.8 | 0.9 | 90.2 | 99.6 | 110.8 | 0.7 |

[a] Values are examples of three determinations.
[b] $T_1$, $T_p$, and $T_c$ = initial, peak, and completion transition temperatures, respectively.
[c] SD < 1.0°C, n = 3.
[d] SD < 10% of the mean, n = 3.

TABLE III
Effects of Autoclaving-Cooling Cycles on Enzymatic (Resistant Starch Yields) and Thermal Characteristics
of a Purified White Starch Layer Isolated from Covered Glacier High-Amylose Barley[a]

| Number of Autoclaving-Cooling Cycles | Resistant Starch Yield (%) | Transition Temperatures ($T$, °C) and Transition Enthalpies ($\Delta H$, J/g dry matter) | | | | | | | |
| | | First Transition | | | | Second Transition (Resistant Starch) | | | |
| | | $T_1$ | $T_p$ | $T_c$ | $\Delta H$ | $T_1$ | $T_p$ | $T_c$ | $\Delta H$ |
|---|---|---|---|---|---|---|---|---|---|
| 0[c] | 0.0 | 54.5 | 66.6 | 82.3 | 11.0 | nd[f] | nd | nd | nd |
| 0[d] | 4.1 | 34.8 | 56.0 | 64.8 | 6.8 | 128.9 | 146.6 | 167.4 | 17.9 |
| 0[e] | 2.4 | 39.1 | 54.5 | 63.3 | 4.3 | 130.3 | 143.7 | 169.7 | 13.3 |
| 0[f] | 0.9 | 30.0 | 44.5 | 62.8 | 3.0 | 106.8 | 138.2 | 167.0 | 9.6 |
| 1 | 7.8 | 43.2 | 58.3 | 65.7 | 2.4 | 122.3 | 153.6 | 174.0 | 22.8 |
| 2 | 10.0 | 45.3 | 55.6 | 62.7 | 1.1 | 123.0 | 158.4 | 173.1 | 26.2 |
| 4 | 14.2 | 48.2 | 56.5 | 65.2 | 0.7 | 127.4 | 160.8 | 174.6 | 32.6 |
| 12 | 23.2 | 43.3 | 54.3 | 61.3 | 0.6 | 126.6 | 159.1 | 176.8 | 37.4 |
| 20 | 25.9 | 43.5 | 52.6 | 59.3 | 0.6 | 120.4 | 158.9 | 175.4 | 37.8 |

[a] Thermal characteristics determined by differential scanning calorimetry. Enthalpy values refer to vacuum-dried resistant starch. $T_1$, $T_p$, and $T_c$ = initial, peak, and completion transition temperatures, respectively.
[b] Native pure starch.
[c] Pure starch dried under vacuum and treated with amylases.
[d] Pure starch treated with amylases (without preliminary vacuum drying).
[e] Pure starch treated with amylases and protease (without preliminary vacuum drying).
[f] None detected. See also Table II.

TABLE IV
Effects of Autoclaving-Cooling Cycles on Enzymatic (Resistant Starch Yields) and Thermal Characteristics
of a Purified Brown Starch Layer Isolated from Covered Glacier High-Amylose Barley[a]

| Number of Autoclaving-Cooling Cycles | Resistant Starch Yield (%) | Transition Temperatures ($T$, °C) and Transition Enthalpies ($\Delta H$, J/g dry matter) | | | | | | | |
| | | First Transition | | | | Second Transition (Resistant Starch) | | | |
| | | $T_1$ | $T_p$ | $T_c$ | $\Delta H$ | $T_1$ | $T_p$ | $T_c$ | $\Delta H$ |
|---|---|---|---|---|---|---|---|---|---|
| 0[c] | 0.0 | 56.2 | 66.6 | 81.7 | 10.2 | nd[g] | nd | nd | nd |
| 0[d] | 3.8 | 45.1 | 55.6 | 65.7 | 3.9 | 133.7 | 150.4 | 169.1 | 17.1 |
| 0[e] | 2.2 | 39.1 | 51.7 | 62.8 | 4.1 | 129.4 | 153.4 | 164.4 | 8.9 |
| 0[f] | 0.9 | 43.7 | 52.0 | 59.3 | 2.1 | 106.8 | 138.9 | 169.6 | 7.5 |
| 1 | 5.8 | 37.0 | 56.0 | 64.2 | 4.3 | 116.4 | 155.4 | 172.4 | 19.4 |
| 2 | 8.5 | 39.8 | 54.2 | 62.9 | 2.0 | 116.5 | 157.8 | 171.9 | 23.1 |
| 4 | 12.9 | 42.4 | 55.7 | 63.5 | 1.6 | 117.4 | 159.2 | 176.1 | 28.6 |
| 12 | 21.5 | 42.4 | 51.7 | 59.2 | 0.7 | 118.2 | 159.9 | 175.2 | 37.3 |
| 20 | 25.5 | 44.8 | 49.9 | 56.3 | 0.2 | 121.9 | 159.8 | 174.1 | 36.9 |

[a] Thermal characteristics determined by differential scanning calorimetry. Enthalpy values refer to vacuum-dried resistant starch.
[b] $T_1$, $T_p$, and $T_c$ = initial, peak, and completion transition temperatures, respectively.
[c] Native pure starch.
[d] Pure starch dried under vacuum and treated with amylases.
[e] Pure starch treated with amylases (without preliminary vacuum drying).
[f] Pure starch treated with amylases and protease (without preliminary vacuum drying).
[g] None detected. See also Table II.

Exhibit C 0107



## Chemical Analyses

Protein was determined by the Kjeldahl nitrogen (N × 6.25), Method 46-11A; ash by dry combustion, Method 08-01; moisture by oven drying 1 hr at 130°C, Method 44-15A; and free lipids by exhaustive extraction with petroleum ether, followed by evaporation to constant weight under vacuum, Method 30-25 (AACC 1983). Starch was determined essentially as described for DF (Prosky et al 1988). Starch was converted to glucose by successive treatments with bacterial α-amylase followed by protease and fungal amyloglucosidase. The glucose released was measured with a glucose oxidase-peroxidase reagent (Lloyd and Whelan 1969), and results were expressed on a polysaccharide basis (glucose × 0.9). Quantification of amylose (as percent of starch) was done according to Hovenkamp-Hermelink et al (1988). All analyses were done at least in duplicate; average results of all analyses are given on a dm basis.

## Differential Scanning Calorimetry

The thermograms from differential scanning calorimetry (DSC) were recorded with a Perkin-Elmer DSC-4 instrument fitted with a 3600 thermal analysis data station and a graphics plotter 2. An indium standard was used for temperature and energy calibration. Samples (10 mg; dm) were weighed into large-volume stainless steel capsules (Perkin-Elmer, No. 0319-0218). About 20 μl of distilled water was added, and the capsules were sealed by a quick press and allowed to equilibrate for 2 hr at ambient temperature. The samples were then heated from 20 to 180°C at a scanning rate of 10°C/min. A capsule with inert material (Al₂O₃) and water represented the reference sample. For each endotherm, initial ($T_i$), peak ($T_p$), and completion ($T_c$) transition temperatures were determined by a computerized system developed by the Perkin-Elmer Corp. The transition enthalpy (Δ$H$) was calculated from the peak area and expressed as joules per gram of dry matter. The values given are the means of three to four independent measurements.

## Scanning Electron Microscopy

Samples of dried starches were evenly sprinkled on double-sided adhesive tape mounted on aluminum specimen holders. The samples were then coated with a thin layer of ionized gold by Technics Hummer V Sputtering and examined in a Hitachi S-570 scanning electron microscope at 20 kV.

## RESULTS AND DISCUSSION

### Isolated Starch

The yield and composition of purified starch layers obtained after centrifugation of starch suspensions from the covered high-amylose Glacier selection are presented in Table I. Values from the crude flour, nonpurified brown layer, and residue after starch isolation were included for comparison. The yields of starch in the purified white and crude brown layers were relatively low and averaged 19.4% of the dry kernel weight or 35.5% of the total starch in the grain. Recovery of 45% starch from the proteinaceous brown layer was achieved by enzymatic processing of tailings. Starch was the main component of both purified layers, in which its content reached 97-98%. The purified starch layers contained less than 1% protein and up to 0.3% ash and 0.6% free lipids. The percentage of amylose in the starch was 44.5 in the white layer and 47.9 in the brown layer; the difference was statistically significant at the 0.01 level. It should also be noted that relatively large amounts of starch (32%) remained in the residual material after starch isolation. Our results on amylose distribution in high-amylose barley starch differ from those of Stark and Yin (1986), who reported that small granules (brown layer) of regular (about 25% amylose) barley contained 4% less amylose than the large granules (white layer).

### Characterization of Barley Starches by SEM and DSC

Figure 1 shows SEM micrographs of starch granules and other barley components. The purified brown starch layer was composed of a high percentage of small (2-5 μm in diameter) round granules



Max: 146.6

$O^c$

Max: 143.7

$O^d$

Max: 138.2

$O^e$

Max: 158.4

2C

**Endothermic Heat Flow**

**Temperature (°C)**
110    130    150    170

Fig. 2. Differential scanning calorimetric thermograms of the "apparent" and "true" resistant starch isolated from the purified white barley starch layer. $O^c$ = residue obtained from starch dried under vacuum and heated with amylases, $O^d$ = residue isolated from starch treated with amylases without preliminary vacuum drying, $O^e$ = residue obtained from starch treated with amylases and protease without preliminary vacuum drying, 2C = resistant starch isolated after two autoclaving-cooling cycles. O = no autoclaving-cooling cycle.

Exhibit C 0108



with only a few large (10–15 μm) lenticular ¿nules visible (Fig. 1a); the white layer contained mainly large lenticular granules and a low proportion of small granules (Fig. 1b) The granule size, shape, and distribution appeared typical of normal barley starch, and the starch granules showed no apparent damage. The crude brown layer contained clusters of starch granules surrounded by a protein matrix (Fig. 1c). The residue after starch isolation represented a mixture of cell wall debris, protein fragments, and unreleased starch granules (Fig. 1d).

DSC data for isolated starchy materials are given in Table II. All preparations exhibited two prominent endothermic transitions over the temperature range of 50–120°C; the transitions corresponded to endotherms of starch gelatinization (54–87°C) and melting of the amylose-lipid complex (87–113°C). In both transitions, purified preparations attained much higher values of melting enthalpies than crude starch materials. Peak temperatures of starch gelatinization were much lower and melting enthalpies of both starch gelatinization and amylose-lipid complexes were higher in the purified starches than in the other materials (flour, crude brown layer, and residue). No significant differences in endothermic transition temperatures were observed between starches in the two purified starch layers. The mean peak temperatures and melting enthalpies were, respectively, 66.6°C and 10.6 J/g for starch gelatinization and 103.5°C and 3.7 J/g for amylose-lipid complexes. The values obtained are comparable to the data reported previously for barley starch by Bhatty and MacGregor (1988).

### Resistant Starch from Barley

The purified high-amylose barley starches were then used for the formation, isolation, and characterization of RS. As stated previously, the isolated starches were examined by DSC over the range of 20–180°C.

In the temperature range of 116–177°C, no transition could be observed in native, ungelatinized starches (Table III). However, the same starch treated with amylases without an autoclaving-cooling cycle yielded 4.1% of material, which was assayed as RS. It exhibited an endothermic transition in the general RS region but with a lower peak temperature and melting enthalpy. The results suggested that some RS may be formed during the analytical procedure. According to some reports, substantial amounts of RS may be formed during freeze-drying of the product before analysis (Englyst et al 1982).

Two transition ranges were recorded: around 55°C (probably uncomplexed lipid) and around 155°C (enzyme-resistant starch) (Tables III and IV). In light of the possibility of RS formation during the analytical procedure, a series of controls in addition to the native pure starch was included: starch dried under vacuum and heated with amylases, starch treated with amylases without preliminary vacuum drying, and starch treated with amylases and protease without preliminary vacuum drying.

Table III and Figure 2 indicate the possible formation of RS

in isolated starch that i̇ not undergo the autoclaving-cooling process. The yield of such "RS" was highest in starch dried under vacuum and treated with amylases. The yield decreased in samples treated with amylases without preliminary vacuum drying and decreased still further in samples treated with both amylase and protease without preliminary vacuum drying. Further examina-



Fig. 4. Differential scanning calorimetric thermograms of vacuum-dried resistant starch isolated from purified white and brown barley starch layers after one, four, 12, and 20 autoclaving-cooling cycles (C). Starch-water ratio = 1:5, autoclaving temperature = 121°C.



Fig. 5. Plot of enthalpy values of resistant starch versus yields of resistant starch from purified white (□) and brown (■) starch layers isolated from covered Glacier high-amylose barley.



Fig. 3. Effect of repeated autoclaving-cooling cycles on yields of resistant starch from purified white (□) and brown (■) starch layers isolated from covered Glacier high-amylose barley.

Exhibit C 0109



Fig. 6. Scanning electron micrographs of vacuum-dried resistant starch isolated from: amylomaize VII starch after one autoclaving-cooling cycle 'C) (a), purified white barley starch layer after one C (b), purified white barley starch layer after four C (e), purified brown barley starch layer

Exhibit C 0110



tion of the results (second transition) shows, however, that the four control samples (those with no autoclaving-cooling cycles) showed no peak enthalpy around 155°C, the most reliable criterion of RS formation (Fig. 2). Thus, the presence of RS should be established by the enzymatic-gravimetric method and confirmed by DSC of the 155°C peak.

As in the formation of RS from high-amylomaize starch (Sievert and Pomeranz 1989), an increase in the number of autoclaving-cooling cycles increased the yield of RS and its enthalpy. Similar results were obtained as a result of RS formation from the purified brown starch layer (Table IV). Increasing the number of cycles up to 20 raised the RS level from 6 to 26% (Fig. 3). Comparison of Tables III and IV shows that the RS preparations isolated from the two starch layers showed similar thermodynamic properties. They exhibited an endothermic transition in the temperature range of 116–177°C with a mean peak temperature at 158°C, probably due to dissociation of the crystalline structures of amylose. The melting temperature of recrystallized amylose was estimated at about 160°C (Biliaderis et al 1985, Ring et al 1987). Figure 4 illustrates the thermal profiles of RS isolated from white and brown starch layers after one to 20 autoclaving-cooling cycles. Differences in melting enthalpy values (about 3.4–4.0 J/g) were found between both layers after one and four cycles. The differences became smaller when the number of autoclaving-cooling cycles increased. The lower melting enthalpy values obtained for the brown starch layer could be attributed to the higher amylose content (over 3%) in small starch granules (brown layer) compared with that in the white starch layer. At 121°C, the partially ungelatinized brown starch layer yielded lower melting enthalpies than did the large granules in the white starch layer (Table II), particularly in RS isolated after one to four autoclaving-cooling cycles (Table IV). The thermograms in Figure 4 also show lower peak temperatures and broader peaks of melting enthalpy for RS residues isolated after one cycle than for those isolated after four to 20 cycles. The broader peaks probably reflect less organized crystalline structures, which require lower energies for the melting process. Our thermoanalytical results on retrograded barley starch are also in good agreement with those reported for other cereals such as amylomaize or wheat (Sievert and Pomeranz 1989, Siljeström et al 1989).

The data in Tables III and IV show that an increase in the number of autoclaving-cooling cycles was also associated with an increase in melting enthalpy. This increase was found only up to the 22% RS level, which was achieved by 12 repeated autoclaving-cooling cycles. Further cycles increased RS yield while the melting enthalpies remained constant (Fig. 5). The data suggest that changes in the quality of RS take place during autoclaving-cooling cycles. The plateau of the curves in Figure 5 probably reflects a limit of crystallization of RS structures formed under the conditions applied.

The vacuum-dried RS preparations exhibited an additional small thermal transition in the range from 37 to 66°C (Tables III and IV), which gradually disappeared as the number of autoclaving-cooling cycles increased. Similar observations were previously reported by Sievert and Pomeranz (1989) for vacuum-dried RS preparations obtained from amylomaize starch. It is not clear whether this thermal effect is derived from retrograded amylopectin, the association of which can be reversed by heating to about 70°C (Eliasson 1985, Zeleznak and Hoseney 1986), or whether other factors are involved in formation of this peak.

Amylose-lipid complexes that reach an endothermic transition at about 100°C (±20°C) (Kugimiya et al 1980, Biliaderis et al 1985) could not be detected in RS residues. This can be related to the use of the thermostable bacterial α-amylase for enzymatic isolation of RS. This enzyme has been shown to hydrolyze amylose-lipid complexes at high temperatures (Holm et al 1983).

Figure 6 shows SEM micrographs of RS preparations obtained from amylomaize VII starch and purified white and brown barley starch layers after one to four autoclaving-cooling cycles. The enzyme-resistant starch showed a completely different image than that of regular starch. The granular structure disappeared, and bigger, irregularly shaped particles were visible. These enzyme-resistant VII

| | TABLE V Calculated Enthalpies[a] | | |
|---|---|---|---|
| Number of Cycles | White Layer | Brown Layer | Calculated Enthalpy in Brown/White Layer (%) |
| 1 | 1.78 | 1.13 | 63.5 |
| 2 | 2.62 | 1.96 | 74.8 |
| 4 | 4.63 | 3.69 | 79.7 |
| 12 | 8.68 | 8.02 | 92.4 |
| 20 | 9.99 | 9.41 | 96.1 |

[a] Yield of resistant starch, percent dry matter multiplied by enthalpy (in J/g).

RS residues obtained after one cycle formed an open, fluffy structure (Fig. 6a), while in RS preparations isolated from barley starch more compact forms predominated (Fig. 6b–e). In RS preparations obtained from white and especially brown starch layers after one cycle, small particles of residual starch granules were still evident in some parts of the material (Fig. 6b and d). After four autoclaving-cooling cycles, very compact and dense structures could be observed in RS derived from both starch layers (Fig. 6c and e). The higher melting enthalpy of barley RS after four cycles compared with that after one cycle might be related to the structural changes and stabilization.

Czuchajowska et al (1991) introduced the term "calculated enthalpy" for the yield of RS (% dm) multiplied by the enthalpy (J/g) of the 155°C endotherm of RS. This theoretical value was used to take into account the effectiveness of different enzymes to isolate crystallized amylose from a starch sample and to deduce the amount of energy required to melt an isolated RS. The term can also be used to compare the yields and melting enthalpies from maize and barley or from large and small barley starch granules or the effects of numbers of autoclaving-cooling cycles. After 20 autoclaving-cooling cycles, the yields were 42 and 26% and the melting enthalpies 29 and 38 J/g, for RS in amylomaize VII and high-amylose barley, respectively; the corresponding calculated enthalpies were 12.2 and 9.9, respectively. Calculated enthalpies were consistently lower in RS for the brown layer than for the white layer (Table V). The difference in calculated enthalpies in RS for the two layers decreased, however, as the number of autoclaving-cooling cycles increased.

## CONCLUSIONS

"Apparent" enzyme-resistant starch in high-amylose barley starch can be distinguished from "true" RS by its peak enthalpies, which are below ~155°C. Increasing the number of autoclaving-cooling cycles increased both the yield and the melting enthalpy of RS (the same as in high-amylose maize). The maximum yield was higher and the melting enthalpy at ~155°C was lower in RS from maize than in RS from barley. Yields, enthalpies, and "calculated enthalpy" (yield × enthalpy) were higher in RS from large starch granules (white layer) than in RS from small starch granules (purified brown layer). The differences decreased as the number of autoclaving-cooling cycles increased.

## ACKNOWLEDGMENT

The financial support of the Washington Barley Commission, Spokane, to J. Szczodrak for postdoctoral research work at Washington State University is gratefully acknowledged.

## LITERATURE CITED

AMERICAN ASSOCIATION OF CEREAL CHEMISTS. 1983. Approved Methods of the AACC, 8th ed. Methods 08-01 and 30-25, approved April 1961, revised October 1981; 44-15A, approved October 1975, revised October 1981; 46-11A, approved October 1976, revised October 1982. The Association: St. Paul, MN.
ANDERSON, J. W. 1980. Dietary fiber and diabetes. Page 193 in: Medical

% RS < % amylose. Realize this part not applicable to Cl 16 However no disclosure of % composition of dietary fiber.

Exhibit C 0111



Aspects of Dietary Fiber. G. A. Spiller and R. M. Kay, eds. Plenum Medical Book Co.: London.

BERRY, C. 1986. Production of resistant starch in food by heat-processing: The role of amylose retrogradation and its implication for dietary fibre determination. Pages 37-49 in: Nahrungsfasern—Dietary Fibres. R. Amadò and T. F. Schweizer, eds. Academic Press, Inc.: London.

BERRY, C. S., I'ANSON, K., MILES, M. J., MORRIS, V. J., and RUSSELL, P. L. 1988. Physical-chemical characterization of resistant starch from wheat. J. Cereal Sci. 8:203.

BHATTY, R. S., and MacGREGOR, A. W. 1988. Gamma irradiation of hulless barley: Effect on grain composition, β-glucans, and starch. Cereal Chem. 65:463.

BILIADERIS, C. G., PAGE, C. M., SLADE, L., and SIRETT, R. R. 1985. Thermal behavior of amylose-lipid complexes. Carbohydr. Polym. 5:367.

BJÖRCK, I., NYMAN, M., PEDERSEN, B., SILJESTRÖM, M., ASP, N.-G., and EGGUM, B. O. 1987. Formation of enzyme resistant starch during autoclaving of wheat starch: Studies in vitro and in vivo. J. Cereal Sci. 6:159.

BJÖRCK, I., ELIASSON, A.-C., DREWS, A., GUDMUNDSSON, M., and KARLSSON, R. 1990. Some nutritional properties of starch and dietary fiber in barley genotypes containing different levels of amylose. Cereal Chem. 67:327.

CZUCHAJOWSKA, Z., SIEVERT, D., and POMERANZ, Y. 1991. Enzyme-resistant starch. IV. Effects of complexing lipids. Cereal Chem. 68:537.

ELIASSON, A.-C. 1985. Retrogradation of starch as measured by differential scanning calorimetry. Pages 93-98 in: Progress in Biotechnology. I. New Approaches to Research on Cereal Carbohydrates. R. D. Hill and L. Munck, eds. Elsevier Science Publ. B.V.: Amsterdam.

ENGLYST, H. N., and CUMMINGS, J. H. 1987. Resistant starch, a new food component: A classification of starch for nutritional purposes. Pages 221-233 in: Cereals in a European Context. First European Conference on Food Science and Technology. L. D. Morton, ed. Ellis Horwood Ltd.: Chichester, England.

ENGLYST, H. N., WIGGINS, H. S., and CUMMINGS, J. H. 1982. Determination of the non-starch polysaccharides in plant foods by gasliquid chromatography of constituent sugars as alditol acetates. Analyst 107:307.

ENGLYST, H. N., ANDERSON, V., and CUMMINGS, J. H. 1983. Starch and non-starch polysaccharides in some cereal foods. J. Sci. Food Agric. 34:1434.

HOLM, J., BJÖRCK, I., OSTROWSKA, S., ELIASSON, A.-C., ASP, N.-G., LARSSON, K., and LUNDQUIST, I. 1983. Digestibility of amylose-lipid complexes in-vitro and in-vivo. Starch/Staerke 35:294.

HOSENEY, R. C. 1986. Cereal starch. Pages 33-67 in: Principles of Cereal Science and Technology. Am. Assoc. Cereal Chem.: St. Paul, MN.

HOVENKAMP-HERMELINK, J. H. M., DE VRIES, J. N., ADAMSE, P., JACOBSEN, E., WITHOLT, B., and FEENSTRA, W. J. 1988. Rapid estimation of the amylose/amylopectin ratio in small amounts of tuber and leaf tissue of the potato. Potato Res. 31:241.

JENKINS, D., WOLEVER, T., THORNE, M., LEE, R., KALMUSKY, J., REICHERT, R., and WONG, G. 1983. The glycaemic index of foods tested in diabetic patients: A new basis for carbohydrate exchange favouring the use of legumes. Diabetologia 24:257.

JENKINS, D., CUFF, D., WOLEVER, T., KNOWLAND, D., THOMPSON, L., COHEN, Z., and PROKIPCHUK, E. 1987. Digestibility of carbohydrate foods in an ileostomate: Relationship to dietary fiber,

in vitro digestibility and glycemic response. Am. J. Gastroenterol. 82:709.

KUGIMIYA, M., DONOVAN, J. M., and WONG, R. Y. 1980. Phase transitions of amylose-lipid complexes in starches: A calorimetric study. Starch/Staerke 32:265.

LLOYD, J. B., and WHELAN, W. J. 1969. An improved method for enzymic determination of glucose in the presence of maltose. Anal. Biochem. 30:467.

McDONALD, A. M. L., and STARK, J. R. 1988. A critical examination of procedures for the isolation of barley starch. J. Inst. Brew. 94:125.

MACKEY, J. 1981. Cereal production. Pages 5-23 in: Cereals: A Renewable Resource: Theory and Practice. Y. Pomeranz and L. Munck, eds. Am. Assoc. Cereal Chem.: St. Paul, MN.

MUNCK, L. 1981. Barley for food, feed and industry. Pages 427-459 in: Cereals: A Renewable Resource: Theory and Practice. Y. Pomeranz and L. Munck, eds. Am. Assoc. Cereal Chem.: St. Paul, MN.

NEWMAN, R. K., NEWMAN, C. W., and GRAHAM, H. 1989. The hypocholesterolemic function of barley β-glucans. Cereal Foods World 34:883.

POMERANZ, Y. 1985. Carbohydrates. Pages 25-31 in: Functional Properties of Food Components. Academic Press, Inc.: Orlando, FL.

POMERANZ, Y. 1987. Barley. Pages 419-440 in: Modern Cereal Science and Technology. VCH Publ.: New York.

PROSKY, L., ASP, N. G., SCHWEIZER, T. F., DE VRIES, J. W., and FURDA, I. 1988. Determination of insoluble, soluble, and total dietary fiber in foods and food products: Interlaboratory study. J. Assoc. Off. Anal. Chem. 71:1017.

RING, S. G., COLONNA, P., I'ANSON, K. J., KALICHEVSKY, M. T., MILES, M. J., MORRIS, V. J., and ORFORD, P. D. 1987. The gelation and crystallization of amylopectin. Carbohydr. Res. 162:277.

RING, S. G., GEE, J. M., WHITTAM, M., ORFORD, P., and JOHNSON, I. T. 1988. Resistant starch: Its chemical form in foodstuffs and effect on digestibility in vitro. Food Chem. 28:97.

RUSSELL, P. L., BERRY, C. S., and GREENWELL, P. 1989. Characterization of resistant starch from wheat and maize. J. Cereal Sci. 9:1.

SCHNEEMAN, B. O. 1989. Dietary fiber. Food Technol. 43(10):133.

SIEVERT, D., and POMERANZ, Y. 1989. Enzyme-resistant starch. I. Characterization and evaluation by enzymatic, thermoanalytical, and microscopic methods. Cereal Chem. 66:342.

SIEVERT, D., and POMERANZ, Y. 1990. Enzyme-resistant starch. II. Differential scanning calorimetry studies on heat-treated starches and enzyme-resistant starch residues. Cereal Chem. 67:217.

SIEVERT, D., CZUCHAJOWSKA, Z., and POMERANZ, Y. 1991. Enzyme-resistant starch. III. X-ray diffraction of autoclaved amylomaize VII starch and enzyme-resistant starch residues. Cereal Chem. 68:86.

SILJESTRÖM, M., and ASP, N. G. 1985. Resistant starch formation during baking—Effect of baking time and temperature and variations in the recipe. Z. Lebensm. Unters. Forsch. 181:4.

SILJESTRÖM, M., ELIASSON, A. C., and BJÖRCK, I. 1989. Characterization of resistant starch from autoclaved wheat starch. Starch/Staerke 41:147.

STARK, J. R., and YIN, X. S. 1986. The effect of physical damage on large and small barley starch granules. Starch/Staerke 38:369.

ZELEZNAK, K. J., and HOSENEY, R. C. 1986. The role of water in the retrogradation of wheat starch gels and bread crumb. Cereal Chem. 63:407.

[Received December 21, 1990. Accepted May 13, 1991.]

Exhibit C 0112



**UNITED STATES DEPARTMENT OF COMMERCE**
**Patent and Trademark Office**
Address: COMMISSIONER OF PATENTS AND TRADEMARKS
Washington, D.C. 20231

| APPLICATION NUMBER | FILING DATE | FIRST NAMED APPLICANT | ATTORNEY DOCKET NO. |
|---|---|---|---|
| 08/374,645 | 04/27/95 | MCNAUGHT | K 1451-007PCT |

12M1/0922

LOWE PRICE LEBLANC & BECKER
99 CANAL CENTER PLAZA SUITE 300
ALEXANDRIA VA 22314

| EXAMINER |
|---|
| NUTTER, N |

| ART UNIT | PAPER NUMBER |
|---|---|
| 1207 | 17 |

DATE MAILED: 09/22/97

This is a communication from the examiner in charge of your application.
COMMISSIONER OF PATENTS AND TRADEMARKS

SUPPLEMENTAL
NOTICE OF ALLOWABILITY

All claims being allowable, PROSECUTION ON THE MERITS IS (OR REMAINS) CLOSED in this application. If not included herewith (or previously mailed), a Notice of Allowance and Issue Fee Due or other appropriate communication will be mailed in due course.

[X] This communication is responsive to 22 July 1997

[X] The allowed claim(s) is/are 9-11, 13-17 and 20-29

[ ] The drawings filed on _____ are acceptable.

[ ] Acknowledgement is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d).

    [ ] All [ ] Some* [ ] None of the CERTIFIED copies of the priority documents have been

        [ ] received.

        [ ] received in Application No. (Series Code/Serial Number) _____

        [ ] received in this national stage application from the International Bureau (PCT Rule 17.2(a)).

    *Certified copies not received: _____

[X] Acknowledgement is made of a claim for domestic priority under 35 U.S.C. § 119(e).

A SHORTENED STATUTORY PERIOD FOR RESPONSE to comply with the requirements noted below is set to EXPIRE THREE MONTHS FROM THE "DATE MAILED" of this Office action. Failure to timely comply will result in ABANDONMENT of this application. Extensions of time may be obtained under the provisions of 37 CFR 1.136(a).

[ ] Note the attached EXAMINER'S AMENDMENT or NOTICE OF INFORMAL APPLICATION, PTO-152, which discloses that the oath or declaration is deficient. A SUBSTITUTE OATH OR DECLARATION IS REQUIRED.

[X] Applicant MUST submit NEW FORMAL DRAWINGS

    [ ] because the originally filed drawings were declared by applicant to be informal.

    [X] including changes required by the Notice of Draftperson's Patent Drawing Review, PTO-948, attached hereto or to Paper No. 11.

    [ ] including changes required by the proposed drawing correction filed on _____, which has been approved by the examiner.

    [ ] including changes required by the attached Examiner's Amendment/Comment.

    Identifying indicia such as the application number (see 37 CFR 1.84(c)) should be written on the reverse side of the drawings. The drawings should be filed as a separate paper with a transmittal letter addressed to the Official Draftsperson.

[ ] Note the attached Examiner's comment regarding REQUIREMENT FOR THE DEPOSIT OF BIOLOGICAL MATERIAL.

Any response to this letter should include, in the upper right hand corner, the APPLICATION NUMBER (SERIES CODE/SERIAL NUMBER). If applicant has received a Notice of Allowance and Issue Fee Due, the ISSUE BATCH NUMBER and DATE OF THE NOTICE OF ALLOWANCE should also be included.

**Attachment(s)**

[ ] Notice of References Cited, PTO-892

[X] Information Disclosure Statement(s), PTO-1449, Paper No(s). 16

[ ] Notice of Draftsperson's Patent Drawing Review, PTO-948

[ ] Notice of Informal Patent Application, PTO-152

[ ] Interview Summary, PTO-413

[ ] Examiner's Amendment/Comment

[ ] Examiner's Comment Regarding Requirement for Deposit of Biological Material

[ ] Examiner's Statement of Reasons for Allowance

NATHAN M. NUTTER
PRIMARY EXAMINER
GROUP 1200

PTOL-37 (Rev. 10/95)

*U.S. GPO: 1997-422-17

Exhibit C 0113

Docket No.: <u>1451-007</u>                 PATENT

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re Application of                    :    **OFFICIAL DRAFTSMAN**
                                        :        BATCH NO. O63
Kenneth J. McNAUGHT et al               :
                                        :
Serial No. 08/374,645                   :    Group Art Unit:  1207
                                        :    Allowed:  6/24/97
Filed:  April 27, 1995                  :    Examiner:  N. Nutter
                                        :
For:   HIGH AMYLOSE STARCH AND RESISTANT STARCH FRACTIONS

LETTER SUBMITTING FORMAL DRAWINGS

RECEIVED

SEP 05 1997

08

Honorable Commissioner of
 Patents and Trademarks
Washington, D. C.  20231

Sir:

     In response to the Notice of Allowability dated June 24,

1997, submitted herewith are four (4) sheets of Formal Drawings

in connection with the above referenced application.

                         Respectfully submitted,

                         LOWE, PRICE, LEBLANC & BECKER

                         Robert L. Price
                         Registration No. 22,685

99 Canal Center Plaza, Suite 300
Alexandria, Virginia  22314
(703) 684-1111 RLP:th
Date:  September 5, 1997
Facsimile: 703-684-1124

Exhibit C 0114

08/374,645

5714600



## High Amylose Maize Starches
### GPC Analysis



FIG. 1

Exhibit C 0115



FIG. 2

VISCOGRAPH PROGRAMME
8% dsb in water; 250 cmg; plus; 50 °C auto 92°C
hold 15 mins auto 50°C hold 10 mins

Exhibit C 0116



FIG. 3

VISCOGRAPH PROGRAMME:
6% dsb in 0.1M Sodium Hydroxide (NaOH); 250 cmg;
plus; 36°C auto 92°C hold 15 mins auto 35°C

Exhibit C 0117



FIG. 4

Exhibit C 0118



PTO UTILITY GRANT
Paper Number____19

### The Commissioner of Patents and Trademarks

*Has received an application for a patent for a new and useful invention. The title and description of the invention are enclosed. The requirements of law have been complied with, and it has been determined that a patent on the invention shall be granted under the law.*

*Therefore, this*

### United States Patent

*Grants to the person(s) having title to this patent the right to exclude others from making, using, offering for sale, or selling the invention throughout the United States of America or importing the invention into the United States of America for the term set forth below, subject to the payment of maintenance fees as provided by law.*

*If this application was filed prior to June 8, 1995, the term of this patent is the longer of seventeen years from the date of grant of this patent or twenty years from the earliest effective U.S. filing date of the application, subject to any statutory extension.*

*If this application was filed on or after June 8, 1995, the term of this patent is twenty years from the U.S. filing date, subject to an statutory extension. If the application contains a specific reference to an earlier filed application or applications under 35 U.S.C. 120, 121 or 365(c), the term of the patent is twenty years from the date on which the earliest application was filed, subject to any statutory extension.*

*Bruce Lehman*
Commissioner of Patents and Trademarks

*Candra J Morton*
Attest

The
United
States
of
America

Form PTO-1584 (Rev. 2/97)

(RIGHT INSIDE)

Exhibit C 0119

SENT BY:LOWE PRICE ... : 10-88 : 13-51 : LOWE PRICE : 3053599;# 47 5

FAX COPY RECEIVED

FEB. 1 0 1998

Docket No.: 1451-007

GROUP 1100

#70/E
PATENT (312)

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re Application of

Kenneth J. McNAUGHT et al

Serial No. 08/374,645

Filed: April 27, 1995

For:    HIGH AMYLOSE STARCH AND RESISTANT STARCH FRACTIONS

:
:    BATCH NO. 063
:
:    Group Art Unit: 1804
:    Allowed: June 24, 1997
:    Examiner: N. Nutter
:

PETITION AND AMENDMENT UNDER 37 CFR 1.312

The Assistant Commissioner
 for Patents and Trademarks
Washington, D. C. 20231

Sir:

Please amend the above-identified application as follows:

IN THE CLAIMS:

Please cancel claims 9-11, 13-15, 24 and 25.

REMARKS

Petition is hereby made to cancel claims 9-11, 13-15, 24 and 25 from this application in accordance with 37 CFR 1.312(b). It is requested that these claims be deleted and the application allowed to proceed to patent with the remaining claims 16, 17 and 26-29. Please charge the petition fee in the amount of $130.00 to deposit account 12-2237.

Cancellation of these claims and grant of this petition is necessary to ensure the validity of all claims in the patent. After

108-518 5499

Exhibit C 0120

Serial No. 08/374,645

payment of the issue fee, applicants discovered there is additional
prior art that may be relevant to the patentability of these
cancelled claims 9-11, 13-15, 25 and 25; which relate to a different
invention from claims 16, 17 and 26-29 (which remain in this allowed
application. It is believed that this additional prior art is not
relevant to the patentability of the remaining claims in this
application because these remaining claims are patentably distinct
from these cancelled claims. Accordingly, applicants petition to be
permitted to cancel claims 9-11, 13-15, 24 and 25 and reserve the
right to present these cancelled claims in a Divisional application
along with this new, possibly relevant prior art .

For these reasons, it is submitted that this petition should be
granted and such action is requested. It is believed that the above
petition and fee therefore are correct. However, if additional fee
is required, kindly charge the same to the undersigned attorney's
deposit account number 12-2337.

Respectfully submitted,
LOWE, PRICE, LEBLANC & BECKER

Michael G. Gilman
Registration No. 19,114

99 Canal Center Plaza, Suite 300
Alexandria, Virginia 22314
(703) 684-1111 MGG:ajb
Date: November 4, 1997
Facsimile: 703-684-1124

Exhibit C 0121

SENT BY:LONE PRICE ...        2-10-98 ;  13:50 ;     LONE PRICE ... →          3053599;# 1/ 5

FAX COPY RECEIVED

FEB 1 0 1998

GROUP 1100

**FAX INFORMATION**
**McDERMOTT, WILL & EMERY**
**SUITE 300**
**99 CANAL CENTER PLAZA**
**ALEXANDRIA, VIRGINIA  22314**
**(703) 518-5100**
**FAX:  (703) 684-1124**

DATE:  February 10, 1998

TO:

NAME: Mr. Ted Morris

FIRM:  U.S. Patent and Trademark Office

LOCATION:

FAX NUMBER:  703-305-3599

NUMBER OF PAGES (including cover):  5

FROM:

NAME:  Robert L. Price

RE:

Your Reference:  U.S. Serial No. 08/374,645

Our Reference:  50179-024 (1451-007)

Special Instructions:  PLEASE DELIVER TO MR. MORRIS ASAP.  HE IS HOLDING
FILE.  THIS AMENDMENT WAS FILED ON NOVEMBER 5, 1997 BUT NEVER
ENTERED INTO THE FILE.

Original will be sent to you:     No:                    X

                                  Yes (via mail/air mail)  __

**IMPORTANT**

The information contained in this facsimile is intended only for the use of the individual or entity to
whom it is addressed.  If you are not the intended recipient, you are hereby notified that any use,
dissemination, distribution or copying of this communication is strictly prohibited.  If you have received
this facsimile in error, please immediately notify us by telephone, and return the original message to us
at the address above via the U. S. Postal Service.  Thank you.

For confirmation or assistance call (703) 518-5100 and ask for:  Kathy

Exhibit C 0122

SENT BY:LOWE PRICE ...          -10-98 ; 13:50 ;       LOWE PRICE          ·          3053599;# 2/ 5

## FAX COPY RECEIVED

### FEB 1 0 1998

### GROUP 1100

The Patent Office acknowledges, and has stamped hereon, the date of receipt of the items checked:

| | | Fee ($) |
|---|---|---|
| ☐ | SMALL ENTITY | |
| ( ) | Information Disclosure Statement W/PTO 1449 and References | _____ |
| | ( ) Assignment and Fee | _____ |
| | ( ) Certified Priority Doc.(s) _____ | — 0 — |
| | ( ) Response to Restrict./Elect. Req. | — 0 — |
| | ( ) Amendment | _____ |
| | ( ) Supplemental/Substitute Declaration | — 0 — |
| | ( ) Request for Approval of Drawing Revisions | — 0 — |
| | ( ) Notice of Appeal and Fee | _____ |
| | ( ) Appeal Brief (3 copies) and Fee | _____ |
| | ( ) Reply Brief (NO FEE) | — 0 — |
| | ( ) Extension of Time _____ mos. | _____ |
| | ( ) Terminal Disclaimer and Fee | _____ |
| | ( ) Formal Drawings _____ Sheets | — 0 — |
| | ( ) Issue Fee | _____ |
| | ( ) Request for File Wrapper _____ Appl Under 37 CFR 1.62 | _____ |
| | ( ) | Total Fee 130.00 |

Doc. No. 1451 · 001

Serial No. 08/374,645

Applicant _____

McDough et al.

Petition + Amendment
under 37 CFR 1.12
$ 130.00

☐ Charge to Deposit Account _____

☐ Charge to Deposit Account 12-2237     Initials: mb/gb

Exhibit C 0123

SENT BY:LONE PRICE ;    10-88 ; 13:50 ;    LONE PRICE    3058599;# 3/ 5

Docket No.: 1451-007                                    PATENT

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re Application of          FAX COPY RECEIVED        : BATCH NO. 063

Kenneth J. McNAUGHT et al         FEB 1 0 1998        :
Serial No. 08/374,645                                 : Group Art Unit: 1804
                                  GROUP 1100           : Allowed: June 24, 1997
Filed: April 27, 1995                                 : Examiner: N. Nutter

For: HIGH AMYLOSE STARCH AND RESISTANT STARCH FRACTIONS

THE ASSISTANT COMMISSIONER
  FOR PATENTS AND TRADEMARKS
Washington, D. C. 20231

Dear Sir:

Transmitted herewith is a Petition and Amendment Under 37 CFR 1.312 in the above identified application.
[ ]  No additional fee is required.
[ ]  Also attached:

The fee has been calculated as shown below:

| | NO. OF CLAIMS | HIGHEST PREVIOUSLY PAID FOR | EXTRA CLAIMS | RATE | FEE |
|---|---|---|---|---|---|
| Total Claims | 8 | 20 | 0 | x $22 = | 0 |
| Independent Claims | 2 | 3 | 0 | x $82 = | 0 |
| | If multiple claims newly presented, add $270.00 | | | | |
| | Fee for extension of time | | | | |
| | Petition Fee | | | | $130.00 |
| | | | TOTAL FEE DUE | | 130.00 |

[X]  Please charge my Deposit Account No. 12-2237 in the amount of $130.00.  An additional copy of this transmittal
     sheet is submitted herewith.

[X]  The Commissioner is hereby authorized to charge payment of any fees associated with this communication or credit
     any overpayment, to Deposit Account No. 12-2237, including any filing fees under 37 CFR 1.16 for presentation of
     extra claims and any patent application processing fees under 37 CFR 1.17.

                              Respectfully submitted,

                              LOWE, PRICE, LEBLANC & BECKER

                              Michael G. Gilman
                              Registration No. 19,114

99 Canal Center Plaza, Suite 300
Alexandria, Virginia  22314
(703) 684-1111 MGG:ajb
Date:  November 4, 1997
Facsimile: 703-684-1124

Exhibit C 0124

Docket No.: <u>50179-024 (1451-007)</u>                    <u>PATENT</u>

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re Application of                    :
                                        :
Kenneth J. McNAUGHT et al               :    ATTN:   Antonion Johnson
                                        :            CERTIFICATE OF
Serial No. 5,714,600                    :              CORRECTIONS
                                        :
Filed: February 3, 1998                 : Crystal Park 3, RM 918

For:   HIGH AMYLOSE STARCH AND RESISTANT STARCH FRACTIONS

       <u>REQUEST FOR REISSUANCE OF DEED OF LETTERS PATENT</u>

Honorable Commissioner of Patents and Trademarks
Washington, D. C.  20231

Sir:

     Surrendered herewith is the original Deed of Letters Patent

for U.S. Patent No. 5,714,600 wherein the claims contained therein

are incorrect.  The claims issued should have taken into account

Applicants' Amendment of November 5, 1997 cancelling claims 9-11,

13-15, 24 and 25.  Attached herewith are a Request for Certificate

of Correction Under 37 CFR 1.322 and Form PTO 1050 outlining the

claims as they should appear in the Deed of Letters Patent for the

convenience of the Office.

                         Respectfully submitted,

                         McDERMOTT, WILL & EMERY


                         Robert L. Price
                         Registration No. 22,685

99 Canal Center Plaza, Suite 300
Alexandria, Virginia  22314
(703) 518-5100 RLP:kmb
Date:  March 13, 1998
Facsimile: 703-684-1124

                         1

Exhibit C 0125

NOTICE RE: CERTIFICATES OF CORRECTION

DATE    : 4/29/98

TO      : Supervisor, Art Unit    1207

SUBJECT : Certificate of Correction Request in Patent No. 5,714,600

A response to the following question(s) is requested with respect to the accompanying request for a certificate of correction.

☐ 1. Would the change(s) requested under 37 CFR 1.323 constitute new matter or require reexamination of the pplication?

☐ 2. Would the change(s) requested under 37 CFR 1.323 Materially affect the scope or meaning of the claims allowed by the examiner in the patent?

☐ 3. Applicant disagrees with change(s) initialed and dated by Examiner in lieu of an Examiner's Amendment. Should the change request be granted?

☐ 4. With respect to the change(s) requested, correcting Office errors, should the patent read as shown in the certificate of correction?

☒ 5. If the amendment filed 3/2 had been considered by the Examiner, would the amendment have been entered?

*PLEASE RESPOND WITHIN 7 DAYS AND RETURN THE FILE TO ROOM 918, PK III*

_May Clegg_
Legal Instrument Examiner

---

TO: CERTIFICATE OF CORRECTION BRANCH                DATE:

The decision regarding the change(s) requested in the certificate of correction is shown below.

☐ 1.YES  ☐ NO    ☐ Comments below

☐ 2.YES  ☐ NO    ☐ Comments below

☐ 3.YES  ☐ NO    ☐ Comments below

☐ 4.YES  ☐ NO    ☐ Comments below

☒ 5.YES  ☐ NO    ☐ Comments below

☐ Comments

_____        _____
Supervisor                              Art Unit  1717

PTOL-306 (REV. 10/87)                U.S. DEPARTMENT OF COMMERCE Patent and Trademark Office

Exhibit C 0126

5714,600                RTC Copic

Docket No.: 50179-024                                    **PATENT**

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re Application of                    :

Kenneth J. MCNAUGHT, et al.            :

Serial No.: 08/374,645                 :        Group Art Unit: 1207

Filed: April 27, 1995                  :        Examiner: N. Nutter

For:   HIGH AMYLOSE STARCH AND RESISTANT STARCH FRACTIONS

### REQUEST FOR CORRECTED CERTIFICATE OF CORRECTION

Commissioner for Patents
Washington, DC 20231

Sir:

When U.S. Patent 5,714,600, was issued on February 3, 1998, the patent contained 18 claims. However, certain claims had been unintentionally included in the patent even though those claims had been cancelled from the application by amendment. When the error was realized, the U.S. Patent & Trademark Office was contacted and we were instructed by the director of Group 1100 to file a Certificate of Correction in accordance with his Memorandum dated March 10, 1998. Enclosed is one copy of that Memorandum from the Group Director Theodore Morris, and one copy of the request for Certificate of Correction filed March 12, 1998.

When the Certificate of Correction issued however, it was noted that the certificate used the claim numbers as they existed in the application and not as the claim numbers existed in the final printed patent. As a result, this has led to substantial confusion in determining the claims which are actually in force in U.S. patent 5,714,600.

Exhibit C 0127

Serial No.: 08/374,645

To correct this problem, Applicants request that the original Certificate of Correction issued in U.S. Patent 5,714,600, be canceled and replaced by a new Certificate of Correction which properly refers to the claims as they are numbered in the patent. Submitted herewith is a Certificate of Correction to accomplish this purpose. Basically, the Certificate of Correction request's deletion of the previous Certificate of Correction and issuance of a new Certificate of Correction in which patent claims 1-8 are deleted. The patent should contain only claims 9-18.

Since the Certificate of Correction is necessary for the public's understanding as to the claims in force in U.S. Patent 5,714,600, it is believed that the Certificate of Correction should be granted. Please charge the fee for the Certificate of Correction to Deposit Account 500417.

Respectfully submitted,

McDERMOTT, WILL & EMERY

Robert L. Price
Registration No. 22,685

600 13th Street, N.W.
Washington, DC 20005-3096
(202)756-8000 RLP:jdj
Facsimile: (202)756-8087
Date: March 21, 2002

2

Exhibit C 0128

UNITED STATES PATENT AND TRADEMARK OFFICE

# CERTIFICATE OF CORRECTION

PATENT NO. :  5,714,600

DATED       :  February 3, 1998

INVENTOR(S) :  Kenneth J. McNAUGHT et al

It is certified that error appears in the above-identified patent and that said Letters Patent is hereby corrected as shown below:

Please enter the following corrections since the office failed to timely match the amendment dated November 5, 1997:

--Cancel claims 9-11, 13-15, 24 and 25--.

The Final Order of the claims should be:

```
1.  16
2.  17
3.  20 depends 1
4.  21 depends 2
5.  22 depends 1
6.  23 depends 1
7.  26 depends 2
8.  27 depends 7
9.  28 depends 8
10. 29 depends 9
```

MAILING ADDRESS OF SENDER:

PATENT NO.  5,714,600

No. of add'l copies
@ 50¢ per page

McDERMOTT, WILL & EMERY
99 Canal Center Plaza, Suite 300
Alexandria, VA  22314

FORM PTO 1050 (Rev. 2-93)

Exhibit C 0129

## NOTICE RE: CERTIFICATES OF CORRECTION

DATE : 04/25/02                                    Paper No.: 24

TO : Supervisor, Art Unit 1700

SUBJECT : Certificate of Correction Request in Patent No.: 5714600

A response to the following question is requested with respect to the accompanying request for a certif of correction.

With respect to the change(s) requested, correcting Office and/or Applicant's errors, should the patent read as shown in the certificate of correction? No new matter should be introduced, nor should scope or meaning of the claims be changed.

*PLEASE COMPLETE THIS FORM AND*
*RETURN WITH FILE, WITHIN 7 DAYS,*
*TO CERTIFICATES OF CORRECTION BRANCH - PK 3-915/922*
*PALM LOCATION 7580 - TEL. NO. 305-8309*

*THANK YOU FOR YOUR ASSISTANCE!*

Note your decision, regarding the changes requested in the Request for Certificate of Correction, placing a check mark (+) in the box that reflects your decision, which corresponds to the question check above.

☒ YES          ☐ NO          ☐ Comments below

☐ Comments:

_____

_____

_____

_____

Supervisor                              Art Unit  1711

FTOL-306 (REV. 2/02)                    U.S. DEPARTMENT OF COMMERCE Patent and Trademark Offi

Exhibit C 0130

UNITED STATES PATENT AND TRADEMARK OFFICE
# CERTIFICATE OF CORRECTION

PATENT NO.    : 5,714,600                                    Page 1 of 1
DATED         : February 03, 1998
INVENTOR(S)   : Kenneth J. McNaught et al.

It is certified that error appears in the above-identified patent and that said Letters Patent is
hereby corrected as shown below:

Column 9-10,
Lines 19-45, cancel claims 1-8.

Signed and Sealed this

Twenty-third Day of July, 2002

Attest:

JAMES E. ROGAN
*Director of the United States Patent and Trademark Office*

Attesting Officer

Exhibit C 0131