IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

---------------------------------------------------------------x
                                                               :
National Starch and Chemical Investment                        :
Holding Corporation,                                           :
Penford Australia Ltd., and                                    :
Penford Holdings Pty.,                                         :
                                                               :
                    Plaintiffs,                                :
                                                               :
            v.                                                 :   Civil Action No. 1:04-cv-1443
                                                               :
Cargill Corporation                                            :
MGP Ingredients, Inc.                                          :
                    Defendants                                 :
                                                               :
---------------------------------------------------------------x

**PLAINTIFFS' SECOND NOTICE OF
DEPOSITION TO CARGILL CORPORATION AND
MGP INGREDIENTS, INC. PURSUANT TO FED. R. CIV. P. 30(B)(6)**

TO DEFENDANTS, CARGILL CORP. AND MGP INGREDIENTS, INC. AND THEIR ATTORNEYS OF RECORD IN THIS ACTION:

PLEASE TAKE NOTICE that pursuant to Federal Rule of Civil Procedure 30(b)(6), Plaintiffs National Starch and Chemical Investment Holding Corp., Penford Australia Ltd., and Penford Holdings Pty., ("Plaintiffs") will take the deposition of Defendants Cargill Corporation ("Cargill") and MGP Ingredients, Inc. ("MGPI") on January 19, 2006, at 9:00 am, at the offices of Kenyon & Kenyon, One Broadway, New York, New York 10004, or at such other date, time and location as mutually agreed between the parties, and continuing from day to day until completed. Cargill shall designate one or more officers, directors, managing agents, or other persons who have knowledge of and will consent to testify on behalf of Cargill with respect to the matters listed in attached Exhibit A in accordance with the Definitions set forth therein. The

deposition shall be recorded by a stenographer duly authorized to administer oaths and shall be videotaped, and LiveNote may be used.

Dated:       By: _/s/ Karen E. Keller_
             Josy W. Ingersoll (ID #1088)
             Karen E. Keller (ID #4489)
             Young, Conaway, Stargatt & Taylor, LLP
             The Brandywine Building
             1000 West St.
             Wilmington, Delaware 19801
             (302) 571-6672

             Richard. L. DeLucia
             Paul M. Richter, Jr.
             Jerry Canada
             Kenyon & Kenyon
             One Broadway
             New York, New York 10004-1050
             (212) 425-7200

             Attorneys for Plaintiffs
             National Starch and Penford

# EXHIBIT A

# DEFINITIONS

The definitions from *Plaintiffs' Second Set of Requests for Documents and Things* are incorporated herein by reference

## **INSTRUCTIONS**

The instructions from *Plaintiffs' First Set of Requests for Documents and Things* are incorporated herein by reference.

## DEPOSITION TOPICS

1. Identification of Defendants' amylose products, that are or have been made, used, sold, offered for sale in, or imported into, the United States by or for Cargill, including, but not limited to, the full name, model number and version number (if any).

2. Conception of each of Defendants' amylose products, including any products that are no longer on the market.

3. Research, development and design of Defendants' amylose products by or for Cargill, including but not limited to, the dates when and locations where such work occurred, who performed it, what documents and things were used, referred to, relied upon or created and what occurred.

4. Evaluation, testing and analysis of Defendants' amylose products or Plaintiffs' amylose products by or for Cargill.

5. Evaluation, testing and analysis of Defendants' Fibersym$^{TM}$ HA product, including but not limited to the parental lines utilized, the manufacturer associated with the parental lines utilized and the reasoning for the selection of these parental lines.

6. Evaluation, testing, analysis, reverse-engineering of other products in connection with the conception, research, design and development of Defendants' amylose products, by or for Cargill.

7. Evaluation, testing and analysis of the amylose content of Defendants' amylose products.

8. All decisions to research, design and develop Defendants' amylose products including, but not limited to, the identity of person involved in and documents relating to such decisions.

9. Improvements or modifications to Defendants' amylose products.

10. Use of Defendants' amylose products, including, but not limited to, methods of use, demonstrations, recommendations, directions, instructions or other guidance for use, manuals and descriptions of Defendants' amylose products, and the purpose, creation and distribution, to customers, distributors or consumers thereof.

11. Breeding, growing, production, manufacture and packaging of Defendants' amylose products, including but not limited to, when, where, how, why and by whom Defendants' amylose products are or have been bred, grown, produced, manufactured and packaged.

12. All decisions to breed, grow, produce, manufacture and package Defendants' amylose products, including, but not limited to, the identity of persons involved in and documents relating to such decision.

13. Agreements, understandings or arrangements relating to breeding, growing, production, manufacture and packaging of Defendants' amylose products.

14. Cargill's inventory, returned goods and destroyed goods concerning Defendants' amylose products.

15. Marketing, advertising, publicity and promotion of Defendants' amylose products, including, but not limited to, when, where, how, why to whom and by whom Defendants' amylose products is or has been marketed, advertised, publicized and promoted.

16. All decisions to market, advertise, publicize and promote Defendants' amylose products, including, but not limited to, the identity of persons involved in and documents relating to such decisions.

17. Agreements, understandings or arrangements relating to marketing, advertising, publicity and promotion of Defendants' amylose products.

18. Information provided to the public by or on behalf of Defendants concerning the properties, features, advantages, disadvantages and methods of use, intended uses or other uses of Defendants' amylose products or Plaintiffs' amylose products.

19. Defendants' communications with its customers and potential customers for Defendants' amylose products, including, but not limited to, communications relating to the design, development, testing, evaluation, manufacture, quality assurance, packaging, import, export, use, sale, offer for sale and distribution of Defendants' amylose products or Plaintiffs' amylose products.

20. Sale, offer for sale and distribution of Defendants' amylose products, including, but not limited to, when, where, how, why, to whom and by whom Defendants' amylose products are or have been sold, offered for sale and distributed.

21. All decisions to sell, offer for sale and distribute Defendants' amylose products, including, but not limited to, the identity of persons involved in and documents relating to such decisions.

22. Agreements, understandings or arrangements relating to sale, offer for sale, production and distribution of Defendants' amylose products.

23. The Unites States and international markets for Defendants' amylose products and market information relating to Defendants' amylose products, including, but not limited to the identity and nature of all markets for Defendants' amylose products and Plaintiff's amylose products and projected, estimated and actual data on market share.

24. Competition faced by or provided by Defendants' amylose products, including but not limited to the identity and nature of all products that compete with Defendants' amylose products, comparisons between products and product features, and competitive strategies.

25. Defendants' knowledge of, and analysis of, products that actually or potentially compete with Defendants' amylose products.

26. Intellectual property rights in or relating to Defendants' amylose products, including but not limited to, the ownership, application for, prosecution and licensing of any patents or other intellectual property rights relating to Defendants' amylose products or Plaintiffs' amylose products.

27. Licenses or assignments relating to the design, development, testing or manufacture of Defendants' amylose products, including but not limited to, all contracts, agreements, understandings and arrangements relating thereto, any negotiations, meetings, correspondence, or documents concerning such licenses and assignments, the identities of all the parties involved, the purpose, meaning, and interpretation of such licenses or assignments, royalties and any other consideration paid or received relating thereto.

28. All patent licenses relating to Defendants' amylose products to which Cargill is or was a party, including, but not limited to, the terms of the licenses.

29. All patent license negotiations in which Cargill has participated since 2000.

30. Defendants' knowledge of the '454 and '840 patents, including but not limited to the date Defendants first had knowledge of the '454 and '840 patents, the circumstances under which such knowledge was gained, by whom and what actions Defendants took as a result, if any.

31. All opinions of counsel rendered to Cargill or MGPI regarding the '454 and '840 patents.

32. Any attempts or efforts by Defendants to avoid or design around the '454 and '840 patents, including but not limited to any assessments, analyses, studies, evaluations or information relating to the costs and technical or commercial feasibility thereof, and the identity of persons involved in such attempts or efforts.

33. Any attempts or efforts by Defendants to avoid or design around any patents in connection with the research, design, development, manufacture, use, sale, offer for sale or import of Defendants' amylose products, including but not limited to all decisions relating thereto, the costs of making, testing, and implementing any actual or potential design-arounds, and any assessments, analyses, studies, evaluations or information relating to the costs and technical or commercial feasibility thereof, and the identity of all persons involved in such attempts or efforts.

34. Defendants' general policies or practices relating to patenting, patent clearances, opinions of counsel, new product development and new product procedures.

35. Defendants' licensing practices regarding Defendants' amylose products or any element thereof.

36. All communications between Cargill and MGPI concerning Defendants' amylose products.

37. Any understandings, agreements or arrangements between Cargill and MGPI concerning this litigation.

38. Cargill's encouragement or support of MGPI or a third party's research, design, development, manufacture, use, import, advertisement, marketing, sale, offer for sale, distribution or patenting of Defendants' amylose products.

39. Defendants or any third party's participation or involvement in the breeding of Defendants' amylose products, including the identity, location of all breeders, growers, manufacturers or seed suppliers, and all communications between Defendants and any breeder, grower, manufacturer or seed supplier.

40. Defendants' or any third party's participation or involvement in the importation or exportation of Defendants' amylose products, including but not limited to the type, quantity, location and batch numbers for all of Defendants' amylose products that are imported and exported, and the identity of all persons knowledgeable about the importation and exportation of Defendants' amylose products.

41. Defendants' participation or involvement in the use, advertisement, marketing, sale, offer for sale or distribution of Defendants' amylose products.

42. Any actual or projected payments or other financial transactions or transfers between MGPI and Cargill, in either direction, concerning Defendants' amylose products.

43. Any instructions, directions, decisions or recommendations made by Cargill or a third party, including but not limited to those given by Cargill to MGPI, concerning Defendants' amylose products, the '454 and '840 patents, or this lawsuit.

44. Any instructions, directions, decisions or recommendations made by MGPI or a third party, including but not limited to those given by MGPI to Cargill, concerning Defendants' amylose products, the '454 and '840 patents or this lawsuit.

45. Assets owned by Cargill and used for activities related to Defendants' amylose products.

46. The distribution and accounting of profits, assets, equity, or other value relating to or resulting from the sale of Defendants' amylose products by the business alliance of Cargill and MGPI.

47. Communications with third parties by or on behalf of Defendants' concerning Defendants' amylose products.

48. The factual bases for Defendants' contention that Defendants' amylose products do not infringe any claim of the '454 and '840 patents, either literally or under the doctrine of equivalents.

49. The factual bases for Defendants' contention that it has not and does not willfully infringe the '454 and '840 patents.

50. The factual bases for Defendants' contentions that the '454 and '840 patents are invalid for failure to comply with Title 35 of the United States code §§ 102 and/or 103, including but not limited to the identity of all prior art (including but not limited to patents, publications, or knowledge or work by others) upon which Defendants may rely, the claimed effective dates of all such prior art (including to the extent applicable dates of conception and reduction to practice and the proof of same), the motivation to combine any of the prior art, the persons responsible for any such prior art, the documents embodying or evidencing same, and the application of the foregoing to the claims of the '454 and '840 patents.

51. The factual bases for Defendants' contentions that the '454 and '840 patents are invalid for failure to comply with Title 35 of the United States code §§ 112, including but not limited to Defendants' contentions relating to the description, enabling disclosure, or the

inventor's best mode, the level of skill in the art and the application of the foregoing to the claims of the '454 and '840 patents.

52.  The factual bases for Defendants' contention that the '454 and '840 patents are invalid for any other reason.

53.  The factual bases for Defendants' contention that Defendants have not infringed (either directly, contributorily, or by inducement) any valid and enforceable claim of the '454 or '840 patents.

54.  The identity and location of customers of Defendants who have purchased Defendants' amylose products in the United States or internationally.

55.  The market share of all of Defendants' amylose products and of any products that compete with Defendants' amylose products, on a monthly, quarterly and annual basis in the United States and internationally.

56.  The following information relating to Defendants' amylose products on a monthly, quarterly and annual basis, listed by each of Defendants' amylose products:

(a)  The number of products manufactured in the United States and elsewhere.

(b)  The number of products sold in the United States and elsewhere.

(c)  The number of products imported to the United States.

(d)  The sale price of each product, together with any discounts or other offers, including the average selling price of each product.

(e)  The revenue from each sale.

(f)  The cost of each product sold, including but not limited to the cost of manufacturing, importing, marketing, distributing and selling, whether each cost is fixed or variable, and if allocated, the basis of such allocation.

(g)     The profit margins, profitability, and rate of return for each product.

57.     Other products sold by Cargill, MGPI or other persons that are used or sold in conjunction with or as part of Defendants' amylose products, the number of each of such product sold, the dates of such sales, the revenue and costs of such sales, and the gross and net profits of such sales

58.     The actual, forecasted, or anticipated market conditions in the United States and internationally for Defendants' amylose products, including without limitation any market economic analysis and information regarding the decision to market Defendants' amylose products

59.     Defendants' business plans, strategies, projections, estimates and forecasts prepared relating to the costs, sales, prices, profits and market for Defendants' amylose products.

60.     The cost of licensing technology or other intellectual property rights used or incorporated in Defendants' amylose products, and revenues generated by intellectual property relating to Defendants' amylose products.

61.     Pricing, price setting, changes in prices, price competition, pricing policies and pricing strategy relating to Defendants' amylose products, and the identity of the individuals responsible for such pricing.

62.     The factual bases for Defendants' contentions concerning a reasonable royalty that Defendants believe would be an appropriate measure of damages to Plaintiffs, if Defendants are found to have infringed the '454 and '840 patents, including but not limited to any established royalty or ranges of royalty rates that Defendants contend apply to the field of technology of the '454 and '840 patents, calculation of a reasonable royalty for the patented

technology falling within the scope of the '454 and '840 patents, and the relevant factors involved in such a calculation.

63. The factual bases for Defendants' contentions concerning any lost profits that Defendants believe would be an appropriate measure of damages to Plaintiffs, if Defendants are found to have infringed the '454 and '840 patents.

64. The factual bases for Cargill's contention in its response to Plaintiffs' Interrogatory Nos. 6 and 7, in which Cargill states that "to the extent the claims are somehow construed to read on Cargill's AmyloGel 003003 starch or products made from it, all claims would be invalid based on prior use and sale of the hybrid seed used to make that product prior to July 31, 1992, as well as the hybrid seed used to make plaintiffs' Hylon VII and Gelose 80 products prior to July 31, 1992," including but not limited to all documents, communications, information, evaluations, testing and analysis supporting Cargill's contention, and identification of all current and former Cargill employees most knowledgeable about this topic.

65. Defendants' documents, records, correspondence and reports relating to the topics addressed in the above paragraphs.

66. Each 30(b)(6) designee's background, experience, or other source of knowledge relating to each topic, and an identification of other individuals at Cargill or MGPI who may possess substantial knowledge on each topic.

67. The identification of all current and former Cargill and MGPI employees most knowledgeable about topics addressed in the above paragraphs.

14

## **CERTIFICATE OF SERVICE**

I, Karen E. Keller, hereby certify that on December 22, 2005, I caused to be electronically filed a true and correct copy of the foregoing document with the Clerk of the Court using CM/ECF, which will send notification that such filing is available for viewing and downloading to the following counsel of record:

>Thomas L. Halkowski, Esq.
>Fish & Richardson, P.C.
>919 N. Market Street, Suite 1100
>Wilmington, Delaware  19801

I further certify that on December 22, 2005, I caused a copy of the foregoing document to be served by hand delivery on the above-listed counsel of record and on the following non-registered participants in the manner indicated:

**BY FEDERAL EXPRESS**

>Michael Florey, Esq.
>Fish & Richardson P.C., P.A.
>3300 Dain Rauscher Plaza
>60 South Street
>Minneapolis, MN 55402

YOUNG CONAWAY STARGATT & TAYLOR, LLP

Karen E. Keller (No. 4489)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE 19801
(302) 571-6600
kkeller@ycst.com

*Attorneys for Plaintiffs*