# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| NATIONAL STARCH AND CHEMICAL INVESTMENT HOLDING CORPORATION, PENFORD AUSTRALIA LTD, and PENFORD HOLDINGS PTY, <br><br> Plaintiffs, <br><br> v. <br><br> CARGILL, INC. and MGP INGREDIENTS, INC., <br><br> Defendants. | C.A. No. 1443-GMS <br><br> **JURY TRIAL DEMANDED** |

## DEFENDANT CARGILL, INC.'S FIRST AMENDED ANSWER AND COUNTERCLAIMS

Defendant, Cargill, Inc. responds to the Complaint of plaintiffs National Starch and Chemical Investment Holding Corporation, Penford Australia Ltd., and Penford Holdings PTY, Inc., ("National Starch") as follows:

Cargill denies each and every allegation contained in the Complaint that is not expressly admitted below. Any factual allegation admitted below is admitted only as to the specific admitted facts, not as to any purported conclusions, characterizations, implications, or speculations that arguably follow from the admitted facts. Cargill denies that National Starch is entitled to the relief they requested or any other relief.

## ANSWER

1. Cargill admits that National Starch alleges patent infringement under the Patent Laws of the United States and that they are seeking damages and injunctive relief.

2. Cargill lacks sufficient knowledge to admit or deny the allegations of paragraph 2 and on that basis denies the allegations of paragraph 2.

3. Cargill lacks sufficient knowledge to admit or deny the allegations of paragraph 3 and on that basis denies the allegations of paragraph 3.

4. Cargill lacks sufficient knowledge to admit or deny the allegations of paragraph 4 and on that basis denies the allegations of paragraph 4.

5. Cargill admits that it is a Delaware corporation and that it has a principal place of business at 15615 McGinty Road West, Wayzata, MN 55391. Cargill denies the remaining allegations of paragraph 5.

6. Cargill lacks sufficient knowledge to admit or deny the allegations of paragraph 6 and on that basis denies the allegations of paragraph 6.

7. Admitted.

8. Admitted.

9. Cargill lacks sufficient knowledge to admit or deny the allegations of paragraph 9 and on that basis denies the allegations of paragraph 49

10. Admitted.

11. Cargill admits that the front of U.S. Patent No. 5,977,454 ("the `454 patent") states that the patent issued on November 2, 1999 and that it is entitled "High Amylose Starch and Resistant Starch Fractions." Cargill denies the remaining allegations of paragraph 11.

12. Cargill admits that the front of U.S. Patent No. 6,409,840 ("the `840 patent") states that the patent issued on June 25, 2002 and that it is entitled "High Amylose Starch and Resistant Starch Fractions." Cargill denies the remaining allegations of paragraph 12.

13. Cargill lacks sufficient knowledge to admit or deny the allegations of paragraph 13 and on that basis denies the allegations of paragraph 13.

14. Cargill admits that it has a business arrangement with MGP Ingredients for the production and marketing of Fibersym™ HA starch. Cargill denies the remaining allegations of paragraph 14.

15. Denied.

16. Denied

## AFFIRMATIVE DEFENSES

17. In addition to the affirmative defenses set forth below, Cargill specifically reserves the right to allege additional affirmative defenses as factual information in support of additional affirmative defenses becomes known through the course of discovery.

### First Affirmative Defense
### (Invalidity)

18. For this affirmative defense, Cargill adopts by reference, and reincorporates here as if set forth in their entirety, paragraphs 1-17 of this pleading.

19. The '454 and '840 patents are invalid because each fails to satisfy the conditions for patentability specified in Title 35 of the United States Code, including but not limited to sections 102, 103 and 112.

### Second Affirmative Defense
### (Non-Infringement)

20. For this affirmative defense, Cargill adopts by reference, and reincorporates here as if set forth in their entirety, paragraphs 1-19 of this pleading.

21. Cargill has not infringed and is not infringing (either directly, contributorily, or by inducement) any valid and enforceable claim of the '454 or '840 patents.

### Third Affirmative Defense
### (Unenforceability)

22. For this affirmative defense, Cargill adopts by reference, and reincorporates here as if set forth in their entirety, paragraphs 1-21 of this pleading.

23. The '454 and '840 patents were assigned to Goodman Fielder Limited. Upon information and belief, Goodman Fielder Limited later assigned the patents to Penford Holding Pty Limited, which then assigned the patents to Penford Australia Ltd.

24. Prior to the March 12, 1997 and November 12, 1997 filing dates of the '454 patent and '840 patent, respectively, and during the prosecution of these applications, the persons involved in the preparation and prosecution of the applications, including at least two of the named inventors, were aware of certain laboratory studies of the subject matter disclosed in the applications which were highly material to the patentability of the claims presented in the applications ("the Laboratory Studies").

25. The Laboratory Studies were performed by Fielder Gillespie Davis Limited, Goodman Fielder Mills Limited, and Starch Australasia Limited.

26. The Laboratory Studies clearly show that the method for testing amylose set forth in the '454 and '840 and patents is unreliable and produces inflated results..

27. Upon information and belief, the persons involved in the preparation and prosecution of the applications that became the '454 and '840 patents, including at least two of the named inventors, were aware that the Laboratory Studies were material to the patentability of the claims of the applications.

28. None of the persons involved in the preparation and prosecution of the applications that became the '454 and '840 patents disclosed the Laboratory Studies, or any information regarding these Studies, to the U.S. Patent and Trademark Office ("USPTO") during the prosecution of the applications.

29. Upon information and belief, at least one of the persons involved in the preparation and prosecution of the applications that became the '454 and '840 patents acted with deceptive intent in withholding from the USPTO all information about the material studies.

30. The '454 and '840 patents are unenforceable because they were procured by inequitable conduct and/or fraud on the USPTO.

## COUNTERCLAIMS

31. In addition to the counterclaims set forth below, Cargill specifically reserves the right to allege additional counterclaims as factual information in support of any additional counterclaims becomes known through the course of discovery.

32. Cargill seeks a declaratory judgment of invalidity, noninfringement, and unenforceability of the '454 and '840 patents against the National Starch plaintiffs and alleges the following:

33. This Court has subject matter jurisdiction over the counterclaims and the relief requested in this pleading under 28 U.S.C. §§ 1331, 1338, 2201 and 2202.

34. The counterclaims and the relief requested in this pleading arise under the Patent Act of the United States, 35 U.S.C. § 101 et seq., including but not limited to sections 102, 103 and 112.

35. Venue is proper in this District pursuant to 28 U.S.C. §§ 1391 and 1400(b) because, among other reasons, the National Starch plaintiffs brought a complaint for infringement of the `454 and `840 patents in this Court.

36. This Court has personal jurisdiction over the National Starch plaintiffs.

37. Cargill is a Delaware corporation with a principal place of business at 15615 McGinty Road West, Wayzata, MN 55391.

38. On information and belief, plaintiff National Starch is a Delaware corporation with a principal place of business at 1000 Uniqema Boulevard, New Castle, Delaware 19720.

39. On information and belief, plaintiff Penford Australia is an Australian corporation with a principal place of business at Lane Cove, New South Wales, Australia 2066.

40. On information and belief, plaintiff Penford Holdings is an Australian corporation with a principal place of business as Lane Cove, New South Wales, Australia 2066.

41. An actual and justiciable controversy, as evidenced by the Complaint filed by the National Starch plaintiffs in this action, exists between Cargill and the National Starch plaintiffs as to the infringement and validity of the '454 and '840 patents.

42. In the Complaint, the National Starch plaintiffs allege patent infringement under the Patent Laws of the United States and that they are seeking damages and injunctive relief.

43. In the Complaint, the National Starch plaintiffs allege that they have the right to sue for injunctive relief and monetary damages concerning the '454 and '840 patents.

44. The '454 and '840 patents were assigned to Goodman Fielder Limited. Upon information and belief, Goodman Fielder Limited later assigned the patents to Penford Holding Pty Limited, which then assigned the patents to Penford Australia Ltd.

45. Prior to the March 12, 1997 and November 12, 1997 filing dates of the '454 patent and '840 patent, respectively, and during the prosecution of these applications, the persons involved in the preparation and prosecution of the applications, including at least at least two of the named inventors, were aware of certain laboratory studies of the subject matter disclosed in the applications that were highly material to the patentability of the claims presented in the applications ("the Laboratory Studies").

46. The Laboratory Studies were performed by Fielder Gillespie Davis Limited, Goodman Fielder Mills Limited, and Starch Australasia Limited.

47. The Laboratory Studies clearly show that the method for testing amylose set forth in the '454 and '840 patents is unreliable and produces inflated results

48. Upon information and belief, the persons involved in the preparation and prosecution of the applications that became the '454 and '840 patents, including at least two of the named inventors, were aware that these laboratory studies were material to the patentability of the claims of the applications.

49. None of the persons involved in the preparation and prosecution of the applications that became the '454 and '840 patents disclosed the material studies, or any information regarding these studies, to the U.S. Patent and Trademark Office ("USPTO") during the prosecution of the applications.

50. Upon information and belief, at least one of the persons involved in the preparation and prosecution of the applications that became the '454 and '840 patents acted with deceptive intent by withholding from the USPTO all information about the material studies.

51. The National Starch plaintiffs are or have become aware of the material studies.

52. Upon information and belief, the National Starch plaintiffs are or have become aware of the fact that the material studies were not disclosed to the USPTO.

53. In November 2004, the National Starch plaintiffs brought suit against Cargill alleging infringement of the '454 and '840 patents despite the fact that they knew or should have known that those patents were obtained through inequitable conduct and/or fraud on the USPTO.

## First Counterclaim
### (Invalidity)

54. For this counterclaim, Cargill adopts by reference, and reincorporates here as if set forth in their entirety, paragraphs 29-53 of this pleading.

55. The `454 and `840 patents are invalid because each fails to satisfy the conditions for patentability specified in Title 35 of the United States Code, including but not limited to sections 102, 103 and 112.

## Second Counterclaim
### (Non-Infringement)

56. For this counterclaim, Cargill adopts by reference, and reincorporates here as if set forth in their entirety, paragraphs 29-55 of this pleading.

57.     Cargill has not infringed and is not infringing (either directly, contributorily, or by inducement) any valid and enforceable claim of the '454 or '840 patents.

### Third Counterclaim
### (Unenforceability)

58.     For this counterclaim, Cargill adopts by reference, and reincorporates here as if set forth in their entirety, paragraphs 29-57 of this pleading.

59.     The '454 and '840 patents are unenforceable because they were procured by inequitable conduct and/or fraud on the USPTO.

### Fourth Counterclaim
### (Lanham Act Unfair Competition)

60.     For this counterclaim, Cargill adopts by reference, and reincorporates here as if set forth in their entirety, paragraphs 29-59 of this pleading.

61.     The National Starch plaintiffs engaged in conduct constituting unfair competition in bringing and maintaining this action in bad faith and despite knowing that the '454 and '840 patents are invalid, unenforceable, and/or not infringed by any act of Cargill.

62.     The National Starch plaintiffs' Complaint in this action alleges that Cargill has infringed the '454 and '850 patents.  Upon information and belief, at the time the National Starch plaintiffs filed their Complaint in this action, the National Starch plaintiffs were aware that the '454 and '850 patents were invalid, unenforceable, and/or not-infringed by any act of Cargill.

63.     The National Starch plaintiffs' conduct constitutes unfair competition and Cargill has suffered injury as a result.

### Fifth Counterclaim
### (Delaware Unfair Competition)

64.     For this counterclaim, Cargill adopts by reference, and reincorporates here as if set forth in their entirety, paragraphs 29-63 of this pleading.

65. The National Starch plaintiffs' conduct constitutes unfair competition and Cargill has suffered injury as a result.

WHEREFORE, Cargill prays for judgment:

1. That the Complaint of the National Starch plaintiffs be dismissed with prejudice;

2. That the National Starch plaintiffs take nothing by reason of their Complaint;

3. That the `454 and `840 patents, and all of their claims, be adjudged and declared invalid;

4. That the `454 and `840 patents, and all of their claims, be adjudged and declared not infringed by Cargill;

5. That the '454 and '840 patents, and all of their claims, be adjudged and declared unenforceable;

6. That the National Starch plaintiffs and all persons acting on their behalf, or in concert with them, be permanently enjoined and restrained from charging, orally, or in writing that any claim of the `454 or `840 patents is infringed by Cargill directly or indirectly;

7. That the National Starch plaintiffs be enjoined from any further acts of unfair competition;

8. That Cargill be awarded damages that it has sustained as a result of the National Starch plaintiffs' unfair competition, including unjust enrichment and actual damages, enhanced damages, attorney fees and costs;

9. That Cargill be awarded its costs, expenses and attorney fees in this action; and

10. That Cargill be awarded any other and further relief as the Court may deem appropriate.

By this pleading, Cargill demands a trial by jury of any issues triable of right by a jury.

Dated: February 6, 2006                    FISH & RICHARDSON P.C.

                                               By: /s/ *Thomas L. Halkowski*
                                                   Thomas L. Halkowski (#4099)
                                                   919 N. Market Street, Suite 1100
                                                   P.O. Box 1114
                                                   Wilmington, DE 19899-1114
                                                   Telephone: (302) 652-5070
                                                   Facsimile: (302) 652-0607

                                                  Attorneys for Defendant
                                                  Cargill, Inc.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| NATIONAL STARCH AND CHEMICAL INVESTMENT HOLDING CORPORATION, PENFORD AUSTRALIA LTD., and PENFORD HOLDINGS PTY,<br><br>                    Plaintiffs,<br><br>         v.<br><br>CARGILL, INC. and<br>MGP INGREDIENTS, INC.,<br><br>                    Defendants. | C.A. No. 1443-GMS<br><br>**JURY TRIAL DEMANDED** |

## **DEFENDANT MGP INGREDIENTS INC.'S FIRST AMENDED ANSWER**

MGP Ingredients, Inc. ("MGPI") denies each allegation contained in the complaint of plaintiffs National Starch and Chemical Investment Holding Corporation, Penford Australia Ltd., and Penford Holdings Pty. ("National Starch") unless the factual allegation is expressly admitted herein.  For factual allegations that are admitted, MGPI's admission extends to only the specific admitted facts; MGPI expressly does not admit to any purported conclusions, characterizations, implications, or speculations that arguably follow from any admitted facts.

MGPI denies that National Starch is entitled to the relief they requested or any other relief.

## **ANSWER**

1.       MGPI admits that National Starch alleges patent infringement under the Patent Laws of the United States, and that they are seeking damages and injunctive relief.

2.       MGPI lacks sufficient knowledge to admit or deny the allegations of paragraph 2 and on that basis denies the allegations of paragraph 2.

3. MGPI lacks sufficient knowledge to admit or deny the allegations of paragraph 3 and on that basis denies the allegations of paragraph 3.

4. MGPI lacks sufficient knowledge to admit or deny the allegations of paragraph 4 and on that basis denies the allegations of paragraph 4.

5. MGPI lacks sufficient knowledge to admit or deny the allegations of paragraph 5 and on that basis denies the allegations of paragraph 5.

6. Admitted.

7. Admitted.

8. MGPI lacks sufficient knowledge to admit or deny the allegations of paragraph 8 and on that basis denies the allegations of paragraph 8.

9. Denied.

10. Denied.

11. MGPI admits that the front of U.S. Patent No. 5,977,454 ("the `454 patent") states that the patent issued on November 2, 1999, and that it is entitled "High Amylose Starch and Resistant Starch Fractions." MGPI denies the remaining allegations of paragraph 11.

12. MGPI admits that the front of U.S. Patent No. 6,409,840 ("the `840 patent") states that the patent issued on June 25, 2002, and that it is entitled "High Amylose Starch and Resistant Starch Fractions." MGPI denies the remaining allegations of paragraph 12.

13. MGPI lacks sufficient knowledge to admit or deny the allegations of paragraph 13 and on that basis denies the allegations of paragraph 13.

14. Denied.

15. Denied.

16. Denied

**AFFIRMATIVE DEFENSES**

17. In addition to the affirmative defenses set forth below, MGPI reserves the right to allege additional affirmative defenses as factual information supporting additional affirmative defenses becomes known during discovery.

**First Affirmative Defense**
**(Invalidity)**

18. For this affirmative defense, MGPI adopts-by-reference, and reincorporates here as if set forth in their entirety, paragraphs 1-17 of this pleading.

19. The '454 and '840 patents are invalid because each fails to satisfy the conditions for patentability specified in Title 35 of the United States Code including, but not limited to, sections 102, 103, and 112.

**Second Affirmative Defense**
**(Non-Infringement)**

20. For this affirmative defense, MGPI adopts-by-reference, and reincorporates here as if set forth in their entirety, paragraphs 1-19 of this pleading.

21. MGPI has not infringed and is not infringing (either directly, contributorily, or by inducement) any valid and enforceable claim of the '454 or '840 patents.

**Third Affirmative Defense**
**(Unenforceability)**

22. For this affirmative defense, Cargill adopts by reference, and reincorporates here as if set forth in their entirety, paragraphs 1-21 of this pleading.

23. The '454 and '840 patents were assigned to Goodman Fielder Limited. Upon information and belief, Goodman Fielder Limited later assigned the patents to Penford Holding Pty Limited, which then assigned the patents to Penford Australia Ltd.

24. Prior to the March 12, 1997 and November 12, 1997 filing dates of the '454 patent and '840 patent, respectively, and during the prosecution of these applications, the persons involved in the preparation and prosecution of the applications,

including at least two of the named inventors, were aware of certain laboratory studies of the subject matter disclosed in the applications which were highly material to the patentability of the claims presented in the applications ("the Laboratory Studies").

25.     The Laboratory Studies were performed by Fielder Gillespie Davis Limited, Goodman Fielder Mills Limited, and Starch Australasia Limited.

26.     The Laboratory Studies clearly show that the method for testing amylose set forth in the '454 and '840 and patents is unreliable and produces inflated results..

27.     Upon information and belief, the persons involved in the preparation and prosecution of the applications that became the '454 and '840 patents, including at least two of the named inventors, were aware that the Laboratory Studies were material to the patentability of the claims of the applications.

28.     None of the persons involved in the preparation and prosecution of the applications that became the '454 and '840 patents disclosed the Laboratory Studies, or any information regarding these Studies, to the U.S. Patent and Trademark Office ("USPTO") during the prosecution of the applications.

29.     Upon information and belief, at least one of the persons involved in the preparation and prosecution of the applications that became the '454 and '840 patents acted with deceptive intent in withholding from the USPTO all information about the material studies.

30.     The '454 and '840 patents are unenforceable because they were procured by inequitable conduct and/or fraud on the USPTO.

WHEREFORE, MGPI prays for judgment:

1.     That the Court dismiss the Complaint of National Starch with prejudice;

2.     That National Starch take nothing by reason of their Complaint;

3.     That the Court adjudge the `454 and `840 patent claims are invalid;

4. That the Court adjudge that MGPI is not, and has not, infringed (either directly, contributorily, or by inducement) the '454 and '840 patent claims;

5. That the Court permanently enjoin National Starch—and all persons acting on their behalf, or in concert with them—from charging, orally or in writing, that MGPI infringes any claim of the `454 or `840 patents (either directly, contributorily, or by inducement);

6. That the Court award MGPI its costs, expenses, and attorney fees in this action; and

7. That the Court award MGPI any other and further relief as the Court may deem appropriate.

By this pleading, MGPI demands a trial by jury of any issues triable of right by a jury.

Dated: February 6, 2006    FISH & RICHARDSON P.C.

By: /s/ *Thomas L. Halkowski*
Thomas L. Halkowski (#4099)
919 N. Market Street, Suite 1100
P.O. Box 1114
Wilmington, DE 19899-1114
Telephone: (302) 652-5070
Facsimile: (302) 652-0607

Attorneys for Defendant
MGP Ingredients, Inc.