# UNREPORTED CASES

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

ALLERGAN, INC., and ALLERGAN SALES,      )
LLC,                                     )
                                         )
          Plaintiffs,                    )
                                         )
     v.                                  )
                                         )   Civil Action No. 04-968 (GMS)
ALCON INC., ALCON LABORATORIES,          )
INC., and ALCON RESEARCH, LTD.,          )
                                         )
          Defendants.                    )

## ORDER

Presently before the court is the defendants' motion to amend its answer to the plaintiffs'

complaint. (D.I. 107.) This motion to amend was filed on July 25, 2005, about a week before the

close of fact discovery and nearly eight months after the deadline for amended pleadings. The

defendant's proposed amended answer contains approximately fourteen pages of new factual

allegations in support of four new affirmative defenses and counterclaims: (1) unenforceability of

U.S. Patent No. 6,641,834 ("the '834 patent") for inequitable conduct; (2) unenforceability of U.S.

Patent No. 6,673,337 ("the '337 patent") for inequitable conduct; (3) unenforceability of the '834

patent and/or the '337 patent for unclean hands; and (4) invalidity of the '834 patent for the

misjoinder of an inventor.

The Federal Rules of Civil Procedure provide that "[a] schedule shall not be modified except

upon a showing of good cause . . . ." Fed. R. Civ. P. 16(b). A showing of "good cause" requires the

movant to demonstrate that a deadline "cannot reasonably be met despite the diligence of the party

seeking the extension." Rule 16 advisory committee notes (1983 Amend.). Here, the defendants

argue that they could not have pleaded these defenses and counterclaims until after the deposition

of the first-named inventor of the patents, and the deposition of the plaintiffs' former in-house

counsel because those depositions revealed previously-unknown information. If the defendants are

correct, it would seem that their motion should be granted. However, the defendants' opening brief

points to no specific deposition testimony to back their argument. In fact, the defendants waited to

submit any exhibits (other than the proposed amended answer) until they filed their reply brief – the

very definition of sandbagging. And, those exhibits, which are prefaced by seven-page declaration

that can only be described as an additional argumentative brief, do not support the defendants'

contention that the depositions were a necessary predicate to their amendment. Instead, the exhibits

merely demonstrate alleged stonewalling by the plaintiffs – acts which are irrelevant to this motion

if the depositions yielded no fruit. From the defendants' submissions, the court is unable to discern

exactly what was discovered during the depositions. All the defendants offer are vague

representations. (See, e.g., D.I. 123 at 9.) Moreover, the heart of the defendants' amendments,

found at paragraphs 70 through 72 of the proposed amended answer, appear to mention nothing

material regarding the deposition testimony of either the inventor or the attorney. To the contrary,

the defendants cite new drug applications and publicly-available prior art to support their claims that

the plaintiffs were not forthright with the patent office. Therefore, the court holds that the

defendants have not shown good cause in accordance with Rule 16(b).

IT IS HEREBY ORDERED THAT:

    The defendants' motion to amend (D.I. 107) be DENIED.


Dated: January 17,  2006                  /s/ Gregory M. Sleet_____
                                      UNITED STATES DISTRICT JUDGE

LEXSEE

**FRANK BUELNA in his Own Right and as Parent and Natural Guardian of Minor
Plaintiff NATHAN BUELNA and JOSEPH RODRIGUEZ, Plaintiffs v. CITY OF
PHILADELPHIA, et al., Defendants**

**CIVIL ACTION NO. 01-5114**

**UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF
PENNSYLVANIA**

*2002 U.S. Dist. LEXIS 6018*

**April 5, 2002, Decided
April 8, 2002, Filed**

**DISPOSITION:** Plaintiffs' Motion for Leave of Court to
File an Amended Complaint Denied.

**COUNSEL:** [*1] For FRANK BUELNA, JOSE
RODRIGUEZ, PLAINTIFFS: HOWARD LANGER,
SANDALS & LANGER, LLP, PHILADELPHIA, PA
USA. JOHN J. GROGAN, SANDALS & LANGER
LLP, PHILADELPHIA, PA USA. STANLEY J.
ELLENBERG, THE LAW OFFICES OF STANLEY J.
ELLENBERG, PHILADELPHIA, PA USA.

For NATHAN BUELNA, PLAINTIFF: HOWARD
LANGER, SANDALS & LANGER, LLP,
PHILADELPHIA, PA USA. JOHN J. GROGAN,
SANDALS & LANGER LLP, PHILADELPHIA, PA
USA.

For CITY OF PHILADELPHIA, EDWARD LEE,
FRANK PALUMBO, JOSEPH WOLK, PATRICK
MURRAY, MARYANN EVANS, DANIEL
MARTINEZ, CLIFFORD DURHAM, NINA WATSON,
THOMAS MCLEAN, DEFENDANTS: JEFFREY M.
SCOTT, CITY OF PHILA.-LAW DEPT., PHILA PA
USA. LYNNE A. SITARSKI, DEPUTY CITY
SOLICITOR, PHILADELPHIA, PA USA. DANIEL
BENSING, U.S. DEPT. OF JUST., WASHINGTON,
DC USA.

For SOUTHEASTERN PENNSYLVANIA
TRANSPORTATION AUTHORITY, EDWARD
KAISER, DANIEL BUTLER, DEFENDANTS:
ROBERT M. WALLER, SEPTA LEGAL DIVISION,
PHILADELPHIA, PA USA. DANIEL BENSING, U.S.
DEPT. OF JUST., WASHINGTON, DC USA.

For CHRISTOPHER WILLIAMS, DEFENDANT:
DANIEL BENSING, U.S. DEPT. OF JUST.,
WASHINGTON, DC USA.

For VELEZ, DEFENDANT: LYNNE A. SITARSKI,
DEPUTY CITY SOLICITOR, PHILADELPHIA, PA
USA. DANIEL BENSING, U.S. DEPT. [*2] OF
JUST., WASHINGTON, DC USA.

**JUDGES:** Clarence C. Newcomer, S.J.

**OPINIONBY:** Clarence C. Newcomer

**OPINION:** Newcomer, S.J.

April 8, 2002

Presently before the Court is plaintiffs' Motion for
Leave of Court to File an Amended Complaint and de-
fendant's response. For the reasons as follow plaintiffs'
motion is DENIED.

**BACKGROUND**

This action stems from an October 6, 1999 incident
where the plaintiffs allege that the defendants' conduct
violated their federal and state civil rights. Plaintiffs
filed suit on October 9, 2001, against the City of Philadelphia,
the South Eastern Pennsylvania Transportation Authority
("SEPTA") as well as sixteen (16) individual officers
from both entities. A pretrial conference was held on
December 13, 2001. The parties were given until March
13, 2002, to complete discovery. On March 11, 2002, the
plaintiffs filed the instant Motion for Leave of Court to
File an Amended Complaint adding a Monell Claim
against SEPTA. Included in plaintiffs' original Complaint

Case 1:04-cv-01443-GMS     Document 89-2     Filed 02/09/2006     Page 6 of 27

Page 2
2002 U.S. Dist. LEXIS 6018, *

is a respondeat superior claim against defendant SEPTA. The statute of limitations for the proposed Monell Claim has already run.

## DISCUSSION

"The decision to grant or deny leave to amend a complaint [*3] is committed to the sound discretion of the district court." *Coventry v. U.S. Steel Corp., 856 F.2d 514, 518 (3d Cir. 1988)*(citing *Foman v. Davis, 371 U.S. 178, 182, 9 L. Ed. 2d 222, 83 S. Ct. 227 (1962)).* To that end, without an "apparent or declared" reason for denial, such leave shall be freely given. *856 F.2d at 519.* Appropriate reasons for denial include, among others, "undue delay ...[or]... undue prejudice to the opposing party...." *Foman v. Davis, 371 U.S. 178, 182, 9 L. Ed. 2d 222, 83 S. Ct. 227 (1962).*

Plaintiffs' request triggers concern with both stated grounds for denial. With four and a half months of the discovery period behind them and two days left, plaintiffs seek leave to essentially add an entirely new claim or concept to their Complaint. While it is true that the claim they seek to be added relates to the conduct alleged during the October 6, 1999 incident, it is also the case that a great deal more is involved. The proposed Monell Claim against SEPTA requires a showing that "the custom or policy of SEPTA, including the failure to train properly, lead to the constitutional violation." *Davis v. SEPTA, 2001 WL 1632142.*8 (E.D.Pa. 2001). [*4] Such a showing would require defendant SEPTA to audit its policies, customs and procedures and turn over any material germane to the new claim. These materials would be very different in scope from the materials pertaining to the plaintiffs' current claims against SEPTA Officers Butler and Kaiser and the current respondeat superior claim against SEPTA itself. All of this, of course, would have to take place in the days leading up to trial, a time when counsel is preoccupied with preparing for trial itself rather than retracing the steps leading to trial. In addition, new witnesses and a new defense would need to be supplied under an extremely tight time frame. The Third Circuit has embraced the notion that the addition of a claim requiring such additional extensive discovery presents prejudice to the defendant. *Adams v. Gould Inc., 739 F.2d 858, 869 (3d Cir. 1984)* (citing *Serrano Medina v. United States, 709 F.2d 104 (1st Cir. 1983); DeBry v. Transamerica Corp., 601 F.2d 480 (10th Cir. 1979)).*

In addition, plaintiffs' request is the product of undue delay and would place an unwarranted burden on this Court. Undue [*5] delay constitutes sufficient grounds for the denial of a motion for leave to amend. *Lorenz v. CSX Corporation, 1 F.3d 1406, 1413 (3d Cir. 1993).* "The passage of time, without more, does not require that a motion to amend a complaint be denied;

however, at some point, the delay will become 'undue,' placing an unwarranted burden on the court...." *Adams 739 F.2d at 868.* The alleged conduct giving rise to this case, and the proposed claim, took place nearly two and a half years ago. At the latest, the plaintiffs were aware of defendant SEPTA's involvement in this matter on October 9, 2002, the day they filed their Complaint. This is evident as plaintiffs included a claim against defendant SEPTA under a different legal theory than the one currently proposed. Now, more than two and a half years after the conduct giving rise to this matter occurred, plaintiffs seek leave to allege a new theory against SEPTA. Nothing has changed in the period preceding or subsequent to the plaintiffs' filing their complaint that would explain such an undue delay in making this new claim. Plaintiffs' explanation that a "clerical error" was made does change the fact that this [*6] claim should have been made initially or corrected in a timely manner. Plaintiffs have had more than ample time to file the proposed claim, they have failed to explain the undue delay in doing so. In the meantime, this matter has progressed through the Court's case management system and is ready for trial.

Finally, plaintiffs' proposed amendment fails to meet the two year statute of limitations imposed on Monell Claims because it does not meet the criteria for relation back amendments under *Federal Rule of Civil Procedure 15(c)* n1. *Wilson v. Garcia, 471 U.S. 261, 85 L. Ed. 2d 254, 105 S. Ct. 1938 (1985); 42 PA.CONS.STAT.ANN. § 5524.* In order to be able to relate a proposed amendment back it must fall within one of the three subsections of Rule 15(c). It is clear that plaintiffs' proposed amendment fails to meet the requirements of subsections one and three. The statute of limitations on a Monell Claim is two years. The events giving rise to this claim occurred no earlier than two and a half years ago. In addition, plaintiffs are not seeking leave to change a party to the present suit. The plaintiffs fail to meet the requirements of subsection two because the [*7] proposed claim arises out of conduct different than that which served as the basis for the original Complaint. In the proposed claim, plaintiffs point to defendant SEPTA's policies, customs and procedures as the conduct giving rise to their claim and not the events which took place on October 6, 1999. The plaintiffs' claim will not relate back under Rule 15(c) and is therefore barred by the two year statute of limitations on Monell Claims.

n1 Plaintiff Nathan Buelna's proposed Monell Claim is not precluded under this theory. Nathan Buelna is a minor and therefore the statute of limitations does not begin to run for him until he turns eighteen years of age.

2002 U.S. Dist. LEXIS 6018, *

AN APPROPRIATE ORDER SHALL FOLLOW.

Clarence C. Newcomer, S.J.

**ORDER** - ENTERED APRIL 8, 2002

AND NOW, this 5th day of April, 2002, upon consideration of plaintiffs' Motion for Leave to File an Amended Complaint and defendants' response, it is hereby ORDERED that said motion is DENIED.

AND IT IS SO ORDERED.

Clarence C. Newcomer, S.J.

LEXSEE 1997 US DIST. LEXIS 10120

**FURMAN LUMBER, INC. v. THE MOUNTBATTEN SURETY CO., INC.; R.F. & B. LUMBER CO., INC. v. THE MOUNTBATTEN SURETY CO., INC.; TALL TREE LUMBER CO. v. THE MOUNTBATTEN SURETY CO., INC.**

**CIVIL ACTION NO. 96-7906, CIVIL ACTION NO. 96-8168, CIVIL ACTION NO. 96-8352**

**UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

*1997 U.S. Dist. LEXIS 10120*

**July 9, 1997, Decided**
**July 11, 1997, Filed; July 14, 1997, ENTERED**

**DISPOSITION:** [*1] DENIED.

**COUNSEL:** For FURMAN LUMBER, INC., PLAINTIFF (96-7906): JAMES R. O'DELL, EDWARD M. DUNHAM, JR., MILLER, DUNHAM & DOERING, PHILA, PA USA. For R.F. & B. LUMBER CO., INC., PLAINTIFF (96-8168): JAMES R. O'DELL, FRANCIS X. MANNING, EDWARD M. DUNHAM, JR., MILLER, DUNHAM & DOERING, PHILA, PA USA. For TALL TREE LUMBER COMPANY, PLAINTIFF (96-8352): FRANCIS X. MANNING, EDWARD M. DUNHAM, JR., MILLER, DUNHAM & DOERING, PHILA, PA USA.

For THE MOUNTBATTEN SURETY COMPANY, THE MOUNTBATTEN SURETY COMPANY, INC., DEFENDANTS: JOEL D. BEACH, ANDREW J. RUCK, DUANE, MORRIS & HECKSCHER, PHILA, PA USA.

**JUDGES:** Padova, J.

**OPINIONBY:** PADOVA

**OPINION: MEMORANDUM**

**Padova, J.**

July 9, 1997

Plaintiffs, Furman Lumber, Inc. ("Furman"), R.F. & B. Lumber Co., ("RFB"), and Tall Tree Lumber Company ("Tall Tree") (hereinafter "Plaintiffs") filed separate lawsuits against Defendant, the Mountbatten Surety Co. ("Mountbatten"). The Court consolidated these cases for pre-trial purposes. (See Doc. No. 6). Before the Court is

Plaintiffs' Joint Motion for Leave to File an Amended Complaint, filed pursuant to *Federal Rule of Civil Procedure 15(a)*. Plaintiffs request leave to add a "bad faith" claim under [*2] *42 Pa. Cons. Stat. Ann. § 8371* (West Supp. 1997).

Because the Court (1) considers Plaintiffs' delay in seeking the amendment undue and (2) finds that the addition of the proposed amendment would be prejudicial to Mountbatten, the Court will deny Plaintiffs' Motion.

**I. Facts**

Plaintiffs are wholesalers who sold lumber supplies to Ridge Lumber Company ("Ridge"). On February 21, 1996, Mountbatten issued three nearly identical payment bonds ("Bonds") naming each Plaintiff as obligee and Mountbatten as surety for Ridge. n1 Under the Bonds, Mountbatten "is firmly bound unto [Plaintiffs] as obligee." (Compls. PP 5). The Bonds guaranteed Plaintiffs payment for lumber supplies shipped to Ridge in the event that Ridge failed to reimburse Plaintiffs for the shipments. "Mountbatten issued the Bonds in consideration that [Plaintiffs] would sell materials and services on credit to Ridge." (Compls. PP 6).

n1 See Blacks Law Dictionary 1442 (6th ed. 1990) (defining contract of suretyship as a contract whereby "one party engages to be answerable for debt, default, or miscarriage of another and arises when one is liable to pay debt or discharge obligation, and party is entitled to indemnity from person who should have made the

Case 1:04-cv-01443-GMS    Document 89-2    Filed 02/09/2006    Page 10 of 27

Page 2
1997 U.S. Dist. LEXIS 10120, *

payment in the first instance before surety was so compelled").

[*3]

Plaintiffs allege Ridge has failed to pay amounts due for the materials. (Compls. PP 8). According to Plaintiffs, despite timely notification of Ridge's default and Plaintiffs' demand, Mountbatten refuses to honor its obligations to pay under the Bonds. (Compls. PP 9). n2

> n2 According to Plaintiffs, Ridge is currently in bankruptcy. (Pls.' Mem. Supp. Mot. at 1-2) ("Pls.' Mem.").

Plaintiffs filed their Complaints on November 27, 1996 (Furman), December 10, 1996 (RFB), and December 17, 1996 (Tall Tree). Each Complaint contains only one count, a breach of contract claim. On February 18, 1997, pursuant to *Federal Rule of Civil Procedure 16*, the Court entered a Scheduling Order imposing the following deadlines: (1) dispositive motions, June 13, 1997; (2) discovery, May 30, 1997; (3) Plaintiffs' Pretrial Memorandum, July 15, 1997; (4) Defendant's Pretrial Memorandum, July 25, 1997; (5) Final Pretrial Conference, July 28, 1997; and (6) Trial Pool, August 1, 1997. (See Doc. No. 5). Plaintiffs filed their Motion [*4] for Leave to Amend on June 2, 1997.

## II. Standard of Review

"[A] party may amend a pleading at any time prior to the service of a responsive pleading. If a responsive pleading has been filed, then a party may amend a pleading only upon leave of the court or written consent of the adverse party." *Glaziers & Glass Workers v. Janney Montgomery Scott, 155 F.R.D. 97, 99 (E.D. Pa. 1994)* (citation omitted). "Leave shall be freely given when justice so requires." *Fed. R. Civ. P. 15(a)*. "Although leave to amend a complaint should be freely granted in the interests of justice, a motion to amend is committed to the sound discretion of the district judge." *Gay v. Petsock, 917 F.2d 768, 772 (3d Cir. 1990)* (citations omitted). The Court should freely exercise this discretion in "the absence of any apparent or declared reason -such as [1] undue delay, [2] bad faith or dilatory motive on the part of the movant, [3] repeated failure to cure deficiencies by amendments previously allowed, [4] undue prejudice to the opposing party by virtue of allowance of the amendment, [5] futility of the amendment, etc." *Foman v. Davis, 371 U.S. 178, 182, 83 S. Ct. 227, 230, 9 L. Ed. 2d 222 (1962).* [*5]

"The [United States Court of Appeals for the] Third Circuit has interpreted [the Foman] factors to emphasize that prejudice to the non-moving party is the touchstone

for the denial of the amendment." *Hill v. Equitable Bank, N.A., 109 F.R.D. 109, 112 (D. Del. 1985)* (citing *Cornell & Co. v. Occupational Safety and Health Rev. Comm'n, 573 F.2d 820, 823 (3d Cir. 1978)).* "If the amendment substantially changes the theory on which the case has been proceeding and is proposed late enough so that the opponent would be required to engage in significant new preparation, the court may deem it prejudicial." *Rehabilitation Inst. v. Equitable Life Assurance Society of the United States, 131 F.R.D. 99, 102 (W.D. Pa. 1992)* (citing 6 Charles A. Wright, Arthur R. Miller, and Mary Kay Kane, Federal Practice and Procedure § 1487 (1990)), aff'd, *937 F.2d 598 (3d Cir. 1991).* See *Niesse v. Shalala, 17 F.3d 264, 266 (8th Cir. 1994)* (refusing to find the district court abused its discretion in denying a request to amend where it "was correct in noting that considerable additional discovery would be required to deal with the question of class certification"); *Berger v. Edgewater* [*6] *Steel Co., 911 F.2d 911, 924 (3d Cir. 1990)* (affirming district court's denial of motion for leave to amend where "allowing the amendment here would inject new issues into the case requiring extensive discovery"), cert. denied, *499 U.S. 920, 111 S. Ct. 1310, 113 L. Ed. 2d 244 (1991); Cuffy v. Getty Ref. & Mktg. Co., 648 F. Supp. 802, 806 (D. Del. 1986)* (noting "the general presumption in favor of allowing amendment can be overcome only by the opposing party showing that the amendment will be prejudicial").

## III. Discussion

### A. Proposed Amendment

The Amended Complaint proposed by Plaintiffs states the following allegations. Mountbatten issued at least eight Bonds to Ridge worth over $ 2,600,000, listing Ridge as principal and other Ridge suppliers as obligees. (Pls.' Mem. Ex. A. P 13) ("Pr. Am. Compl."). "Mountbatten knew, before it issued the Bonds, that Ridge was late in payments to several of its suppliers . . . yet, Mountbatten never made reasonable inquiry." (Pr. Am. Compl. P 16). Mountbatten's agents knew, by at least May, 1996, that Ridge was having difficulty paying its suppliers. (Pr. Am. Compl. P 18). "As a result of Ridge's difficulty in paying suppliers, Mountbatten [*7] notified all obligees by letter dated July 11, 1996, that they were, from that date forward, to sell to Ridge on a cash on delivery basis only." (Pr. Am. Compl. P 19).

"As surety on the Payment Bonds, Mountbatten had the duty, pursuant to . . . . § 8371, to act in good faith toward and deal fairly with Furman in considering any claim by Furman under the Payment Bonds." (Pr. Am. Compl. P 20). Nonetheless, Mountbatten will not pay obligees under the bond. n3 Mountbatten's refusal to pay

1997 U.S. Dist. LEXIS 10120, *

the Payment Bond constitutes bad faith under § 8371 because:

> n3 Mountbatten claims, as two of its affirmative defenses, that (1) "Ridge was in 'default' to [Plaintiffs] before and at the time Mountbatten issued the Payment Bonds," and (2) Furman's failure to inform Mountbatten of Ridge's default in a timely fashion renders the Bonds void. (Pr. Am. Compl. P 21).

> (a) When [Plaintiffs] made the claim under the Payment Bond, Mountbatten's agents knew that it could not assert the defense that the Payment Bond was void from [*8] the beginning; yet, in reckless disregard of this knowledge, it has based its refusal to pay the claim on this defense; and

> (b) Mountbatten's agents knew, months before [Plaintiffs] made [their] claim, that Ridge was having difficulty paying its suppliers . . . and therefore had constructive notice of any 'default' under the Payment Bond; yet, in reckless disregard of this knowledge, Mountbatten has based its refusal to pay the claim on the defense of untimely notification.

(Pr. Am. Compl. P 22). n4

> n4 Section § 8371 provides:
>
> **Actions on Insurance Policies**
>
> In an action arising under an insurance policy, if the court finds that the insurer has acted in bad faith toward the insured, the court may take all of the following actions:
>
> (1) Award interest on the amount of the claim from the date the claim was made by the insured in an amount equal to the prime rate plus 3%;

> (2) Award punitive damages against the insurer.

> (3) Assess court costs and attorney fees against the insurer.

> *42 Pa. Cons. Stat. Ann. § 8371.*

[*9]

**B. Undue Delay & Prejudice**

The Court focuses on whether Plaintiffs' delay in seeking amendment is undue and whether granting Plaintiffs' leave to amend will be prejudicial to Mountbatten. According to Plaintiffs, in an effort to investigate the defense that Mountbatten was unaware of Ridge's default when it issued the Bonds, Plaintiffs noticed the depositions of (1) Mountbatten's underwriters responsible for authorizing the issuance of the Ridge bonds (Chris Mucchetti and Steven Fletcher) and (2) Mountbatten's agent who produced the bonds (Russell Tyldesley).

Plaintiffs deposed Mucchetti on April 3, 1997, Fletcher on April 24, 1997, and Tyldesley on May 21, 1997. (Pls.' Mem. at 6, 8). According to Plaintiffs, Mucchetti:

> admitted that he received from Mr. Tyldesley a Ridge account's payable aging report and letter from its controller, both dated January 29, 1996, before the bonds issued on February 21. The aging report and letter demonstrated that Ridge was late in payments to its suppliers 30-60 days in the amount of $ 1.6 million. The aging report specified that Ridge owed Plaintiffs several thousand dollars in the 30-60 day category.

> Mr. Mucchetti also [*10] admitted that he never knew what the credit terms were between Ridge and the prospective obligees. He never knew, he said, because he never asked.

(Pls.' Mem. at 6-7). Fletcher's testimony, claim Plaintiffs, contradicted Mucchetti's testimony. (Pls.' Mem. at 7 ("Fletcher testified that he did not believe Mountbatten had the accounts payable aging before the bonds issued.

1997 U.S. Dist. LEXIS 10120, *

If it had known the information, he admitted, Mountbatten never would have issued the bonds")).

According to Plaintiffs, Tyldesley's testimony resolved discrepancies between Mucchetti's and Fletcher's depositions and confirmed Plaintiffs' suspicions that Mountbatten has no reasonable basis to support its "void ab initio" defense. (Pls.' Mem. at 8 (stating Tyldesley testified that "weeks before Mountbatten issued the bonds, he sent Mountbatten financial information from Ridge which demonstrated that as of January 29, 1996, Ridge was late in its payments to Plaintiffs (and other obligees) by 30-60 days")). With respect to Mountbatten's second defense, that Plaintiffs failed to notify Mountbatten of Ridge's default in a timely manner, Plaintiffs claim they "recently learned, at the May 28 deposition of Ted [*11] Drauschak . . . that Mountbatten knew, in March 1996, that Ridge was having difficulty paying its suppliers. As with Mr. Tyldesley's deposition, Mountbatten delayed Mr. Drauschak's deposition for over one month." (Pls.' Mem. at 9). Plaintiffs assert they waited until these facts became available, specifically after the Tyldesley and Drauschak depositions, on May 21 and May 28 respectively, to file the instant Motion.

Plaintiffs also posit that allowing leave to amend will not prejudice Mountbatten because the bad faith claim requires no additional discovery. Since the bad faith claim rests on Mountbatten's inability to supply a reasonable defense to Plaintiffs' claims under the Bonds, Plaintiffs argue that they have already produced all relevant documents regarding the claims, i.e., those relating to their dealings with Ridge and to their correspondence with Mountbatten.

Mountbatten protests that it has had no opportunity to take discovery related to this issue. According to Mountbatten, the focus of discovery heretofore has been on alleged breach of contract and Mountbatten's affirmative defenses. Permitting the amendment, asserts Mountbatten, would shift the focus of discovery.

The [*12] Court concludes that Plaintiffs failed to file the instant Motion in a timely fashion. The addition of a § 8371 claim at this stage in the proceedings would prejudice Mountbatten.

> It would be unreasonable to restrict a party's ability to amend to a particular stage of the action inasmuch as the need to amend may not appear until after discovery has been completed or testimony has been taken at trial. Nonetheless, in keeping with the purpose of Rule 15(a), which is to facilitate a determination of the action on its merits, a motion to

amend should be made as soon as the necessity for altering the pleading becomes apparent. A party who delays in seeking an amendment is acting contrary to the spirit of the rule and runs the risk of the court denying permission because of the passage of time. In most cases, delay alone is not a sufficient reason for denying leave. However, an amendment clearly will not be allowed when the moving party has been guilty of delay in requesting leave to amend and, as a result of the delay, the proposed amendment, if permitted, would have the effect of prejudicing another party to the action. If no prejudice is found, the amendment will be allowed. [*13]

6 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1488 (1990).

The United States Court of Appeals for the Third Circuit ("Third Circuit") has noted that "delay alone . . . is an insufficient ground to deny an amendment, unless the delay unduly prejudices the non-moving party." *Cornell & Co., Inc. v. Occupational Safety and Health Review Comm'n*, 573 F.2d 820, 823 (3d Cir. 1978) (citations omitted). See also *Allied Erecting and Dismantling Co., Inc. v. United States Steel Corp.*, 786 F. Supp. 1223, 1226-27 (W.D. Pa. 1992) (noting "federal district courts sitting in Pennsylvania have held that delay -- when accompanied by a deleterious ripple effect on a particular case or on the trial court's calendar -- warrants the denial of an otherwise appropriate amendment") (citation omitted). n5

> n5 Wright & Miller cite a panoply of cases supporting the proposition that unjustified delay alone, without any concomitant prejudice, will not supply a sufficient reason to deny leave to amend. See e.g., *Cornwall v. United States Const. Mfg., Inc.*, 800 F.2d 250, 253 (Fed. Cir. 1986) (reversing district court's denial of leave to amend answer and affirmative defense where, "despite the delay in attempting to amend . . . the district court did not discuss the factors which the Eleventh Circuit considers important, it did not offer any justifying reason for its decision, and because it appears that [defendant] was prejudiced by the denial"); *Moore v. City of Paducah*, 790 F.2d 557, 562 (6th Cir. 1986) (noting "delay alone however, without any specifically resulting prejudice, or an obvious design by dilatoriness to harass the opponent, should not suffice as reason

for denial") (citing *Davis v. Piper Aircraft Corp.,
615 F.2d 606, 613 (4th Cir. 1980)*, cert. dis-
missed, *448 U.S. 911, 101 S. Ct. 25 (1980))*.

[*14]

In the instant case, the Court believes Plaintiffs un-
duly delayed the filing of their Motion. The facts under-
lying the bad faith amendment, specifically that Mount-
batten knew of Ridge's financial condition, were avail-
able after Mucchetti's deposition, i.e., as early as April 3,
1997. Outside of inconsistent testimony from Fletcher,
Plaintiffs discovered nothing new in the litigation after
that date. Plaintiffs nonetheless waited two months after
Mucchetti's deposition, until June 2, 1997, to file the
instant Motion. Plaintiffs should have filed their Motion
closer to April 3, 1997. See e.g., *Phoenix Tech., Inc. v.
TRW, Inc., 834 F. Supp. 148, 150 (E.D. Pa. 1993)* (find-
ing no undue delay where "after learning this informa-
tion, defendant filed the present motion . . . less than two
weeks after [the deposition] was taken. In light of the
fact that defendant's counsel filed its motion as promptly
as possible after discovering this new information, we
find there has been no undue delay in seeking leave to
amend").

Plaintiffs' claim that it had to wait for Tyldesley's deposi-
tion to confirm Mucchetti's deposition before filing the
instant Motion is unpersuasive. The dispositive [*15]
question is not at which point Plaintiffs resolved testi-
monial inconsistencies, but when they first learned of the
necessity for altering their pleadings, i.e., April 3, 1997.
With respect to Plaintiffs' claims that Mountbatten ini-
tially delayed depositions, the Court notes that Plaintiffs
could have filed motions to compel.

The Court also finds that granting Plaintiffs leave to
amend would prejudice Mountbatten. Discovery has
been closed for over one month, the dispositive motions
deadline has passed, and this case is scheduled for trial in
less than thirty days. The addition of a bad faith claim
substantially alters the course on which the instant case
has been proceeding. A breach of contract action typi-
cally involves an examination of objective factors such
as contractual terms, duties, performance, and damages.
By stark contrast, a § 8371 claim involves an evaluation
of subjective intent. Compare *Kerrigan v. Villei, 1996
U.S. Dist. LEXIS 2195, No. 95-4334, 1996 WL 84271,* at
*3 (E.D. Pa. Feb. 28, 1996) (requiring, for breach of con-
tract claim, allegations of "the existence of a contract,
which created the duties of the defendant, the failure of
the defendant to comply with his duties, the damages
[*16] suffered by plaintiff as a result of the breach, and
the full satisfaction by plaintiff of his own obligations
under the contract") (citing *Public Serv. Entertainment
Group v. Philadelphia Elec. Co., 722 F. Supp. 184, 219*

*(D.N.J. 1989))*, with, Klinger v. State Farm Mut. Auto-
mobile Ins. Co., ... F.3d ..., *1997 U.S. App. LEXIS 16234,
Nos. 96-7102, 96-7101, 96-7074, 1997 WL 307778,* at *2
(3d Cir. June 10, 1997) (listing elements of § 8371 claim
as "(1) that the insurer lacked a reasonable basis for de-
nying benefits; and (2) that the insurer knew or reck-
lessly disregarded its lack of reasonable basis").

Finally, Plaintiffs proposed amendment would re-
quire Mountbatten to engage in significant new trial
preparation, including, inter alia, a factual investigation
of a new and substantially broader claim. See *Berger,
911 F.2d at 924* (affirming denial of motion for leave to
amend where "allowing the amendment would inject
new issues into the case requiring extensive discovery.
The motion not only came four and one-half months after
the information on which it was based became available,
but also after the close of an extended discovery pe-
riod"); *Elf Atochem N. Am., Inc. v. United States, 161*
[*17] *F.R.D. 300, 302 (E.D. Pa. 1995)* (refusing leave to
add affirmative defense where discovery was "virtually
complete" and where additional defense was "materially
different from the other defenses in place"); *Johnston v.
City of Philadelphia, 158 F.R.D. 352, 353 (E.D. Pa.
1994)* (denying motion for leave to amend where "dis-
covery has closed, summary judgment motions have
been ruled on, and the case is literally on the eve of
trial") (citing cases); *Saini v. Bloomsburg Univ. Faculty,
826 F. Supp. 882, 889 (M.D. Pa. 1993)* (denying leave to
amend where "permitting plaintiff to amend his com-
plaint to add an entirely new claim at this late date would
require us, in fairness to the defendants, to reopen dis-
covery, re-open the period for filing dispositive motions,
and delay the scheduled trial date"); 6 Charles Alan
Wright, Arthur R. Miller & Mary Kay Kane, Federal
Practice and Procedure § 1488 (1990) (stating "delay in
moving to amend also increases the risk that the oppos-
ing party will not have an adequate opportunity to pre-
pare his case on the new issues raised by the amended
pleading").

Accordingly, in the presence of prejudice and undue
delay, the Court will deny Plaintiffs' [*18] Motion.

An appropriate Order follows.

ORDER

AND NOW, this 9th day of July, 1997, upon considera-
tion of Plaintiffs' Joint Motion for Leave to File an
Amended Complaint (Doc. No. 8), Plaintiffs' Supple-
mental Memorandum in support thereof (Doc. No. 9),
Defendant's Memorandum in Opposition thereto (Doc.
No. 10), and Plaintiffs' Reply (Doc. No. 12), **IT IS
HEREBY ORDERED THAT:**

1. Plaintiffs' Motion is **DENIED.**

BY THE COURT:

1997 U.S. Dist. LEXIS 10120, *

John R. Padova, J.

LEXSEE

**FLORIS JONES, JR., Plaintiff, v. UNITED STATES POSTAL SERVICE, et al., Defendants**

**Civil Action No. 89-399 - CMW**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE**

*1991 U.S. Dist. LEXIS 15547*

**October 2, 1991, Decided**

COUNSEL: [*1]

George E. Evans, Esquire, Wilmington, Delaware, and Timothy P. Booker, Esquire, Philadelphia, Pennsylvania, Attorneys for Plaintiff.

William C. Carpenter, Jr., Esquire, United States Attorney, Carolyn T. Greene, Esquire, Assistant United States Attorney, Wilmington, Delaware. OF COUNSEL: John T. Farrell, Jr., Esquire, Chief Field Counsel, U. S. Postal Service, Attorneys for Defendants.

JUDGES:

Caleb M. Wright, Senior United States District Judge.

OPINIONBY:

WRIGHT

OPINION:

*MEMORANDUM OPINION*

This is a civil rights action against the United States Postal Service ("Postal Service") and three of its officials n1 arising out of the Postal Service's termination of its transportation contract with plaintiff Floris Jones. Before the Court is Plaintiff's motion to amend the complaint and Defendants' motion to dismiss. During a status conference n2 held on September 27, 1991 the parties agreed to expedited briefing to permit resolution of these matters so as not to affect the scheduled trial date of October 28, 1991. n3

n1 The individual defendants are 1) Joseph Becker, the Postmaster serving at 401 Ogletown Road, Newark, 2) Dorothy Webb, the logistical

coordinator in Wilmington, Delaware, and 3) Elizabeth Williams, Transportation Management Service Center in Trevose, Pennsylvania.

[*2]

n2 The status conference scheduled for September 27, 1991 was originally to be a pre-trial conference. Due to outstanding matters and the parties inability to jointly submit a proposed pre-trial order the Court re-characterized the meeting on September 27, 1991 to that of a status conference.

n3 The parties agreed to have their briefing complete by Monday, September 30, 1991 and the Court agreed to issue a decision by Wednesday, October 2, 1991. Defendants' brief although not docketed until Tuesday October 1, 1991 was received in chambers late on September 30, 1991. Plaintiff's brief was received in chambers and by the Clerk's Office in the afternoon of October 1, 1991.

I. Factual Allegations n4

n4 This factual background is taken directly, without alteration, from the Court's December 4, 1990 opinion denying the Plaintiff's motion for a preliminary injunction.

On July 1, 1986, plaintiff Jones entered into a four-year renewable [*3] contract with the defendant Postal Service for the transportation of mail along designated

1991 U.S. Dist. LEXIS 15547, *

Postal Service routes. As early as July 8, 1986, plaintiff omitted trips from his delivery route. Over the next three years, Mr. Jones consistently failed to make timely deliveries, omitted deliveries, and failed to report his arrival times as required. Finally, on March 22, 1990, the Postal Service terminated plaintiff's contract. Thereafter, the contract was awarded to Winfield Fisher, also a minority, who has not experienced any delivery problems.

Defendants contend that the Postal Service terminated plaintiff's contract because of the numerous delivery irregularities. Plaintiff counters that his delivery problems resulted from defendants' racially motivated conduct -- that, because plaintiff is black, defendants prevented him from loading and unloading his trucks properly and defendant Becker failed to make Post Office facilities available. Plaintiff further asserts that he justifiably went into hiding and failed to make deliveries, after a caucasian Postal Service employee threatened to kill him on March 20, 1990. Plaintiff claims that defendants' interference with and termination of his [*4] contract violated his Fifth Amendment n5 rights. n6 Mr. Jones seeks injunctive relief (renewal of the contract) and money damages.

n5 Plaintiff originally labelled his constitutional cause of action as a Fourteenth Amendment violation. In its Opinion of January 26, 1990 (at footnote 3), the Court recharacterized plaintiff's allegations as a Fifth Amendment claim.

n6 Plaintiff also attempted to allege a claim under 42 U.S.C. § 1981. This cause of action was dismissed by the Court in its Order of January 26, 1990.

II. Plaintiff's Motion to Amend the Complaint

On September 23, 1991, the Plaintiff filed a motion to amend his complaint, including a copy of the amended complaint. n7 In the proposed amended complaint, Plaintiff seeks the following changes: (1) drop the United States Postal Service as a defendant; (2) add Anthony M. Frank, Postmaster-General as a nominal defendant; (3) change the jurisdictional basis of the complaint; (4) allege that Plaintiff's rights under the 5th Amendment of the United States [*5] Constitution have been abridged; and (5) to change paragraph nine of the complaint from:

The actions of the Defendants and their agents were directly and intentionally done to prevent the plaintiff and his agents from successfully performing the contract

which is the subject of this action solely because of the plaintiff and his agents race.

Complaint, Docket Item 1, para. 9 (as in the original, without correction), to read:

That solely because of the actions of the Defendants individually and in concert through its employees, servants, workmen, supervisors, the defendant has been caused to not perform his contract adequately, to the point that his contract was in fact terminated on March 22, 1990 and he has been barred from renewal of this contract and from entering into any other contracts with the Postal Service because of his performance on the contract herein.

Motion to Amend Complaint, Docket Item 40, Proposed Amended Complaint para. 9 (as in the original, without correction).

n7 It should be noted that the amended complaint failed to comply with Local Rule 3.2G(2) which requires:
An amended pleading shall indicate in what respect it differs from the pleading which it amends. Materials to be deleted should be bracketed. Materials to be added should be underlined.
Local Rule 3.2G(2). The Plaintiff's amended pleading in no way delineated the changes for the Court.

[*6]

The Court finds the first four proposed amendments unnecessary and unwarranted. Further, the Court finds it would be improper, at this late date, to permit amendment of paragraph nine of the complaint. Each proposed amendment will be discussed in turn. n8

n8 The Court will not address whether the United States Postal Service is to be dropped as a Defendant. If, after receiving this opinion, the Plaintiff still wishes to drop the Postal Service as a Defendant he may do so by way of a separate motion.

The Plaintiff seeks to add Anthony M. Frank, Postmaster-General as a Defendant. In support thereof the Plaintiff states the following:

The Government filed a Motion to Dismiss the plaintiff's complaint on the grounds that it did not state a cause of action and that a necessary party had not been named as a defendant, to wit, the Postmaster of the United States.

1991 U.S. Dist. LEXIS 15547, *

Brief in Support of Amending the Complaint, p. 1. Although the Plaintiff is correct that the Defendants filed a motion to dismiss for failure to state a cause [*7] of action, there never has been an allegation that a necessary party has not been named. Further, unlike a Title VII case, the Postmaster General is not a necessary party and the Postal Service may be sued in its official name. *39 U.S.C. § 401*(1) and *39 U.S.C. § 409*. The Court finds no allegations in the complaint, or the amended complaint, that indicates the Postmaster General is in anyway responsible for the alleged incidents and thus, the Court can find no basis or need for adding this Defendant at this late date.

The amended complaint proposes the following new jurisdictional basis for the complaint:

Jurisdiction is based on *28 U.S.C.A. § 1343*(A)(4); the Civil Rights Act of 1866, reenacted in 1870, See Act of April 9, 1866, ch. 31, § 1, 14 Stat. 27, 27, amended by Act of May 31, 1870, ch. 114, § § 16, 18, 16 Stat. 140, 144; *28 U.S.C.A. § 1331* (West Supp. 1989). Defendant's waiver of sovereign immunity from suit pursuant to *39 U.S.C.A. § 401*(1) (West 1980); and U.S. Const. amend V; *42 U.S.C.A. § 1981* (West 1981).

Motion to Amend Complaint, Docket Item 40, Proposed Amended Complaint para. 4 (as in the original, without correction).

In the Court's January 26, 1990 opinion [*8] on the Defendants' motion to dismiss for lack of jurisdiction the Court stated:

The court therefore finds that it has jurisdiction over plaintiff's claims, pursuant to *28 U.S.C.A. § 1343*(A)(4) (West Supp. 1989), *28 U.S.C.A. § 1331* (West Supp. 1989), and *39 U.S.C.A. § 409*(a) (West 1980).

Opinion, at p. 9 (January 26, 1990). Thus, the Court finds that any attempt to amend the complaint to allege a different jurisdictional basis than that found by this Court in January, 1990 would be inappropriate.

If the Plaintiff wishes to amend the complaint to mirror the Court's January 26, 1990 opinion, he will be granted leave to do so. The additional jurisdictional basis pursuant to *42 U.S.C.A. § 1981* (West 1981) is inappropriate as the Court dismissed the Plaintiff's cause of action as it pertains to *42 U.S.C.A. § 1981*. Opinion, at p. 13 (January 26, 1990). n9

n9 The Court assumes that the Plaintiff is alleging *42 U.S.C.A. § 1981* as an additional grounds for jurisdiction on the basis of his proposed amendment to para. 9 of the complaint. However, for the reasons set forth, the Court will deny the Plaintiff's motion to amend the complaint.

[*9]

The Plaintiff is attempting, in two places, to allege an injury pursuant to the Fifth Amendment of the United States Constitution, rather than the Fourteenth Amendment. As discussed at great length in the January 26, 1990 Opinion, although the original complaint stated the Fourteenth Amendment, the Court assumed, by virtue of the alleged acts and parties, that the Plaintiff was actually complaining of injury pursuant to the Fifth Amendment. The Court finds that Amendment of the Complaint in this respect is proper but, only if the jurisdictional amendment, as discussed above, is made, will the Court grant leave to amend.

Finally, the Plaintiff requests leave to amend para. 9 of the original complaint. The Court refuses to do so.

The proposed amendment to para. 9 alleges that as a result of the Defendants' actions the plaintiff n10 has: (1) been unable to perform his contract; (2) been terminated; (3) been barred from renewal of the contract; and (4) been barred from entering into any other contracts with the Postal Service. Following para. 10 the Plaintiff alleges that this has resulted in a violation of *42 U.S.C. § 1981*. This, the Court finds, is an attempt to reinstate a claim [*10] under *42 U.S.C. § 1981* that was dismissed in the January 26, 1990 opinion for failure to state a claim.

n10 Actually the proposed amendment reads that "the defendant has been caused to not perform his contract" when, in fact, it should read "the plaintiff has been caused not to perform his contract".

The Court finds this allegation incapable of reviving the *42 U.S.C. § 1981* claim. The bare allegation that the Plaintiff was barred from renewing the contract is insufficient to state a claim pursuant to *42 U.S.C. § 1981* where it is necessary to show a new and distinct relationship between the employer and employee would have resulted. *Patterson v. McLean Credit Union, 109 S.ct. 2363, 2377 (1989).*

Even if the Court believed the allegation pursuant to *42 U.S.C. § 1981* to be actionable, amendment at this time would not be permitted. Although a motion to amend is to be freely granted, it is not without limits. Some factors a Court is to consider in exercising its discretion when considering whether to grant [*11] leave to

1991 U.S. Dist. LEXIS 15547, *

amend include: "undue delay; bad faith or dilatory mo-tive on the movant's part, repeated failure to cure defi-ciencies by previous amendments, undue prejudice to the opposing party by virtue of the allowance of the amend-ment and futility of the amendment". *Foman v. Davis, 371 U.S. 178, 182 (1962); Borough of Ellwood City, Pa. v. Pa. Power Co., 570 F. Supp. 553, 556 (W. D. Pa. 1983).* A critical factor in deciding a motion to amend is if prejudice to the non-moving party will result. *Zenith Radio Corp. v. Hazeltine Research, Inc., 401 U.S. 321, 330-331 (1971); Cornell, 573 F.2d at 823.*

An "eleventh hour amendment", such as this, has been found to create a delay that is undue and prejudicial to the nonmoving party when new discovery would be required. *Serrano Medina v. United States, 709 F.2d 103, 106 (1st Cir. 1983)* (amendment, two years after initial filing, raising new and separate claims and requir-ing additional research and discovery properly denied); Debry v. Transamerica Corp., 601 F.2df 408, 492 (10th Cir. 1979) (amendment, eighteen months after case was filed and three [*12] months prior to trial date, properly not allowed when new discovery would be required). Clearly, that is the case the Court is faced with in the Plaintiff's request to amend his complaint.

In the case at bar, the Plaintiff was put on notice in January, 1990 of the deficiency in the allegation pursuant to *42 U.S.C. § 1981* and has taken no action until now, one month before the date for trial, to amend his plead-ings to support this cause of action. Discovery has been completed, the pre-trial conference was scheduled for September 27, 1991 and the Trial is scheduled to begin on October 28, 1991. To allow amendment at this late date would be to unduly prejudice the Defendants who have prepared their case on the basis of an alleged Fifth amendment violation. *Lyons v. Board of Education, 523 F.2d 340 (8th Cir. 1975); Woodson v. Fulton, 614 F.2d 940 (4th Cir. 1980).* Further, this is not an amendment that would only assert a new legal theory on the basis of the same facts, rather the amendment alleges additional facts that would require further discovery regarding this cause of action. *Cornell & Co., Inc. v. Occupational Safety and Health Administration, 573 F.2d 820, 823 (3d Cir. 1978).* [*13] The Court concludes that to permit an amendment of this nature would result in prejudice to the defendant and undue delay. Thus, the motion will be denied.

## III. Defendants' Motion to Dismiss

All that remains before the Court is the Plaintiff's al-leged claim pursuant to the Due Process Clause of the Fifth Amendment of the Constitution. Defendants have moved to dismiss for lack of specificity in the com-plaint's allegations. In requesting the Court to dismiss the cause of action, the Defendant indicates that when a pub-lic official is involved in an alleged violation of civil or constitutional rights, greater specificity in pleading is required. Brief in Support of the Motion to Dismiss, p. 5 (citing, *United States v. City of Philadelphia, 644 F.2d 187, 204-205 (3d Cir. 1980)).*

Although the Court agrees that a modest degree of specificity is required when there is an alleged violation of civil or constitutional rights by a public official, the Court finds that the complaint meets this standards. This is not a case where the allegations are conclusory or vague, thus failing to provide "fair notice". *City of Philadelphia, 644 F.2d at 204.* [*14] In fact, the allega-tions in the complaint are very specific and have put the Government on notice as to how and why the Plaintiff believes his Fifth Amendment rights were abridged.

The Court concludes that the complaint will not be dismissed for lack of specificity in the allegations.

## IV. Defendants' Motion to Dismiss

For the reasons stated above Plaintiffs' motion to amend the complaint is denied and Defendants' motion to dismiss is denied. Plaintiff may move to amend his com-plaint consistent with this opinion by October 8, 1991.

LEXSEE 1992 US DIST LEXIS 2464

**SAMICK MUSIC CORP., a California corporation, Plaintiff, v. DELAWARE MUSIC INDUSTRIES, INC., et al., Defendants.**

**Civil Action 91-23 - CMW**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE**

*1992 U.S. Dist. LEXIS 2464*

**February 12, 1992, Decided**

**COUNSEL:** [*1] Allen M. Terrell, Jr., Esquire and David L. Zicherman, Esquire of Richards, Layton & Finger, Wilmington, Delaware. Attorneys for Plaintiff.

Roger A. Akin, Esquire and Christopher J. Curtin, Esquire of Sawyer & Akin, Wilmington, Delaware. Attorneys for Defendants.

**JUDGES:** Wright

**OPINIONBY:** CALEB M. WRIGHT

**OPINION:**

*OPINION*

Wilmington, Delaware

Wright, Senior Judge.

This action was commenced on January 14, 1991 by Samick Music Corporation ("Samick") against Delaware Music Industries, Inc. ("DMI") and four individual defendants. In essence, the complaint alleges that DMI is liable for breach of contract and the individual defendants are liable as they signed guaranty agreements, in their personal capacities, to obtain the floor plan financing which was allegedly breached. (Docket Item 1). DMI and the individual defendants filed a joint answer on March 13, 1991.

Presently before the Court is the defendants' motion to amend their answer to include numerous counterclaims not previously raised. The defendants' motion to amend was filed on January 6, 1992 and, while the motion was a "talking motion", no opening brief was filed by the defendants. (Docket Item 35). On January 21, 1992 the plaintiff [*2] filed its answering brief and appendix. (Docket Item 36). On January 28, 1992, by way of letter, the defendants replied to the plaintiff's brief. n1

(Docket Item 38). On January 30, 1992 the plaintiff wrote the Court to "address several of the more outrageous misstatements made in defendants' Reply Memorandum." (Docket Item 39). For the reasons stated below, the defendants' motion to amend their answer is denied.

> n1 The Court notes that while the letter memorandum did not comply with the local rules of this Court, the letter was accepted by the Court and made part of the record. (Docket Item 38). Further, the plaintiff, by way of letter, indicated that they would not file a motion to strike although the letter memorandum did not comply with local rules and contained information that should have been included in the opposition's opening brief. (Docket Item 39).

I. Factual and Procedural Background

As previously noted, this action was commenced on January 14, 1991. (Docket Item 1). An answer was filed by the defendants [*3] on March 13, 1991 (Docket Item 9) and a scheduling order was entered on April 4, 1991. (Docket Item 11). Pursuant to the scheduling order discovery was to end on September 13, 1991. (Docket Item 11). Discovery was undertaken by the parties but they failed to complete it by the cutoff date and thus, on September 13, 1991 a stipulation and proposed order to amend the Rule 16(b) dates was submitted to the Court. (Docket Item 22). The Court granted the extension of the scheduling order which provided for discovery to end on November 22, 1991 and dispositive motions to be filed by December 3, 1991.

The parties continued with discovery until it became apparent that they would not be able to secure the depo-

1992 U.S. Dist. LEXIS 2464, *

sition of one person within the time allotted for discovery. As a result, the parties submitted a stipulation and proposed order to extend discovery until January 30, 1992 for the sole purpose of deposing this one individual, all other discovery having been completed by the November 22, 1991 date. (Docket Item 34). The Court granted this motion on November 25, 1991. The order indicated that other dates would be extended in a like manner. Thus, as the Court understood it, the deadline for [*4] filing dispositive motions was extended until February 13, 1992. Therefore, at the time the motion to amend was filed, all discovery was completed with the exception of deposing the one person for which the extension was granted. Because of the nature of the motion and the arguments made by the parties, the Court finds it appropriate to briefly summarize the parties positions on this motion.

According to DMI, the motion to amend is for the purpose of adding a counterclaim n2 which seeks injunctive and declaratory relief as well as damages concerning "another aspect of the relationship between the parties." (Docket Item 35, para. 3). The counterclaim is based on the defendants' allegations that the plaintiff, while representing that the soundboard of the pianos they sold were made entirely of "spruce" or "Alaskan Sitka Spruce," actually Samick was manufacturing and selling pianos that had a soundboard made of a thin spruce veneer over a philippine mahogany core. (Docket Item 35, paras. 11, 12, 15). As a result of this action by Samick the defendants contend they may be liable to their customers to whom they sold these pianos for Consumer Fraud pursuant to *6 Del. C. § 2513(a)* and § [*5] 2543(a) and thus seek injunctive and declaratory relief. (Docket Item 35, Proposed Amended Answer, Fourth Counterclaim).

> n2 Although reference throughout the motion to amend is to "a counterclaim" in fact five counterclaims based on the same operative facts are sought to be added by DMI.

Further, defendant DMI seeks damages from Samick for allegedly violating the following: (1) *6 Del. C. § 2513(a)* relating to consumer fraud, (2) *6 Del. C. § 2532(a)*, (2), (4), (5), (7), (9) and (12) which bars the use of deceptive trade practices, (3) for breach of an express warranty, and (4) *15 U.S.C. § 2310*(d), commonly referred to as the Magnuson-Moss Act. According to the defendants, Samick is in violation of the above for intentionally or with reckless disregard for the truth, misrepresenting the composition of the soundboard of its pianos in connection with their sale and advertisement to DMI and the public. (Docket Item 35, Proposed Amended Answer).

According to the defendants' motion, the motion should be granted on the grounds [*6] of judicial economy. (Docket Item 35, para. 6). In support thereof, DMI states that the action is not time barred, that the parties have included this issue in all depositions to date, that the issue should be part of the trial as it may bear on the credibility of the plaintiff and that having trial on this issue in conjunction with the original complaint will not materially affect the length of the trial. (Docket Item 35, paras. 6(a) - 6(d)). Thus, according to DMI, Samick will not be prejudiced by permitting amendment. (Docket Item 35, para. 7).

Finally, the motion indicates "that this would be a compulsory counterclaim, since the facts arise from the same core of operative facts, eg. the sale of pianos to DMI by Samick." (Docket Item 35, para. 8). Thus, according to the defendant the Federal Rules of Civil Procedure would encourage amendment. n3 Finally, the defendant cites *Rule 15 of the Federal Rules of Civil Procedure* and emphasizes that amendment by leave of the Court shall be freely given when justice requires. (Docket Item 35, para. 9).

> n3 The defendant refers to Rule 12 in the motion, however counterclaims are governed by Rule 13 and the language quoted by the defendant comes from Rule 13.

[*7]

In response, the plaintiff argues that while leave to amend should be freely given, this does not mandate the Court to permit amendment in every case. (Docket Item 36, p. 10). Amendment of a complaint is generally not permitted when there is evidence of "undue delay, bad faith or dilatory motive on the part of the movant, . . . undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." (Docket Item 36, p. 10 citing *Foman v. Davis, 371 U.S. 178, 182 (1962)).* Thus, the plaintiff contends that the motion to amend should be denied for at least three reasons: (1) the defendants have unduly delayed the filing of the motion, (2) permitting amendment at this late date will be highly prejudicial to Samick, and (3) the amendment would prove futile. (Docket Item 36, p. 11).

As the first ground against permitting amendment the plaintiff argues that Rule 16(b) scheduling orders are at the heart of case management and without a specific showing of good cause should not be disregarded. (Docket Item 36, p. 12). Thus, in accord with the scheduling order, any amendments to the pleadings necessarily had to be made by June 14, 1991 [*8] and the plaintiffs failure to provide any good cause reason for failure to

1992 U.S. Dist. LEXIS 2464, *

abide by this date should necessarily cause their motion to be denied. (Docket Item 36, pp. 12-13).

Further in support of its argument that the motion is untimely and thus should be denied, Samick contends that the defendant is met with the same burden of showing good cause pursuant to *Rule 15(a) of the Federal Rules of Civil Procedure.* (Docket Item 36, p. 13). Samick contends, and the Court must agree, that the defendants failed to provide any explanation for their failure to file the proposed counterclaims at an earlier date. As a result, Samick alleges that the motion must be denied because the defendants have wholly failed to meet their burden to show good cause or to provide explanations as to why justice requires permitting the amendment. (Docket Item 36, p. 14).

Finally on this point, Samick contends that the defendants will be unable to make a showing of good cause and thus denial of the motion is appropriate. In so contending, Samick proposes that the purpose of Rule 15(a) is to permit amendment when the matters that are to be included were not known at the time the original pleading was filed and that [*9] is not the case here. (Docket Item 36, p. 15). According to Samick, the defendants knew of the essential facts in April of 1990, eight months before the filing of the complaint and one year before the filing of the original answer. (Docket Item 36, pp. 16-20). Thus, because the defendants failed to act on the knowledge they possessed until seven months beyond the date provided for amending pleadings in the Rule 16(b) scheduling order and two months after discovery had essentially ended, the Court should not permit amendment on the grounds of bad faith and dilatory tactics or failure to meet their burden of showing good cause in the delay of filing the amendment. (Docket Item 36, pp. 20-21).

Samick also contends that to permit amendment would result in prejudice to Samick and prejudice to the non-moving party is "the touchstone for the denial of a motion for leave to amend." (Docket Item 36, p.22). In support thereof, Samick contends that the original complaint and answer allege a "simple debt collection action" with issues that are "simple and straightforward." (Docket Item 36, p.22). Now, according to Samick, the defendants wish to introduce five counterclaims relating to alleged [*10] misrepresentations and fraudulent conduct on the part of Samick. (Docket Item 36, p. 23). Thus, what was once a simple action will now become a convoluted trial requiring evaluation of technical information through expert testimony and consideration of numerous state and federal statutes, not previously part of this case, will be required. (Docket Item 36, pp. 23-24). Samick urges, consistent with courts of other jurisdictions, that the Court deny the motion as it will introduce many new issues and enlarge the scope and com-

plexity of the case after discovery has closed. (Docket Item 36, pp. 24-25).

Further, Samick contends that because discovery has ended the introduction of these issues at this time will be unduly prejudicial to Samick as discovery on these issues was not pursued and it no longer has the right to conduct discovery. (Docket Item 36, pp. 26-27). Finally, with respect to discovery, Samick contends that if discovery is reopened in order to permit them an opportunity to defend these additional counterclaims they again will be prejudiced. (Docket Item 36, p. 29). In support of this argument Samick points to the additional discovery and the burden of this discovery that [*11] will result.

Further, and more compelling in the Court's view, Samick indicates that the original case is currently in pretrial stages, discovery having ended and can proceed rapidly; if discovery is to be re-opened delay of a year or more may result. Thus, according to Samick, this simple debt collection action will be unnecessarily delayed by a substantial amount of time. (Docket Item 36, p. 32). All in all, Samick contends that the above factors all lead to the conclusion that Samick will be unduly prejudiced if the amendment is permitted. (Docket Item 36, pp. 33-36).

Samick also contends that the defendants' proposed counterclaims are futile and thus denial of the amendment is appropriate. (Docket Item 36, p. 37). Because the Court finds that the motion should be denied on other grounds previously mentioned, the specifics of this contention will not be addressed.

The reply memorandum of DMI indicates that the counterclaims should be permitted because all counterclaims, old and new are based on alleged misrepresentations by Samick and all claims should be resolved in one suit. (Docket Item 38, p. 1). Thus, defendant concludes, these issues should be permitted in the trial on the [*12] original complaint because "misrepresentation is part of this lawsuit and the evidence of the misrepresentations in the soundboard is consistent with the pattern of misrepresentation which the debt action is being defended upon." (Docket Item 38, p.3).

Further, DMI argues that Samick is not prejudiced by permitting amendment of the answer at this stage. In so arguing DMI states:

It is ridiculous for Samick to complain that it is prejudice [sic] by this amendment. Samick knew of the existence of the problem of its misrepresentations concerning its soundboards, first, because its product literature is inconsistent with its manufacturing (the facts of which it must have known) and secondly because DMI notified them of the existence and importance of this issue prior to the onset of the litigation. The necessary documents, produc-

Case 1:04-cv-01443-GMS    Document 89-2    Filed 02/09/2006    Page 24 of 27

Page 4
1992 U.S. Dist. LEXIS 2464, *

tion, drafting of advertising documents and knowledge-able personnel are all within Samick's custody and control.

In fact, Samick opened the door to the issue in this litigation by affirmatively questioning DMI personnel about it in the first two depositions taken in the case. That it is prejudicial to Samick's case does not mean that it is prejudicial [*13] to allowance of the amendment. Samick has not lost the ability to take discovery nor will Samick be held to answer a claim that is no longer within the period of limitations. Samick has had knowledge of the existence of the allegations as long as the defendants and since the evidence is in its possession, custody and control, have had greater access to it than defendants.

Finally, discovery is not complete in any event. Discovery can be re-opened when justice requires despite the existence of a pre-trial order and justice so requires in this case.

(Docket Item 38, p. 3, as in the original).

Finally, DMI indicates that justice requires permitting amendment of the answer and allowing discovery to be reopened. n4 In support of this contention DMI states the following:

> n4 The heading of DMI's response is "Justice requires amendment of the complaint and allowing discovery to be reopened." Further, in the text of this section the defendants state that given the facts justice would require permitting amendment of the complaint. The Court notes that the use of the word complaint by the defendants throughout this section was erroneous as the motion is to amend the answer. The Court has taken the argument presented as though requesting leave to amend the answer.

[*14]
The facts of the grotesque nature of Samick's fraud in misrepresenting the composition of the most crucial component of the pianos it manufactures and sells, a component, the composition of which is a material factor in the decision to even buy one piano versus another and to pay the additional price required of a solid spruce or all spruce soundboard as advertised in Samick literature to the hundreds of Delawareans who purchased pianos through Samick and the thousands who have purchased Samick on the same misrepresentations throughout the United States should be sufficient in justice to require allowing the amendment to the complaint.

The liability that Samick's actions have exposed DMI to should in justice allow amendment to the complaint. The threats and denials from Samick when challenged with this allegation before suit was filed should in justice justify amendment of the complaint. Samick's denials continuing through this litigation until Mr. Brand's acknowledgement of the fraud perpetrated throughout the United States should, in justice, require amendment of the complaint.

In addition, Samick has known of the fraud since it perpetrated it through misrepresentations [*15] in Samick's catalogs and through its manufacture and distribution of products that it knew did not conform to those advertising representations. Its knowledge and intentional concealment should, in justice, justify amendment of the complaint.

Moreover, all depositions taken to date have included the allegations concerning the soundboards. This includes those taken by Samick's attorneys, which were the first depositions taken in the case. It was not until November 20, 1991 that Jack Brand, a Samick employee, the Regional Sales Representative for the New York Region made any confirmation of the existence of the misrepresentation, and his knowledge of it and the fact that it occurred for a period measured in years, at the minimum. Exhibit 6.

Finally, discovery is not complete. Since Mr. Visceglie's deposition is still being scheduled and he is yet another Samick employee (former) with important information concerning all of the issues in the complaint and the answer and counterclaim as well as the amended answer and counterclaims and Samick professed inability to have its former employee consent to cooperative depositions when in fact DMI has now secured that agreement, there [*16] will be no prejudice to Samick.

There is, furthermore, no prejudice to Samick on its debt count since, Delaware law provides for prejudgment and post-judgment interest on claims. Samick's brief attempts to thrust all responsibility for discovery delays on the defendants when in fact, some of the delays were necessitated by the availability of Samick personnel and counsel and the inability of either party to locate a former Samick employee.

(Docket Item 38, pp. 4-5, as in the original). Thus, concludes DMI:

Whether or not there is liability in view of and the defense based on misrepresentation by Samick concerning the documents which were signed based on misrepresen-

1992 U.S. Dist. LEXIS 2464, *

tation goes to the heart of the case and should include these additional issues as well in the interest of judicial economy.

For the foregoing reasons, DMI's motion for leave to amend the complaint should be granted and discovery should be re-opened to cure any of Samick's complaints of prejudice as a consequence of the pre-trial order. n5

(Docket Item 38, p.5, as in the original).

> n5 The Court assumes that any reference to a pre-trial order is actually meant to be a reference to the Rule 16(b) scheduling order as no pretrial order has yet been filed in this case.

[*17]
II. Discussion

Pursuant to Rule 13(f) and *Rule 15 of the Federal Rules of Civil Procedure* the defendants have requested leave to amend their answer to add five additional counterclaims. As a preliminary matter, the Court notes that whether leave to amend a pleading is to be permitted is within the sound discretion of the Court. *Zenith Radio Corp. v. Hazeltine, 401 U.S. 321, 330 (1971); Foman v. Davis, 371 U.S. 178, 182 (1962); Cornell & Co., Inc. v. Occupational Safety and Health Review Comm'n, 573 F.2d 820, 823 (3d Cir. 1978); Arch. Coatings Assoc. v. Applied Coatings Intern, 103 F.R.D. 442, 444 (E.D. Pa. 1984).*

The United States Supreme Court in Foman v. Davis articulated the test for permitting amendment to a pleading under Rule 15(a) as follows:

In the absence of any apparent or declared reason - such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc. - the leave sought should, as the rules [*18] require, be "freely given." Of course, the grant or denial of an opportunity to amend is within the discretion of the District Court, but outright refusal to grant the leave without any justifying reason appearing for the denial is not an exercise of discretion; it is merely abuse of that discretion and inconsistent with the spirit of the Federal Rules.

*Foman, 371 U.S. at 182.* Thus, it is incumbent on the Court to determine, under the specific circumstances of this case, whether amendment of the answer is appropriate.

Initially it is the movant's burden to articulate some satisfactory explanation why amendment should be permitted when leave of the Court is required. *Rose Hall, Ltd. v. Chase Manhattan Overseas Banking, 93 F.R.D. 858, 865 (D.C. Del. 1982)* ("In the instant case it is not necessary for the Court to find that plaintiff has acted in bad faith in seeking the amendment. It is clear that plaintiff has provided no satisfactory explanation for its long delay in filing its motion to amend. Undue delay which is not satisfactorily explained is equivalent to bad faith."). In this case, the Court finds that the movant has been wholly unable [*19] to provide an adequate justification for failing to raise the counterclaims earlier.

The essential facts for any potential counterclaim based on misrepresentations of the soundboard composition were known to the defendants no later than December 10, 1990 as evidenced by a letter from a DMI representative (and defendant in this suit) to Samick regarding this issue. (Docket Item 37, A-186). Further, the Court finds that the essential facts underlying these allegations were probably known to the defendants much earlier. In April, 1990 DMI received notice from the United States Department of Agriculture that the sample provided them was not spruce as Samick's literature claimed. (Docket Item 38, Exhibit 4). Therefore, insofar as the counterclaims are based on the assertion that the literature claimed one thing and the product contained another, DMI has been unable to show this Court why they failed to raise the proposed counterclaims until such a late date.

Further, Samick's allegation that a Samick employee did not confirm the misrepresentation until November 20, 1991 is unavailing. (Docket Item 38, p.4). The Court finds that the facts essential to bring the counterclaim were known, [*20] as stated above, sometime between April and December, 1990. The Court finds that DMI would not need, nor would normally have, any admission by Samick regarding the alleged discrepancy in composition and advertising representations in order to bring a counterclaim. This would be a fact that, if ever, would normally arise during discovery. The Court finds that undue delay in bringing this counterclaim is present and the defendants have failed to provide the Court with any reasonable explanation for the delay.

As a further basis for denying this motion to amend the Court finds that substantial prejudice to Samick would result. Unlike the issues presented in the original complaint which are based on a breach of contract and collection of debt, the issues sought to be added at this stage are much more involved. The issues in the original complaint are nearing the trial stage and to interject issues dealing with fraud and misrepresentation of a very different character at this stage would be prejudicial to the plaintiff.

1992 U.S. Dist. LEXIS 2464, *

Although DMI aggressively argues that discovery on the issues in the proposed counterclaims has been undertaken throughout the discovery phase the Court cannot agree. During [*21] some depositions references were made to the alleged discrepancies in the soundboard material and the representations in the sales literature but this does not in any way constitute discovery on these issues. The Court finds that mere inquiry into some of these issues would not, by any standards, comprise discovery of the outstanding issues.

DMI further tries to convince the Court that Samick cannot claim prejudice because they knew of the purported fraud and made inquiry during depositions on these issues. This is contrary to basic logic. Even if the Court accepts DMI's position that Samick knew of the alleged misrepresentations and they inquired during some depositions into these matters, one cannot make a leap then that they would not be prejudiced (even if discovery were re-opened) by the need to defend a lawsuit they did not know would be forthcoming. The prejudice is obvious in the protraction of time to have their claims heard and the need for extensive discovery on these issues. Although Samick may be entitled for pre and post-judgment interest this cannot act to compensate them for the time it would take to get their claims before the Court.

Finally, the Court is mindful [*22] that if a counterclaim is compulsory in nature, amendment is further encouraged. The only indication that this counterclaim is compulsory is DMI's bald assertion to that effect. (See Docket Item 35, para. 8 wherein the defendants state: "This would be a compulsory counterclaims, since the facts arise from the same core of operative facts, eg. the sale of pianos to DMI by Samick." See also Docket Item 38, p.1 wherein the defendants, in citing Miller & Kane, Federal Practice and Procedure: Civil 2d § 1430, state: "Policy favors resolution of all claims in one suit; amendment allowed even after judgment; compulsory counterclaims are especially favored."). Again, the Court cannot agree.

The Court of Appeals for the Third Circuit has articulated the following test for determining if a counterclaims is compulsory or merely permissive:

*Great Lakes Rubber Corp. v. Herbert Cooper Co., 286 F.2d 631, 634 (3d Cir. 1961),* established that the operative question in determining if a claim is a compulsory counterclaim is whether it bears a logical relationship to an opposing party's claim.
[A] counterclaim is logically related to the opposing party's claim where separate [*23] trials on each of their respective claims would involve a substantial duplication of effort and time by the parties and the courts. Where multiple claims involve many of the same factual issues, or the same factual and legal issues, or where they are offshoots of the same basic controversy between the parties, fairness and considerations of convenience and of economy requires that the counterclaimant be permitted to maintain his cause of action. Indeed the doctrine of res judicata compels the counterclaimant to assert his claim in the same suit for it would be barred if asserted separately, subsequently.

Thus, a detailed analysis must be made to determine whether the claims involve: (1) many of the same factual issues; (2) the same factual and legal issues; or (3) offshoots of the same basic controversy between the parties. The Great Lakes analysis has been generally used by several federal courts as was noted by the Supreme Court in *Baker v. Gold Seal Liquors, Inc., 417 U.S. 467, 469, 94 S.Ct. 2504, 2506, n.1, 41 L.Ed.2d 243 (1974).*

*Xerox Corp. v. SCM Corp., 576 F.2d 1057, 1059 (3d Cir. 1978).*

The Sixth Circuit [*24] Court of Appeals has posited the test in a slightly different light. In order to determine whether such a relationship exists to find something to be a compulsory counterclaim that Court instructed the following questions to be answered:

(1) Is there a logical relationship between the two claims?

(2) Are the issues of fact and law raised by the claim and counterclaim largely the same?

(3) Would res judicata bar a subsequent suit on the counterclaim if the court were not to take jurisdiction?

(4) Would substantially the same evidence support or refute both the claim and the counterclaim?

*In re Rebel Coal Company, Inc., 944 F.2d 320, 322 (6th Cir. 1991)* (citing *Maddox v. Kentucky Fin. Co., Inc., 736 F.2d 380, 382 (6th Cir. 1984)).* If these questions could be answered affirmatively then the Court can conclude that a compulsory counterclaim is present. Id.

Regardless of the test applied in this case, the Court does not find the proposed claims to be compulsory in nature. The basic issues are completely separate, the facts to support each of the claims are separate, evidence that would need to be shown are dissimilar, res judicata would [*25] not bar a second suit on the proposed counterclaims and the only relationship between the two sets of claims is that they involve the same parties. There appears to be no logical relationship between the claims, facts, legal theories, or evidence thus, the Court concludes that the proposed counterclaims are not compul-

1992 U.S. Dist. LEXIS 2464, *

sory in nature and to deny the motion will not work an injustice on the defendants. n6

> n6 The defendants indicate in their opening papers that the action is not time barred. (Docket Item 35, para. 6(a)). Further, by letter to opposing counsel dated December 17, 1991 seeking agreement to this motion to amend, the defendants stated the following:
>
> I am writing to request your agreement to the enclosed amendment to the answer and counterclaims filed in this case. As you can see, it brings the soundboard issue directly to bear in the litigation. I believe the Court would permit this amendment in the interest of judicial economy under Rules 13(f) and 15(a). Moreover, in the event a separate suit is necessary, I believe it could be consolidated with this action due to the discovery taken in this case.

Finally, a separate action would probably be brought as a class-action. In view of these reasons, please let me know your position concerning the proposed amendment within one week of the date of this letter.

(Docket Item 35, p. 8). Therefore, the Court concludes that the defendants have provided the Court with the clearest reasoning as to why denying this motion will not create an injustice. The statute of limitations has not run, they can bring a separate action and likely will do so as a class action. Thus, the Court concludes that, under these circumstances, the interests of justice do not require permitting amendment of the answer.

[*26]

III. Conclusion

For the foregoing reasons, defendants' motion to amend the answer will be denied. An appropriate order will be answered.