IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| NATIONAL STARCH AND CHEMICAL<br>INVESTMENT HOLDING CORPORATION,<br>PENFORD AUSTRALIA LTD., and<br>PENFORD HOLDINGS PTY., | ) <br> ) <br> ) <br> ) <br> ) | |
| Plaintiffs, | ) <br> ) | |
| v. | ) <br> ) | Civil Action No. 04-1443-GMS |
| CARGILL, INC. and MGP<br>INGREDIENTS, INC. | ) <br> ) <br> ) | |
| Defendants. | ) | |

**PLAINTIFFS' MOTION FOR LEAVE TO FILE A SUR-REPLY TO DEFENDANTS'**
**REPLY BRIEF IN SUPPORT OF THEIR MOTION FOR LEAVE TO AMEND**

Plaintiffs National Starch and Chemical Investment Holding Corp. ("National Starch"),

Penford Australia Ltd. ("Penford Australia"), and Penford Holdings Pty. ("Penford Holdings" and

collectively, with Penford Australia, "Penford") hereby respectfully request leave of the Court to file

a sur-reply to Defendants Cargill, Inc.'s and MGP Ingredients, Inc.'s February 17, 2006 Reply Brief

in Support of Their Motion For Leave to File First Amended Answers and Counterclaims (D.I. 96).

Plaintiffs believe such a sur-reply is necessary, as a matter of fairness, because Defendants have

incorporated a number of new "facts" and legal arguments into their February 17th reply brief that

were not referenced, discussed, or even alluded to in their original briefing. *See Alexander v. Fed.*

*Bureau of Investigation,* 186 F.R.D. 71, 74 (D.C. Cir. 1998).

Defendants filed their original motion for leave to amend their answers and counterclaims on

February 1, 2006. (*See* D.I. 81.)  National Starch and Penford filed an opposition brief on February

9, 2006. (*See* D.I. 89).  As highlighted in Plaintiffs' opposition, Defendants' motion was filed more

than four months after the scheduling order deadline for moving to amend pleadings. (*See* D.I. 89 at 5-6.) Further, National Starch and Penford emphasized that Defendants failed to articulate any good cause, as required by Fed. R. Civ. P. 16(b), for this extreme delay. (*See id.*) Defendants filed a "reply" brief in support of their original motion for leave to amend on February 17, 2006 after Plaintiffs agreed to a one-day extension, given the time crunch caused by ongoing fact discovery and impending due dates for opening expert reports. (*See* D.I. 91, 96.)

Defendants' original motion for leave to amend, and the proposed inequitable conduct and unfair competition claims it contained, was premised entirely on the purported failure of the inventors of the patents-in-suit to provide the Patent and Trademark Office with "Laboratory Studies … conducted between 1988 and 1997." (*See* D.I. 81 at 3.) As Defendants repeatedly emphasized in their opening brief, these Studies allegedly "evidence that the testing method set forth in the patents in suit is wholly unreliable and produces substantially inflated results." (*See id.* at 1, 3.) Defendants' proposed unfair competition claim was likewise solely rooted in Plaintiffs' supposed knowledge of this alleged inequitable conduct. (*See id.* at 5.) These arguments, however, were not the focus of Defendants' recent "reply" brief.

Instead of properly focusing on Plaintiffs' opposition arguments or the facts underlying their previously articulated inequitable conduct and unfair competition allegations, Defendants' "reply" brief discusses entirely new "facts" and legal arguments not referenced or even alluded to in their opening brief. For example, in their reply, Defendants accuse the inventors of the patents-in-suit of eliminating a "correction of exactly 7.8" from the amylose percentage calculation detailed in Column 4 of both the patents-in-suit. (*See* D.I. 96 at 5-8.) References to missing "correction" factors or a specific value of "7.8" are nowhere to be found in Defendants' original briefing. Further, this accusation is supposedly bolstered by statements in another Laboratory Study, which

DB01:2005986.1    063631.1001

was drafted in 2000. (*See id.* at 7.) This later Study is clearly not one of the "Laboratory Studies ... conducted between 1988 and 1997" vaguely referenced in Defendants' opening brief.[1]

Another large portion of Defendants' reply brief provides an extensive analysis of statements made by National Starch, and not the inventors of the patents-in-suit, during prosecution of a foreign equivalent of National Starch's U.S. Patent No. 5,300,145.[2] (*See id.* at 9-11.) No reference whatsoever was made to the '145 patent, or any statements made by National Starch, in Defendants' opening briefing.

Defendants purport to have engaged in these entirely new analyses, which are irrelevant to their original proposed inequitable conduct and unfair competition claims, in response to Plaintiffs' "remarkable assertions" regarding the content of the previously unidentified Laboratory Studies. (*See id.* at 1 n.1.) National Starch and Penford plainly did not attempt to independently characterize the Studies in their brief opposing defendants' motion. How could they when they were not specifically identified by Defendants in their opening brief? Instead, National Starch and Penford merely adopted and reacted to Defendants' own characterization of those Studies. According to Defendants' brief, the Studies reveal that the method of the patents-in-suit is "unreliable and produce[s] substantially inflated results." In response, National Starch compared defendants'

---

[1]    Plaintiffs produced all of the Laboratory Studies referenced in Defendants' opening and "reply" briefs on the same day—January 13, 2006. Thus, Defendants had the "Laboratory Studies ... conducted between 1988 and 1997," the 2000 study referenced for the first time in their reply brief, and all materials referencing "correction" factors in their possession when they filed their original motion for leave to amend. Defendants' simply elected not to mention the majority of these purportedly "devastating" documents and arguments until their reply briefing.

[2]    Defendants assert that these foreign prosecution materials were "tracked down ... after the filing of Defendant's motion to amend." (*See* D.I. 96 at 1). Defendants, however, purport to have "discovered" the existence of the foreign opposition after it was mentioned at the deposition of a National Starch witness, Teresa Capitani. (*See id.* at 3). Ms. Capitani's deposition occurred on January 31, 2006, before Defendants filed their motion for leave to amend. Thus, these arguments, like those involving "correction factors" and 2000 Laboratory Studies, should have been included in an opening brief.

characterization to materials that were both long in Defendants' possession and already considered by the examiner in the PTO, making it hardly "devastating" evidence. (*See* D.I. 89 at 7-8.).

In sum, Defendants elected to withhold their purportedly "devastating" and "case dispositive" allegations – to use defendants' words – regarding inequitable conduct and unfair competition (and the identification of the facts claimed to underlie those allegations) until their reply brief. Defendants' themselves highlighted this inappropriate interjection of new matter via a reply brief by conceding in their reply that they have "no objection to Plaintiffs submitting a sur-reply." (*See id.* at 1 n.1).

Such an approach to briefing is inconsistent with the procedural rules of this Court. D. Del. L.R. 7.1.3(c)(2) requires that "[th]e party filing the opening brief shall not reserve material for the reply brief which should have been included in a full and fair opening brief." Despite this clear mandate, Defendants reply brief contains an array of purported facts and legal arguments not present in their opening brief. This "tactic of reserving new arguments for [a] reply brief," just like Defendants' extreme delay in filing its original motion for leave to amend in the first place, "amounts to impermissible 'sandbagging.'" *Rockwell Techs. LLC v. Spectra-Physics Lasers, Inc.*, C.A. No. 00-589, 2002 WL 531555, at *3 (D. Del. Mar. 26, 2002); *see also Student Fin. Corp. v. Royal Indem. Co.*, C.A. No. 02-11620, 2004 WL 609329, at *3 n.5 (D. Del. Mar. 23, 2004).

If Defendants had properly included the new matter discussed above in their opening brief, as required by L.R. 7.1.3(c)(1), National Starch and Penford would have had an opportunity to address these new allegations and highlight why they, like Defendants' initial untimely arguments, cannot properly support inequitable conduct and unfair competition claims. As an initial matter, Plaintiffs would have had an opportunity to make clear that statements made by National Starch during the prosecution of foreign equivalents of the '145 patent cannot serve as the basis of a claim of

-4-

inequitable conduct. *See generally Scripps Clinic & Research Found. v. Genentech, Inc.*, 927 F.2d 1565, 1682 (Fed. Cir. 1991).

Further, if Defendants had specifically identified the Laboratory Studies underlying their inequitable conduct charges in their opening brief, National Starch and Penford would have had an opportunity to highlight that all the Studies, both those vaguely referenced by Defendants' in their opening brief and those mentioned for the first time in reply, amount to little more than records of the technological evolution of amylose testing methods, the variances of which were well known in the art and before the PTO (as discussed in detail at the Markman hearing in this case). Additionally, Plaintiffs could have highlighted that the majority of these Laboratory Studies were generated years after the conception and reduction to practice of the claimed inventions and that all were drafted, not by the inventors of the patents-in-suit, but by other individuals.

National Starch and Penford also would have had an opportunity to address Defendants' reply assertion that the Laboratory Studies are not cumulative of the array of materials addressing amylose testing already in Defendants' possession and before the Patent and Trademark Office. Defendants apparently believe these reports are unique, and thus "devastating," because they allegedly "conclude[] that the 'Blue Value' test of the patents-in-suit produces artificially inflated results as compared with other iodine binding … tests." (D.I. 96 at 8.) If Defendants' had made this argument in their opening brief, Plaintiffs would have had an opportunity to highlight that, to the extent any particular testing procedure is discussed and analyzed in the Laboratory reports, it is not even the particular test of the patents in suit.

Instead of providing Plaintiffs' with a full and fair opportunity to reply to the arguments underlying their request for leave to amend, Defendants have instead chosen interject new – and now even more untimely – matter and arguments into a reply brief. Moreover, Defendants' presentation

DB01:2005986.1                                                                    063631.1001

of these arguments for the first time in a reply brief is even more troubling than their original

prejudicial delay in seeking leave to amend as Plaintiffs now have no procedural right to file reply.

As a result, National Starch and Penford respectfully request the Court for leave to file a sur-reply so

that Defendants' recent arguments can be properly, fully and fairly addressed.

Josy W. Ingersoll (ID #1088)
John W. Shaw (ID #3362)
Monté T. Squire (ID #4764)
Young Conaway Stargatt & Taylor, LLP
The Brandywine Building
1000 West St., 17th Floor
Wilmington, Delaware 19801
msquire@ycst.com
(302) 571-6600

OF COUNSEL:
Richard. L. DeLucia
Paul M. Richter, Jr.
Jerry Canada
Kenyon & Kenyon LLP
One Broadway
New York, New York 10004-1050
(212) 425-7200

Dated: February 27, 2006                    *Attorney for Plaintiffs National Starch and Penford*

DB01:2005986.1                                                                      063631.1001

## CERTIFICATE OF SERVICE

I, Monté T. Squire, Esquire, hereby certify that on February 27, 2006, I caused to be electronically filed a true and correct copy of the foregoing document with the Clerk of the Court using CM/ECF, which will send notification that such filing is available for viewing and downloading to the following counsel of record:

>      Thomas L. Halkowski, Esq.
>      Fish & Richardson, P.C.
>      919 N. Market Street, Suite 1100
>      Wilmington, Delaware  19801

I further certify that on February 27, 2006,  I caused a copy of the foregoing document to be served by hand delivery on the above-listed counsel of record and on the following non-registered participants in the manner indicated:

**BY E-MAIL AND FEDEX**

>      Michael Florey, Esq.
>      Fish & Richardson P.C., P.A.
>      3300 Dain Rauscher Plaza
>      60 South Street
>      Minneapolis, MN 55402

YOUNG CONAWAY STARGATT & TAYLOR, LLP

Monté T. Squire (No. 4764)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE 19801
(302) 571-6600
msquire@ycst.com

*Attorneys for Plaintiffs*